**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CITIBANK, N.A.,<br><br>       *Plaintiff*,<br><br>   v.<br><br>BRIGADE CAPITAL MANAGEMENT, LP,<br><br>       *Defendant*. | No. 20 Civ. \_\_\_\_\_ (\_\_\_)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF CITIBANK'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

MAYER BROWN LLP

Matthew D. Ingber
Christopher J. Houpt
Michael Rayfield
Luc. W. M. Mitchell
1221 Avenue of the Americas
New York, New York 10020
(212) 506-2500

*Attorneys for Citibank, National Association*

**TABLE OF CONTENTS**

|  | Page |
|---|---|
| PRELIMINARY STATEMENT | 1 |
| STATEMENT OF FACTS | 2 |
| ARGUMENT | 3 |
| I. CITIBANK WILL SUFFER IRREPARABLE HARM ABSENT INJUNCTIVE RELIEF AND A TEMPORARY RESTRAINING ORDER. | 4 |
| II. CITIBANK IS LIKELY TO SUCCEED ON THE MERITS. | 5 |
| III. THE BALANCE OF THE HARDSHIPS TIPS DECIDEDLY IN CITIBANK'S FAVOR. | 7 |
| IV. THE PUBLIC INTEREST FAVORS INJUNCTIVE RELIEF. | 7 |
| CONCLUSION | 8 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bd. of Managers of Trump Tower at City Ctr. Condo. by Neiditch v. Palazzolo*,
    346 F. Supp. 3d 432 (S.D.N.Y. 2018) .................................................................................... 6

*Brenntag Int'l Chemicals, Inc. v. Bank of India*,
    175 F.3d 245 (2d Cir. 1999) .................................................................................................. 4

*De Beers Consol. Mines v. United States*,
    325 U.S. 212 (1945) .............................................................................................................. 4

*Ger-Nis Int'l, LLC v. FJB, Inc.*,
    2007 WL 656851 (S.D.N.Y. Mar. 1, 2007) ........................................................................... 4

*Grand River Enter. Six Nations, Ltd. v. Pryor*,
    481 F.3d 60 (2d Cir. 2007) .................................................................................................... 4

*Paradigm BioDevices, Inc. v. Centinel Spine, Inc.*,
    No. 11 CIV. 3489 JMF, 2013 WL 1915330 (S.D.N.Y. May 9, 2013) .................................. 4

*Quantum Corp. Funding, Ltd. v. Assist You Home Health Care Servs. of VA.*,
    144 F. Supp. 2d 241 (S.D.N.Y. 2001) ................................................................................... 4

*S.E.C. v. Wallis*,
    1984 WL 803 (S.D.N.Y. May 31, 1984) ............................................................................... 7

*New York ex rel. Schneiderman v. Actavis*,
    787 F.3d 638 (2d Cir. 2015) .............................................................................................. 3, 5

*Spencer Trask Software & Info. Servs. v. RPost Int'l Ltd.*,
    190 F. Supp. 2d 577 (S.D.N.Y. 2002) ................................................................................... 4

*T.D. Bank, N.A. v. JP Morgan Chase Bank, N.A.*,
    2010 WL 4038826 (E.D.N.Y. Oct. 14, 2010) ....................................................................... 6

*Wishnatzki & Nathel, Inc. v. H.P. Island-Wide, Inc.*,
    2000 WL 1610790 (S.D.N.Y. Oct. 27, 2000) .................................................................... 2, 4

Plaintiff Citibank, National Association ("Citibank") respectfully submits this memorandum of law in support of its application for a temporary restraining order and preliminary injunction against Defendant Brigade Capital Management, LP ("Brigade") barring Brigade from removing, withdrawing, transferring, assigning, or otherwise disposing of $174,651,497.63 mistakenly transferred to Brigade by Citibank on August 11, 2020. Citibank further requests a preliminary injunction directing Brigade to remit to Citibank the full balance of $174,651,497.63 of the mistakenly-transferred funds.

## PRELIMINARY STATEMENT

Citibank serves as administrative agent for a $1.8 billion loan to Revlon Consumer Products Corporation ("Revlon"). Part of Citibank's role as agent is to facilitate routine interest payments from Revlon to lenders. On August 11, 2020, an operational mistake caused Citibank to mistakenly transfer hundreds of millions of dollars to creditors rather than the actual amounts due on that date. The transfers were clearly in error; Citibank wired to creditors about $900 million, which is significantly more than what was due under the Credit Agreement and specified in the notices of payment that accompanied each transfer. When Citibank discovered the mistake, it promptly asked the recipients to return the money.

While many creditors returned the mistakenly transferred funds, Brigade refused. Brigade disputes that the vastly-oversized payments were the result of a clerical mistake and claims that Citibank's overpayment—over 100 times the amount of the intended transfer—served to pay off Revlon's *principal* balance as well, a balance that was not due until 2023, that Revlon was not financially in a position to pay, that Revlon never in fact paid to Citi for distribution to lenders, and that was reportedly trading at 30 cents on the dollar. This contention is baseless: The payments themselves were accompanied by statements that showed the correct (smaller) amounts due, and the credit agreement that governs the payment schedules makes clear that no principal payment was contemplated at the time. Indeed, the day after Citibank's payment, a purported agent for Brigade and other lenders *sued Revlon* on the ground that Revlon had *defaulted* on its debt—the very debt that Brigade now claims was discharged through the mistaken payment.

As detailed in Citibank's accompanying complaint, Brigade has no claim to Citibank's money. The Court should enter an injunction ordering that Brigade return the mistakenly transferred funds. But at minimum, the Court should enter injunctive relief and a temporary

1

restraining order maintaining the status quo—barring Brigade from transferring, moving, or otherwise disposing of the funds that rightfully belong to Citibank.

Citibank satisfies each of the requirements of a preliminary injunction. Citibank will suffer irreparable harm if Brigade is permitted to transfer the funds, and "courts have held that where the particular funds sought to be frozen are also the funds at issue in the suit, a preliminary injunction is proper." *Wishnatzki & Nathel, Inc. v. H.P. Island-Wide, Inc.*, 2000 WL 1610790, at *1 (S.D.N.Y. Oct. 27, 2000). Citibank is likely to prevail on the merits of this suit, because Brigade has no plausible claim to Citibank's money, particularly after it was placed squarely on notice that the payment was erroneous. And the public's interest favors an injunction: Any other outcome could threaten the stability of the banking system. The global economy depends on the ability of financial institutions to make enormous numbers of payments per day. While the vast majority of these payments are seamless, human and technological errors do occur at times. If bad actors were able to capitalize on these mistakes to seize large windfalls, the system would fall into disarray.

The Court should grant Citibank's motion.

## STATEMENT OF FACTS

As detailed in Citibank's complaint, in 2016, Revlon took out a $1.8 billion loan to facilitate its acquisition of Elizabeth Arden, Inc. Compl. ¶ 12. Brigade was among the lenders who provided capital for the loan, and Citibank served as the loan's administrative agent and collateral agent pursuant to the underlying credit agreement. *Id.* ¶¶ 12-13. Citibank was required to collect loan payments from Revlon, transfer the payments to creditors, and maintain a register detailing the amounts owed to each creditor and any loan payments made by Revlon. *Id.* ¶ 13. Under the terms of the agreement, Revlon is required to make regular interest payments. While it is *permitted* to prepay its principal obligations, any prepayment must be accompanied by written notice up to three business days in advance. *Id.* ¶ 14.

On August 11, 2020, Revlon was required to remit interest payments that Citibank would then remit to creditors in its status as administrative agent. Zeigon Decl. ¶ 19. The interest payment totaled $1,501,145.27. *Id.* ¶ 17. No other amount was due at the time. *Id.* ¶ 19.

Due to inadvertent human error, Citibank mistakenly transferred an amount far greater than the total interest payment due on August 11—over 100 times the interest that was actually due. *Id.* ¶ 17. Brigade was among the creditors that received overpayments for the 40 funds that it manages, and that hold portions of the Revlon loan. *Id.* At the same time Brigade received those

payments, it received all the information it needed to understand that the payments were mistaken. *Id.* ¶¶ 5-6. Most importantly, Citibank sent Brigade notices of payment describing each payment as a "Libor Rate Interim Interest Payment" and detailing Citibank's calculation of the amount of *interest* due under the loan agreement (as well as the principal of the loan held by each fund). *Id.* ¶¶ 8-10. These notices expressly referenced the *intended* amount of payment, which was *interest only* and more than 100 times smaller than the actual transferred amount. *Id.* ¶¶ 12, 17. In total, Brigade received 40 notices indicating that it was to receive $1,501,145.27 in interest payments on $174,651,497.63 of principal. *Id.* ¶ 17. Instead, it received $176,152,642.90 in total transfers. *Id.*

The mistaken overpayment was covered widely by news outlets around the world. Compl. ¶ 23. On both August 12 and August 13, 2020, Citibank sent notices to lenders requesting the excess funds be returned, informing lenders that "[a]n additional amount was included in your interest payment in error and you were overpaid." *Id.* ¶ 24. Many of Revlon's lenders promptly complied and returned the funds. *Id.*

Brigade did not, despite taking several actions through UMB Bank—which claims it has been appointed successor administrative agent—that clearly demonstrate Brigade's understanding that the payment was a mistake. *Id.* ¶ 27. This included UMB Bank serving Revlon with a notice of an Event of Default under the 2016 loan, purporting to accelerate the loan's principal, and filing a 117-page complaint accusing Revlon of improperly amending the credit agreement to *avoid* paying the 2016 lenders. *See id.* ¶¶ 25-28. Brigade and other lenders have nonetheless insisted that they may keep Citibank's money. Brigade emailed Citibank that "[i]t is not at all clear that the funds were sent as a result of [a] 'clerical mistake,'" and that "the law may provide for a discharge for value of the loans, upon receipt of the funds, regardless of any error." *Id.* ¶ 29. Though largely incomprehensible, this response makes clear that Brigade has no intention of returning Citibank's money. *Id.*

## ARGUMENT

"A party seeking a preliminary injunction must ordinarily establish (1) irreparable harm; (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party; and (3) that a preliminary injunction is in the public interest." *New York ex rel. Schneiderman v. Actavis*, 787 F.3d 638, 650 (2d Cir. 2015) (quotation

marks omitted). "The standard for granting a temporary restraining order and a preliminary injunction pursuant to Rule 65 of the Federal Rules of Procedure are identical." *Spencer Trask Software & Info. Servs. v. RPost Int'l Ltd.*, 190 F. Supp. 2d 577, 580 (S.D.N.Y. 2002).

Citibank satisfies each of these requirements. The Court should enter a preliminary injunction and temporary restraining order barring Brigade from removing, withdrawing, transferring, assigning, or otherwise disposing of the money mistakenly transferred to Brigade by Citibank on August 11, 2020. The Court should also order a preliminary injunction directing Brigade to remit to Citibank the full balance of the mistakenly-transferred funds.

**I.    CITIBANK WILL SUFFER IRREPARABLE HARM ABSENT INJUNCTIVE RELIEF AND A TEMPORARY RESTRAINING ORDER.**

"To satisfy the irreparable harm requirement, [a plaintiff] must demonstrate that absent a preliminary injunction [it] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (quotation marks omitted). "Irreparable harm exists where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Brenntag Int'l Chemicals, Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999).

Courts in this Circuit have routinely found irreparable harm where there is a "risk that defendant will have dissipated the [funds] without paying the plaintiff, leaving the plaintiff out of luck and out of money." *Ger-Nis Int'l, LLC v. FJB, Inc.*, 2007 WL 656851, at *2 (S.D.N.Y. Mar. 1, 2007) (quotation marks omitted). Courts have therefore held that a "preliminary injunction is proper" "where the particular funds sought to be frozen are also the funds at issue in the suit." *Wishnatzki*, 2000 WL 1610790, at *1 (citations omitted). Indeed, the Supreme Court has explained that "[a] preliminary injunction is *always* appropriate to grant intermediate relief of the same character as that which may be granted finally." *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945) (emphasis added); *see also*, *Paradigm BioDevices, Inc. v. Centinel Spine, Inc.*, No. 11 CIV. 3489 JMF, 2013 WL 1915330, at *3 (S.D.N.Y. May 9, 2013) (preliminary injunction appropriate where movant "alleges not only a legal claim for money damages, but also an equitable claim"), *Quantum Corp. Funding, Ltd. v. Assist You Home Health Care Servs. of VA.*, 144 F. Supp. 2d 241, 250 (S.D.N.Y. 2001) ("[W]here plaintiffs seek both equitable and legal relief in relation to *specific* funds, a court retains its equitable power to freeze assets.").

These principles are squarely applicable here. The funds mistakenly transferred to Brigade, and which Citibank requests to be remitted or frozen, are precisely the same funds at issue in this suit, and Citibank seeks both equitable and legal relief in relation to these specific funds. *See* Comp. ¶¶ 32-45. Absent injunctive relief, there is a substantial risk that Brigade will transfer or otherwise dissipate the funds, making Citibank unable to recover the full amount of the erroneous transfer. As described in the attached Declaration of Mitali Sohoni, Managing Director and Head of Financing and Collateralized Loan Obligations with Citigroup Inc.'s Markets and Securities Services, the ultimate beneficiaries of Brigade's investment in the Revlon loan include investment vehicles such as collateralized loan obligations, which are required to regularly remit funds to their own investors. Sohoni Decl. ¶¶ 4-5. They also include several other funds that commonly commingle cash with other assets to make payments to fund beneficiaries. *Id.* ¶ 7. Based on information available to Citibank, Brigade *itself* lacks sufficient net assets to satisfy a judgment of $174 million plus accrued interest. *Id.* ¶ 9. In the event that Brigade is allowed to transfer or disperse the funds to these beneficiaries, identifying the funds at issue and providing for their return to Citibank may prove impossible.

At minimum, then, Brigade should be prohibited from transferring or otherwise dispersing the funds at issue in this suit. But we respectfully submit that broader relief is appropriate here: The Court should order Brigade to return the funds that it has misappropriated from Citibank. Given Brigade's brazen disregard for Citibank's rights and the terms of the underlying credit agreement, as well as the interests of third parties like Revlon, the safest course is to return to the status quo before Citibank mistakenly sent Brigade the funds. And as discussed in Part IV below, that relief is the most effective way to deter actors like Brigade from threatening the integrity of the banking system with the behavior it has engaged in here.

## II.    CITIBANK IS LIKELY TO SUCCEED ON THE MERITS.

Citibank has shown a "likelihood of success on the merits" of its claims, and certainly "sufficiently serious questions going to the merits of its claims to make them fair ground for litigation." *Actavis*, 787 F.3d at 650. Citibank has brought a claim for unjust enrichment based on Brigade's misappropriation of funds at the direct expense of Citibank (Compl. ¶¶ 31-33); a claim for conversion based on Brigade's exercise of unauthorized dominion over specifically identifiable Citibank assets (Compl. ¶¶ 34-36); a claim for money had and received based on

Brigade's receipt of, and benefit from, Citibank's money (*id.* ¶¶ 37-40); and a claim for payment by mistake (*id.* ¶¶ 41-44).

Courts in this District have recognized that a refusal to return mistakenly-received funds that are the rightful property of another is sufficient basis for all four of the causes of action raised in the complaint. *See, e.g.*, *Bd. of Managers of Trump Tower at City Ctr. Condo. v. Palazzolo*, 346 F. Supp. 3d 432, 466 (S.D.N.Y. 2018) (plaintiff "adequately alleged the existence of unjust enrichment, conversion, and money had and received claims" based on defendant's withholding of funds of which plaintiff was "the rightful owner"); *T.D. Bank, N.A. v. JP Morgan Chase Bank, N.A.*, 2010 WL 4038826, at *7 (E.D.N.Y. Oct. 14, 2010) (plaintiff adequately alleged claims for money had and received, payment by mistake, and unjust enrichment on basis that defendant, "as a result of fraud and mistake, received money rightfully belonging to" plaintiff).

Citibank is likely to succeed on each of these claims for similar reasons:  The circumstances clearly demonstrate that Citibank's transfer of excess funds on August 11 was a mistake, that the excess funds were the rightful property of Citibank, and that Brigade was well aware that it had no legal right to retain the funds.  This case is as straightforward as it gets.  From the moment the erroneous transfers were made, it was plain that the excess funds were not intentionally sent to Brigade.  On the same day Brigade received the erroneous transfers from Citibank, it also received 40 accompanying notices of payment providing detailed calculations of the amount of "Interim *Interest*" due and the corresponding "Credit Amount" that Citibank intended to transfer.  The funds actually transferred to Brigade, however, were well in excess of the interest calculations and Credit Amounts.

Brigade's current position—that the excess funds were payment toward the loan principal—is irreconcilable with the language of the notices and common sense.  Such a payment was not even permissible under the credit agreement.  Compl. ¶ 22.  The balance of the loan was not due until 2023.  And a prepayment of *any* amount was permissible only if Revlon provide "irrevocable written notice" of its intent to prepay within the three days preceding any prepayment. *Id.*  No such prepayment notice was issued.  *Id.*  Revlon did not provide the excess payment funds to Citibank and confirmed as much in its public statements.  *Id.* ¶ 23.  Revlon lacked sufficient assets to facilitate a transfer of that size.  *Id.* ¶ 2.  And if any doubt remained, Citibank *told* Brigade that the payments were mistaken, in notices issued promptly after the payment.  Zeigon Decl. ¶ 22.

Brigade's own conduct after August 11, acting through UMB Bank, demonstrated that it was well aware that the payments were mistaken, and that they were not intended as payment of Revlon's debts.  First, on August 12, UMB Bank served Revlon with a notice of an Event of Default under the Credit Agreement—a notice that would make no sense if Brigade believed the debt was discharged.  Second, UMB Bank provided notice to Revlon that it was seeking to accelerate payment of the loan's principal that same day—a clear admission that Brigade did not believe that the principal *had been* repaid.  Third, UMB Bank filed a 117-page complaint accusing Revlon of improperly amending the credit agreement to *avoid* paying 2016 lenders—an allegation that, again, would be inexplicable if the loan had been fully repaid on August 11.  By taking these actions through UMB Bank, Brigade not only demonstrated its understanding that the excess payment on August 11 was mistaken; it proceeded as though it had received *no payment at all* on August 11.

Notably, other creditors *did* return the overpayment amounts within days of the transfer.  This wasn't an act of charity; it was the right thing to do, and a recognition that the funds belonged to Citibank.  Citibank is likely to succeed in its efforts to recover the mistakenly transferred funds from Brigade.

### III. THE BALANCE OF THE HARDSHIPS TIPS DECIDEDLY IN CITIBANK'S FAVOR.

The "balance of hardships" requirement is also straightforward.  As discussed above, Citibank will suffer irreparable harm absent injunctive relief:  It will not only be denied access to over a hundred million dollars that rightfully belong to Citibank; it will also risk the permanent loss of the funds as they are commingled with other assets and dissipated among investors.  *See* pp. 4-5 *supra*.  Brigade, by contrast, will suffer *no* legitimate hardship at all by losing access to funds that it never expected to receive and does not rightfully own.  And particularly when the hardships to Citibank are aggregated—accounting for the total of $174,651,497.62 that was mistakenly transferred to Revlon lenders—the balance falls overwhelmingly on Citibank.

### IV. THE PUBLIC INTEREST FAVORS INJUNCTIVE RELIEF.

Courts in this District have long recognized that "the public interest may be jeopardized" where wrongfully-obtained funds "are not frozen or protected against possible dissipation" by the issuance of an injunction.  *S.E.C. v. Wallis*, 1984 WL 803, at *3 (S.D.N.Y. May 31, 1984).  Every day, financial institutions exchange billions of dollars via wire transfers, facilitating the quick and efficient flow of money between these institutions and their many clients.  Such transfers are an

essential part of the daily function of the global financial system.  Given the ubiquity and frequency of wire transfers, it is inevitable that a certain number will be made in error, as was the case here.

When such erroneous transfers are made, the entity that made the mistake must have assurances that it will be able to recover the funds that remain its rightful property.  Absent this certainty, the very foundations of the modern banking system would be undermined:  The speed and efficiency of sending funds via wire transfer would be overshadowed by the possibility of catastrophic, irreversible harm resulting from a single mistake in executing a transfer.  And the corresponding oversight and regulations required to prevent such a mistake from occurring would necessarily place considerable strain on the banking system—both in terms of time and resources.

If Brigade and others like it are not immediately required to return mistakenly transmitted funds, the result would be to *reward* such behavior.  Brigade should not be permitted to keep over a hundred million dollars of Citibank's money (and certainly without restriction) while Citibank is forced to litigate its claim to conclusion.  This would only encourage other entities that receive funds in error to remain similarly uncooperative and intransigent.  The primary cost to a party for doing so would be the prospect of repaying the funds at a later date, while that same party would enjoy the benefits of an unexpected injection of liquidity in the meantime.  The public has an undeniable interest in discouraging such bad faith efforts, and no corresponding interest in allowing those who receive funds in error to keep them while the rightful owner waits an award of money damages.  The public interest weighs in favor of granting injunctive relief.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that this Court:

1. Issue a preliminary injunction, pursuant to Rule 65, ordering Brigade Capital Management, LP to remit to Citibank funds in the amount of $174,651,497.62.

2. In the alternative, issue a preliminary injunction and temporary restraining order ordering Brigade, its officers, agents, employees, successors, and all those in active concert or participation with them to refrain immediately from removing, withdrawing, transferring, assigning, or otherwise disposing of $174,651,497.62 mistakenly transferred to Brigade by Citibank on August 11, 2020, pending a final determination on the merits in this action.

Dated: August 17, 2020
      New York, New York

MAYER BROWN LLP

By: /s/ Matthew D. Ingber
    Matthew D. Ingber
    Christopher J. Houpt
    Michael Rayfield
    Luc. W. M. Mitchell
    1221 Avenue of the Americas
    New York, New York 10020
    (212) 506-2500

*Attorneys for Citibank, National Association*