# MAYER | BROWN

Mayer Brown LLP
1221 Avenue of the Americas
New York, NY 10020-1001
United States of America

T: +1 212 506 2500
F: +1 212 262 1910

mayerbrown.com

**Christopher J. Houpt**
Partner
T: +1 212 506 2380
F: +1 212 849 5830
CHoupt@mayerbrown.com

August 18, 2020

BY ECF

Hon. Jesse M. Furman, U.S. District Judge
United States District Court
  for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Centre Street, Room 2202
New York, NY 10007

Re:   *Citibank, N.A. v. Brigade Capital Management, LP*,
        No. 1:20-cv-06539

Dear Judge Furman:

We write on behalf of plaintiff Citibank, N.A. in response to certain questions and arguments that were raised at the hearing this morning and in defendant Brigade Capital Management, LP's letter (ECF 22) opposing our motion for injunctive relief.

Brigade will ultimately bear the burden of proof to show discharge-for-value, which is an affirmative defense. *See, e.g.*, *In re Awal Bank*, 455 B.R. 73 (Bankr. S.D.N.Y. 2011) ("the discharge for value rule is an affirmative defense to be asserted by answer, and 'a plaintiff does not bear the burden of raising and refuting this defense in its opening pleadings'") (quoting *TD Bank v JPMorgan Chase Bank*, 2010 WL 4038826, at *6 n.8 (E.D.N.Y.)); *BMO Harris Bank v. Salin Bank & Trust Co.*, 2020 WL 2571251, at *8 (S.D. Ind.) ("At its core, the discharge for value rule is widely regarded and most easily applied as an affirmative defense, presupposing the validity of the claimant's causes of action.") (citing cases including *Banca Commerciale Italiana v Northern Trust*, 160 F.3d 90, 94 (2d Cir. 1998); Restatement Third of Restitution section 67).

Thus, among other things, Brigade will need to prove that they received the funds "without *any notice* of any wrong *and credited them* on an indebtedness *due them*." *Carlisle v. Norris*, 215 N.Y. 400, 415 (1915) (quoted in *Banque Worms v. Bankamerica*, 77 N.Y.2d 362, 368 (1991)) (emphasis added). *Banque Worms* and *GECC v. Cent. Bank*, 49 F.3d 280 (7th Cir. 1995), are distinguishable on all three elements.

First, in *Banque Worms*, there was no suggestion that the bank had any reason to believe that the payment was an error. Indeed, the opinion shows that the debtor actually did intend to pay Banque Worms; the error was that the originating bank failed to follow the debtor's instruction to *cancel* the original payment order. There was no express statement (which, in this case, was sent to Brigade *before* the payment) that a different amount would be paid and no failure of a required notice of prepayment. Thus, while *Banque Worms* does not expressly hold that constructive notice is sufficient, neither it nor any other case that we are aware of supports Brigade's contention that

Mayer Brown is a global services provider comprising an association of legal practices that are separate entities including
Mayer Brown LLP (Illinois, USA), Mayer Brown International LLP (England), Mayer Brown (a Hong Kong partnership)
and Tauil & Chequer Advogados (a Brazilian partnership).

Hon. Jesse M. Furman
August 18, 2020
Page 2

actual notice is required. Section 14 of the Restatement (First) of Restitution, which *Banque Worms* adopts, states that the rule applies only where the transferee proves that it "does not know *or suspect*" the transferor's error. (Emphasis added.) And as noted in the hearing, *In re Calumet Farm, Inc.*, interpreting U.C.C. Article 4A (which is, after all, a uniform statute not unique to the Sixth Circuit), expressly holds the opposite. 398 F.3d 555, 560 (6th Cir. 2005) ("Any sensible application of the discharge-for-value rule in this unique setting must account for constructive as well as actual notice of a mistake."). Though counsel suggested that Brigade inferred the purpose of the payment from its amount, we do not believe that Brigade will be able to prove that its operational procedures allow for processing of loan payments without reference to the calculation statements; in the back-office context, that discrepancy is an enormous red flag.

Second, Brigade has offered no evidence that it "credited" Revlon in any manner. Again, that is essential under Restatement Section 14, adopted in *Banque Worms*, which limits the rule to situations where "it would be inequitable to require restitution from the transferee since, in the surrender of the debt or lien, *he has given value*." (Emphasis added.) As noted, the official record of Revlon's debt under the Credit Agreement is the Register, which is maintained by the Administrative Agent (Citibank), not by each lender; thus, Brigade had no ability to credit or discharge Revlon unilaterally. Moreover, Brigade's subsequent conduct, continuing to this day—including purporting to accelerate the debt and filing a lawsuit seeking its enforcement—consists of affirmative steps that are irreconcilable with the conclusion that it "discharged" the debt at any time and is totally unlike anything that occurred in *Banque Worms*.

*Calumet* emphasizes that "[n]either this court's prior decision, *GECC*, nor *Banque Worms* purports to consider the question" of the what "relevant event" is to establish discharge. 398 F.3d at 560. It holds that the defense will not apply if the "beneficiary receives notice of a mistake *before the beneficiary of the transfer credits the debtor's account.*" *Id.* (emphasis added). *Qatar National Bank v. Winmar, Inc.*, which, like this case, governed a Fedwire transfer that is governed by Federal Reserve Regulation J, applied the rule as set forth in *Calumet* and held that the funds should be returned in part because the transferee did not "present any evidence that it credited [the debtor]'s account prior to that date." 650 F. Supp. 2d 1, 19 (D.D.C. 2009). It, too, distinguished *GECC* and *Banque Worms*, both relied on by Brigade, on the ground that "those cases do not offer substantial guidance in determining when notice must be received," whereas "*In re Calumet* does provide a detailed analysis of this issue." *Id.* at 18. There is no evidence of any such credit by Brigade here.

Third, in *Banque Worms*, there was no dispute that the debt to Banque Worms was "due them" at the time of payment. Here, there is no dispute that the outstanding principal was *not* due on August 11 and would not come due for another three years. Indeed, the undisputed facts are that Brigade participated in efforts to cause the debt to come due the next day, precisely so that it could opportunistically assert a contractual setoff right. That purported acceleration not only fails to support setoff, as the loan was not due when the payment was made, but they prove both that

Hon. Jesse M. Furman
August 18, 2020
Page 3

Brigade actually knew that the principal was not repaid and that it had not, in any sense, "discharged" the debt.

Accordingly, we respectfully request that, at a minimum, the Court enter an order freezing the relevant funds until Brigade can make the necessary showing in support of its purported defense.

          Respectfully submitted,

          */s/ Christopher J. Houpt*
          Christopher J. Houpt
          Partner