

Mayer Brown LLP
1221 Avenue of the Americas
New York, NY 10020-1001
United States of America

T: +1 212 506 2500
F: +1 212 262 1910

mayerbrown.com

**Matthew D. Ingber**
Partner
T: +1 212 506-2373
F: +1 212 849 5973
MIngber@mayerbrown.com

August 24, 2020

BY ECF

Hon. Jesse M. Furman, U.S. District Judge
United States District Court for the
Southern District of New York
Thurgood Marshall United States Courthouse
40 Centre Street, Room 2202
New York, NY 10007

Re:  Citibank, N.A. v. Brigade Capital Management,
     LP, No. 1:20-cv-06539

Dear Judge Furman:

We write on behalf of plaintiff Citibank, N.A. in response to this Court's August 19, 2020 order directing the parties to submit a joint letter or competing letters "regarding the scope and timeframe of discovery and pretrial deadlines." Dkt. 28. Citibank met and conferred with counsel for defendants, and the parties were unable to reach an agreement. We therefore respectfully submit Citibank's views on the appropriate scope of discovery and scheduling in light of what we understand to be defendants' positions on both issues.[1]

## 1.     BACKGROUND

### a.     The August 11, 2020 Transfers

Citibank serves as administrative agent for a $1.8 billion loan to Revlon Consumer Products Corporation ("Revlon") under a Credit Agreement executed in 2016. Part of Citibank's role as agent is to facilitate interest payments from Revlon to lenders. On August 11, 2020, Citibank intended to only disburse an interest payment to Revlon's lenders. However, in addition to the interest payment, Citibank mistakenly transmitted $893 million of Citibank's own funds to the recipients (the "August 11 Transfers")—an amount more than 100 times greater than the interest payment intended to be paid on that date. The 12 defendants in the three cases and the funds they manage were among the recipients of the August 11 Transfers.

Citibank has determined that the mistaken payments resulted from human error. The 2016 Credit Agreement, pursuant to which Citibank intended to remit an interim interest payment only, allows certain lenders to have all or a portion of their pro rata share of the 2016 loan be repurchased by

---

[1]     Subject to the Court's approval, the parties have agreed that the title of this case should be changed to *In re Citibank August 11 Wire Transfers*.

Mayer Brown is a global services provider comprising an association of legal practices that are separate entities including
Mayer Brown LLP (Illinois, USA), Mayer Brown International LLP (England), Mayer Brown (a Hong Kong partnership)
and Tauil & Chequer Advogados (a Brazilian partnership).

Hon. Jesse M. Furman, U.S. District Judge
August 24, 2020
Page 2

Revlon. When a loan is repurchased in this way, because it changes the pro rata shares of the remaining lenders, the loan processing software requires system adjustments to reflect the new pro rata distribution. These adjustments must be made manually. They require certain selections in the system to prevent the payment of principal on the loan that remains outstanding.

On August 11, the borrower, Revlon, remitted interest to Citibank to cover interim interest amounts paid as a result of the exercise of repurchase rights, as described above. However, the individual who processed the payment mistakenly did not manually select the correct system options and, unfortunately, the manual checks of that selection also failed to detect the mistake. As a result, the system calculated and remitted a payment in an amount equal to interest and all outstanding principal, even though only interest was remitted by Revlon and only interest was intended to be distributed by Citibank. The difference between the interest payment remitted and the total amount mistakenly transferred by Citibank consisted of Citibank's own funds. Revlon did not remit any principal to Citibank.

Upon realizing its mistake, Citibank immediately requested return of the oversized payment from lenders. Many quickly complied and promptly returned the money that they recognized rightfully belonged to Citibank. The defendants refused.

  b.  This Action

Citibank alleges four causes of action in support of a preliminary and permanent injunction ordering defendants to return the funds transferred on August 11: unjust enrichment, conversion, money had and received, and payment by mistake. Dkt. 1. Because the funds were transferred mistakenly, the defendants are required to return them under well-established New York case law. *See, e.g.*, *Manufacturers Hanover Tr. Co. v. Chem. Bank*, 160 A.D.2d 113, 117 (1st Dep't 1990) ("The principle that a party who pays money, under a mistake of fact, to one who is not entitled to it should, in equity and good conscience, be permitted to recover it back is longstanding and well recognized and applies even if the mistake is due to the negligence of the payor."); *In re T.R. Acquisition Corp.*, 309 B.R. 830, 839 (S.D.N.Y. 2003) (payment made by mistake when evidence showed that it was "due to clerical oversight").

Defendants oppose Citibank's motion and claims, arguing that they are entitled to keep the funds based on the "discharge for value" doctrine. Dkt. 22. To prevail on this affirmative defense, the recipient of a mistaken transfer must demonstrate that it received the funds "without *any notice* of any wrong *and credited them* on an indebtedness *due them*." *Banque Worms v. BankAmerica*, 77 N.Y.2d 362, 368 (1991) (emphases added) (quoting *Carlisle v. Norris*, 215 N.Y. 400, 415 (1915)). Thus, defendants will need to prove not only that they lacked *actual* notice that the payments were made mistakenly, but also that they lacked *constructive* notice of the mistake. *See In re Calumet Farm*, 398 F.3d 555, 560 (6th Cir. 2005) ("Any sensible application of the discharge-for-value rule in this unique setting must account for constructive as well as actual notice of a mistake.").

The Court granted Citibank's request for a temporary restraining order freezing the funds transferred on August 11, and reserved judgment on Citibank's motion for a preliminary

Hon. Jesse M. Furman, U.S. District Judge
August 24, 2020
Page 3

injunction. Dkt. 25. The Court consolidated the hearing on Citibank's requested preliminary injunction with an expedited trial on the merits, scheduled the trial for September 30, and directed the parties to meet and confer to reach an agreement regarding the scope and timing of discovery and deadlines for pretrial submissions. Dkt. 28. Following the meet-and-confer process, the parties have been unable to reach an agreement on these matters.

## 2.　SCOPE OF DISCOVERY

### a.　Citibank's Proposal

Discovery should be cabined to two issues: (1) whether the August 11 Transfers were a mistake and (2) the viability of the defendants' discharge-for-value affirmative defense. Specifically, we propose that:

- Document discovery should be limited to non-privileged internal and external communications by either party between August 7, 2020 and August 17, 2020 that are relevant to the August 11 Transfers and/or the defendants' discharge-for-value defense.

- Each party should be required to produce no more than two fact depositions of party witnesses, which may include a deposition of an organization pursuant to Rule 30(b)(6).

- Plaintiff and defendants in aggregate should each be limited to no more than two depositions of third-party witnesses.

Additionally, although the parties are unable to reach an agreement as to discovery and a pretrial schedule, they discussing a resolution that might avoid further involving in this litigation the individual funds managed by the defendants that received the August 11 Transfers.

We respectfully submit that no discovery beyond our proposal is relevant or necessary to determine the narrow issues in this case: whether the August 11 Transfers to the defendants were made by mistake (*see T.R. Acquisition Corp.*, 309 B.R. at 839), and whether the defendants received the funds without notice of the mistake and credited the funds toward an indebtedness due to them (*see Banque Worms*, 77 N.Y.2d at 368). Defendants are incorrect that broad discovery is required to ascertain the mistake; courts in this District have found that "bank records presented by" a plaintiff, and "testimony of its former employee that he would not have authorized a … payment order had he been aware" that a payment was not due, "establishes credibly that a mistake was made." *Bank Saderat Iran v. Amin Beydoun, Inc.*, 555 F. Supp. 770, 773 (S.D.N.Y. 1983).

### b.　Response To Defendants' Proposal

During the meet-and-confer process, defendants proposed grossly overbroad discovery encompassing materials that are not relevant to either the reasons for the August 11 Transfers or defendants' discharge defense.

Hon. Jesse M. Furman, U.S. District Judge
August 24, 2020
Page 4

*Post-transfer recovery efforts.*  Defendants seek discovery of *all* documents and communications relating to Citibank's efforts to recover the mistakenly transferred funds, including communications with *former* lenders.  Two requests are directed exclusively at privileged communications, including Confidential Supervisory Information of the banking regulators. These communications are irrelevant; they have nothing to do with the reasons for the August 11 Transfers or whether those transfers were mistaken.  Nor do they bear on whether *defendants*— non-parties to these communications—had notice that the funds were mistakenly transmitted.

*Pre-transfer discovery.*  Defendants have proposed discovery of a broad swath of documents and communications from several months prior to the August 11 Transfers, dating back to April 15, 2020.  These requests are overbroad both in terms of the timeframe and the subject matter.  This case concerns one set of wire transfers occurring on a single day.  Citibank is willing to agree to discovery into communications prior to August 11 as an offer of compromise, and has proposed August 7 as the cutoff.  But even if some earlier date were appropriate, four months of communications is entirely unnecessary for defendants to get the context for a mistaken transfer that occurred on one day.  In addition, defendants have not even attempted to cabin this request to communications that could conceivably bear on the claims in this case.  Among other things, defendants seek communications about *any* payment to *any* lender under the 2016 Credit Agreement.  That is absurdly overbroad and appears designed to delay resolution of this matter.

*Citibank's internal policies*.  The defendants propose discovery of *all* Citibank policies and procedures about the initiation, cancellation, return, recording, and accounting of wire transfers, including *all* documents reflecting Citibank's policies or procedures to prevent mistaken payments or wires, and *all* policies and procedures related to Citibank's payment of interest and principal on loans, notes, indentures, or other financial instruments for which it acts as trustee or agent— regardless of whether these policies would have been applicable to the August 11 transfers.  Given the extent of Citibank's operations, such discovery goes far beyond what is needed to establish whether Citibank made a mistaken payment on August 11, 2020.  Nor can Citibank's *internal* policies shed light on the issue of whether defendants had notice of the mistake.

Finally, we note that defendants appear to be pursuing a theory that Citibank and Revlon somehow conspired to pay off all of Revlon's debt using Citibank's cash.  This theory is entirely made up and directly contradicts the claims multiple defendants made in a separate suit filed through UMB Bank, which accuses Revlon of improperly attempting to *avoid* paying its creditors.  Complaint ¶¶ 12-18, *UMB Bank v. Revlon,* No. 20-cv-06352 (S.D.N.Y.).  Defendants should not be permitted to use this litigation to develop what they appear to believe is a fallback position in a separate and unrelated case.  This action is about narrow issues and should involve narrow discovery.

**3.      SCHEDULE FOR DISCOVERY AND PRETRIAL DEADLINES**

**a.      Citibank's Proposal**

This Court has set September 30, 2020 as the date for trial to begin. Dkt. 28.  In accordance with that order, we propose the following schedule for discovery and pretrial deadlines:

Hon. Jesse M. Furman, U.S. District Judge
August 24, 2020
Page 5

| | |
|---|---|
| August 25: | Parties serve initial disclosures and serve requests for production and interrogatories. |
| August 28: | Parties serve responses to requests for production and interrogatories. |
| September 7: | Parties complete document production. |
| September 14: | Parties complete depositions. |
| September 21: | Parties complete expert discovery, if necessary. |
| September 25: | Parties file proposed pre-trial order, findings of fact, and conclusions of law, and serve affidavits constituting the direct testimony of each trial witness, deposition excerpts to be offered as substantive evidence, and exhibit lists. |
| September 28: | Parties submit to the Court a list of all affiants whom the submitting party intends to cross-examine at the trial. |
| September 30: | Trial begins. |

    **b.**    **Response to Defendants' Proposal**

The defendants' proposed schedule would delay trial for two-and-a-half months beyond what the Court has contemplated, until December 14, 2020. Defendants suggest that September 30—the date the Court set for trial—should instead be the deadline for the completion of *service of interrogatories*. They then propose that fact discovery continue for another month, until October 30, with another month-and-half for completion of the submissions to the Court. These delays are inexplicable and unjustified in a straightforward but urgent matter like this one. Every day that defendants are allowed to delay these proceedings is a day in which Citibank is deprived of the use of funds that rightfully belong to it. The Court should adopt Citibank's proposal.[2]

Respectfully,

/s/ Matthew D. Ingber

Matthew D. Ingber

---

[2] This is a joint proposal prepared by Mayer Brown and The Law Offices of John F. Baughman. It sets forth Citibank's position with respect to all defendants. Citibank understands that all defendants except Highland Capital Management Fund Advisors LP are now represented by the Quinn Emanuel firm. We conferred with Quinn Emanuel on behalf of their clients and separately with counsel for Highland. We confirmed that counsel for Highland is aware of the opportunity to submit a letter on discovery. Citibank's position is the same with respect to Highland as it is for all other defendants.