**MAYER | BROWN**

Mayer Brown LLP
1221 Avenue of the Americas
New York, NY 10020-1001
United States of America

T: +1 212 506 2500
F: +1 212 262 1910

mayerbrown.com

**Matthew D. Ingber**
Partner
T: +1 212 506-2373
F: +1 212 849-5973
MIngber@mayerbrown.com

September 18, 2020

BY ECF

Hon. Jesse M. Furman, U.S. District Judge
U.S. District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Centre Street, Room 2202
New York, NY 10007

Re:   In re Citibank August 11, 2020 Wire Transfers
      No. 1:20-cv-06539-JMF

Dear Judge Furman:

I write on behalf of plaintiff Citibank, N.A. ("Citibank") in response to defendants' letter of September 16, 2020 (ECF No. 69) requesting expert discovery in this matter. The proposed expert testimony is unnecessary to resolving the narrow issues in this litigation. Citibank respectfully requests that the Court deny defendants' proposal.

This Court's Scheduling Order was unambiguous about the circumstances under which expert discovery would be permitted in this case: "If any party believes that expert discovery is *necessary*" to resolve this litigation, it had to file a motion by September 16 that "explain[s] why expert discovery is *necessary*." ECF No. 46 at 2 (emphasis added). This ruling followed from the Court's determination that discovery in this case should be "limited [in] scope"—confined to the issues of "(a) whether the August 11th transfers were a mistake; and (b) the viability of the [defendants'] discharge-for-value defense." *Id.*; *see also* ECF No. 65 (reiterating that "the issues in dispute in this proceeding [are] whether the transfers were made by mistake and whether the discharge-for-value defense applies" (emphasis omitted)).

This Court can resolve these issues as a matter of law and commonsense. There are serious legal defects in defendants' discharge for value defense, including, among other things, that the defendants had no present entitlement to the money mistakenly transferred because the loan was not due for three more years. As a matter of law, that is fatal to their defense on its own. And expert discovery is unnecessary to resolve any remaining factual issues.

Defendants have not even attempted to satisfy the standard the court has set for expert testimony. They claim to "believe that [expert discovery] will help inform the question of whether Defendants should have known that the August 11, 2020 wire transfers were made erroneously," and that an "expert can provide valuable input . . . on this issue." ECF No. 69 at 1. But in both their letter and

Mayer Brown is a global services provider comprising an association of legal practices that are separate entities including
Mayer Brown LLP (Illinois, USA), Mayer Brown International LLP (England), Mayer Brown (a Hong Kong partnership)
and Tauil & Chequer Advogados (a Brazilian partnership).

Hon. Jesse M. Furman
September 18, 2020
Page 2

in their correspondence with Citibank's counsel, defendants have studiously avoided any assertion that expert discovery is necessary—the standard set by the Court in light of the issues presented.

Nor *could* defendants make such a showing. Defendants do not contend that expert discovery would shed light on the issue of whether they had actual notice that Citibank's overpayment was mistaken. But they argue that such testimony would be "probative" on the issue of constructive notice—that their expert could opine, "based on extensive experience in the markets at issue in this case," on "what parties in Defendants' position would and would not have reason to know upon receipt of payments by wire transfer." ECF No. 69 at 2. Defendants do not explain why an expert would be better situated to address this issue than a fact witness. Nor do they explain what kind of "market" standard would bear on the commonsense questions presented in this case.

No such opinions are necessary. This Court need not parse industry-specific standards to determine whether defendants were on notice that Citibank made a mistake on August 11, 2020, when it wired them funds nearly 100 times greater than the amount of accrued interest *and* the amount indicated for remittance on the corresponding notices. Nor is expert testimony necessary to determine whether a reasonable person in defendants' position would have believed that Revlon actually prepaid the loan on August 11. The complaint in *UMB Bank*, filed by counsel to the defendants in this case, flatly contradicts any such argument. It expressly alleges that the lenders believed that when the suit was filed on August 12, 2020, Revlon was "insolvent and facing a severe liquidity crisis compounded by the global COVID-19 pandemic." Complaint ¶¶ 166-69, *UMB Bank, Nat'l Ass'n v. Revlon, Inc.*, No. 1:20-cv-06352, ECF No. 1. It does not take an expert to assess whether defendants could have reasonably believed that a company that was insolvent and short of cash spontaneously prepaid nearly a billion dollars of debt.

For similar reasons, courts that have considered notice issues in the context of a discharge-for-value defense have relied on fact witnesses, documents, and common sense—not expert opinion. For example, in *In re Calumet Farm, Inc.*, 398 F.3d 555 (6th Cir. 2005)—a case that the Court has recognized bears directly on this litigation (*see* ECF No. 28)—the Sixth Circuit explained that "constructive notice of a mistake may [ ] occur simply as a result of the *size of the transfer* when considered in connection with the *name of the originator*," and found that the recipient's immediate transfer of funds to a separate account was sufficient to show constructive notice. *Id.* at 560-61 (emphases added). In *Qatar National Bank v. Winmar, Inc.*, 650 F. Supp. 2d 1 (D.D.C. 2009), the court found constructive notice based on the fact that, "[l]ess than two months after [the transferee] received a payment of $474,677, it received a second payment of the exact same amount" that "substantially exceeded . . . [the amount] it was owed." *Id.* at 10. *See also* RESTATEMENT (FIRST) OF RESTITUTION § 174 cmt. a ("A person has notice of facts giving rise to a constructive trust not only when he knows them, but also when he should know them; that is, when he knows facts which would lead a *reasonably intelligent and diligent person* to inquire whether there are circumstances which would give rise to a constructive trust." (emphasis added)).

Indeed, defendants cite *no case* for the proposition that expert discovery is relevant to—much less *necessary* to—a determination of constructive notice. Defendants contend that "[c]ourts routinely allow expert testimony concerning industry practice and customs." ECF No. 69 at 2. And that is

Hon. Jesse M. Furman
September 18, 2020
Page 3

surely true, in cases where such practices and customs are relevant. But none of the cases defendants cite involved either constructive notice or the discharge-for-value doctrine. They involved complex issues of copyright law (*Reach Music Pub., Inc. v. Warner Chappell Music, Inc.,* 988 F. Supp. 2d 395, 403 (S.D.N.Y. 2013)); accounting standards (*PFS Distribution Co. v. Raduechel*, 574 F.3d 580, 597 (8th Cir. 2009)); and "anti-money laundering and terrorist financing policies and practices" (*Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 523, 537 (E.D.N.Y. 2012)). Those cases do not resemble this one.

Finally, although defendants have not made anything close to the showing this Court has required, it is worth noting how remarkably one-sided their proposal is. Defendants disagree with Citibank that "if expert discovery is permitted, 'it should be available on both sides on equal terms.'" ECF No. 69 at 1. They "do not share Citibank's view that it should be afforded a direct expert of its own, given its apparent unwillingness to affirmatively request expert discovery." *Id.* at 1-2.

That is not how discovery works. Citibank does not believe that expert testimony on constructive notice is necessary. But if the Court finds that such testimony *is* necessary, then Citibank should not be precluded from submitting that expert testimony. Indeed, defendants do not even argue that they would suffer any prejudice were Citibank permitted to offer an expert of its own—they instead claim that Citibank should be precluded from doing so simply for refusing to join in their motion.

The Court should deny defendants' request.

Respectfully submitted,

/s/ Matthew D. Ingber

Matthew D. Ingber
Partner