

Office of the Comptroller of the Currency

Washington, DC 20219

*Via Email*

September 18, 2020

Hon. Jesse M. Furman, U.S. District Judge
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007
Furman_NYSDChambers@nysd.uscourts.gov

Subject:   *In re Citibank August 11, 2020 Wire Transfers*,
           Case No. 1:20-civ-06539 (JMF) (S.D.N.Y.)

Dear Judge Furman:

This letter responds to your Order dated September 14, 2020, ECF No. 65, ("Order") directing the Office of the Comptroller of the Currency ("OCC" of "Agency") and other bank regulators to submit objections regarding whether Citibank, N.A. ("Citibank" or "Bank") should be required to comply with the defendants' Request for Production 1(i) in the above-captioned litigation ("Litigation").  Request for Production 1(i) seeks documents and communications between Citibank, the OCC, and other bank regulators regarding the August 11, 2020 wire transfers at issue in the Litigation.  The OCC objects to Citibank's compliance with this discovery request.  Specifically, the OCC has reviewed the six (6) email exchanges between Citibank representatives and OCC staff identified by Citibank as responsive to Request for Production 1(i).  The emails and their attachments, dated August 13 to September 4, 2020,[1] provide information to and respond to inquiries from the OCC and other bank regulators about the August 11 wire transfers and include internal legal discussions addressing the same topic.[2]  As such, the emails and attachments thereto are core supervisory communications between Citibank and the OCC.

The OCC asserts the bank examination privilege with respect to these supervisory communications and objects to their production.  The communications and documents at issue here fall squarely within the scope of information protected by the bank examination privilege. *See In re Subpoena Served Upon the Comptroller of the Currency, and the Sec'y of the Bd. of*

---

[1] In total, the emails and their attachments consist of eleven (11) communications and documents.
[2] Internal Citibank documents and communications subject to other privileges, including attorney-client communications and attorney work product, do not lose their privileged status when forwarded to bank regulators. 12 U.S.C. § 1828(x).

*Governors of the Fed. Reserve Sys.*, 967 F.2d 630, 633–34 (D.C. Cir. 1992).  In describing the scope and nature of the privilege, the D.C. Circuit in *In re Subpoena* noted:

> Because bank supervision is relatively informal and more or less continuous, so too must be the flow of communication between the bank and the regulatory agency. Bank management must be open and forthcoming in response to the inquiries of bank examiners, and the examiners must in turn be frank in expressing their concerns about the bank. These conditions simply could not be met as well if communications between the bank and its regulators were not privileged.

*Id.* at 634. *See also Wultz v. Bank of China Ltd.*, 61 F. Supp. 3d 272, 280 (S.D.N.Y. 2013) (holding that "the bank examination privilege is a qualified privilege that protects communications between banks and their examiners in order to preserve absolute candor essential to the effective supervision of banks").

The documents in question pose exactly the type of frank communication that is protected by the privilege.  Officials at Citibank reached out to the OCC (and other regulators) to inform the Agency of an incident of some significance to the Bank, providing the OCC with an "open and forthcoming" response that included privileged bank material.  From the OCC's perspective, *not* protecting the ability of its banks to promptly and candidly inform its prudential regulator of significant events at the institution without having to take into consideration whether a communication will subsequently be subject to disclosure in private litigation will cast a significant chill upon this vital communication channel.  The bank examination privilege provides the necessary safe harbor to foster the "absolute candor essential to the effective supervision of banks."  *Wultz,* 61 F. Supp. 3d at 280.

Nor does the OCC believe that cause exists for overriding this privilege. The bank examination privilege is a qualified privilege and may be overridden "where necessary to promote the paramount interest of the Government in having justice done between litigants, or to shed light on alleged government malfeasance."  *Federal Hous. Fin. Agency v. HSBC N. Am. Holdings Inc.*, Case No. 11-civ-6189 (DLC), 2014 WL 1909446, at *4 (S.D.N.Y. May 13, 2014) (quoting *Federal Hous. Fin. Agency v. JPMorgan Chase & Co.*, 978 F. Supp. 2d 267, 279 (S.D.N.Y. 2013) and *In re Subpoena*, 967 F.2d at 634 (citation omitted)).  As Judge Weinstein observed in *In re Franklin National Bank Securities Litigation*, 478 F. Supp. 577 (E.D.N.Y. 1979), factors to be considered in weighing whether to overcome the privilege include:

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the "seriousness" of the litigation and the issues involved; [and] (iv) the role of the government in the litigation …"

*Id.* at 583 (citations omitted).  *See also* 12 C.F.R. § 4.33(a)(3)(iii) (requiring a party seeking administrative authorization to use confidential supervisory information in a private adversarial matter to show, among other factors, "that the information is relevant to the purpose for which it is sought" and "that other evidence reasonably suited to the requester's needs is not available from any other source").  Here, the defendants have not shown either that the withheld

2

communications between Citibank and the OCC is the only (or indeed, best) source of information regarding any relevant factual question that is in dispute.³  Accordingly, the Court should sustain the assertion of the bank examination privilege and not require Citibank's compliance with Request for Production 1(i). *See Federal Hous. Fin. Agency*, 2014 WL 1909446, at *4 (overriding bank examination privilege inappropriate where privileged documents have "marginal relevance to the litigation" and "the focus of the legal claims . . . is not on the legality or legitimacy of the conduct of our government").

Respectfully Submitted,

*Gregory F. Taylor*

Gregory F. Taylor
Director for Litigation

cc:

Matthew D. Ingber (mingber@mayerbrown.com)
*Counsel for Plaintiff Citibank, N.A.*

Robert Scott Loigman (robertloigman@quinnemanuel.com)
*Counsel for Defendants*

The Court received this letter by email.  Per the Court's Order of September 15, 2020, *see* ECF No. 65, Defendants shall file any response (in the form of a single letter responding to this, the FDIC letter, and any other objections filed) by September 21, 2020 (and shall simultaneously serve it electronically on Mr. Taylor).  Citibank shall not produce any of the materials at issue until the Court orders otherwise.  SO ORDERED.

September 18, 2020

---

³ The defendants' other discovery requests seek internal business records from Citibank that would provide factual information relevant to the Bank's claims and the defendants' defenses without revealing privileged supervisory communications.  *See* Defendants' Motion to Compel, ECF No. 63, Exh. A.  The Bank's books and records generally are not protected by any privileges held by the OCC.  The OCC has no objection to the Bank producing its own business records to the extent the records produced do not reveal the contents of confidential supervisory communications between the OCC and the Bank.