quinn emanuel trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7444**

WRITER'S EMAIL ADDRESS
**robertloigman@quinnemanuel.com**

September 22, 2020

<u>VIA ECF</u>

Hon. Jesse M. Furman
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re: <u>In re Citibank August 11, 2020 Wire Transfers</u>, No. 1:20-cv-06539-JMF (S.D.N.Y.)

Dear Judge Furman:

We write on behalf of Defendants to oppose Citibank's motion to compel production of documents relating to the so-called "control" issue.

On August 11, 2020, Citibank wired payments on the 2016 Revlon term loans to hundreds of lenders. Each lender received a payment in the amount of its outstanding principal and accrued interest through that date. A week later, in a series of separate actions, Citibank chose to sue not those lenders to whom it sent the money, but rather the investment managers that advise those lenders. There is no dispute that the investment managers did not themselves receive any of the payments from Citibank and that it is not their money. Citibank continued to sue the managers, rather than the lenders that received the money, even after we identified this issue to Citibank, on August 18, in our response to the first TRO motion. ECF Dkt. 22.

Citibank chose to address this issue by entering into a stipulation, jointly agreed to by the parties, which was so-ordered by the Court on August 31. ECF Dkt. 52. In that stipulation, which the parties (Citibank, on the one hand, and 11 independent investment firms on the other) heavily negotiated, Defendants confirmed that they would comply with all Court orders and take all reasonable steps to direct the lenders to do the same, and agreed that they would not argue that any Court order would not apply to the lenders. Defendants further agreed to request that the lenders inform them promptly "if [the lenders] do not intend on complying with applicable orders of the Court." *Id.* Defendants also made clear, however, that they cannot underwrite the lenders' ultimate compliance with Court orders.

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE | BOSTON | SALT LAKE CITY
LONDON | TOKYO | MANNHEIM | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH | SHANGHAI | PERTH | STUTTGART

Remarkably, Citibank now argues that the stipulation was solely to obviate the need for Citibank to sue the lenders, and that "the stipulation ***does not limit discovery*** in any way." ECF Dkt. 72 at 2 (emphasis in original). Avoiding burdensome discovery over this issue, however, is precisely the reason Citibank proposed that the parties negotiate the stipulation in the first place. On August 25, counsel for Citibank wrote:

> Thanks Alex. I don't know if you joined yesterday's call, **but to avoid discovery/litigation over the control question**, we proposed trying to secure the funds' agreement to be bound by any final orders of the court. Ben offered to consider it. Any update?

Exhibit A at 6 (emphasis added). In other words, Citibank induced Defendants to enter into the stipulation and to bind themselves to its requirements by asserting that the stipulation would "avoid discovery" on the "control question." *Simply put, Citibank is now seeking the very discovery the stipulation was intended to preclude.*

The stipulation alone should dispose of Citibank's motion. Seeking this discovery after inducing Defendants to execute a stipulation to obviate the need for exactly this discovery is inappropriate. Yet there are more reasons why the discovery Citibank now seeks is unjustified:

*First*, discovery regarding Defendants' relationships with the lenders has nothing to do with "(a) whether the August 11th transfers were a mistake; and (b) the viability of the discharge-for-value defense," which this Court set forth as the limitations on discovery in this case. Scheduling Order, ECF Dkt. 46; *see also* September 15, 2020 Order, ECF Dkt. 65 ("the Court is unpersuaded that the materials sought are relevant to the issues in dispute in *this* proceeding—namely, whether the transfers were made by mistake and whether the discharge-for-value defense applies."). These are the exact limitations on discovery that Citibank pressed for in its August 24 letter to the Court, where it argued that such limitations would permit the action to proceed on an abbreviated schedule to trial. ECF Dkt. 41 at 3. Documents concerning the relationship between the Defendants and the lenders they manage or advise have no bearing whatsoever on these issues. Such discovery also goes beyond anything in the Complaint: Indeed, Citibank included no allegations regarding the relationship between Defendants and the recipients of the wire transfers in its several complaints—even after Defendants specifically advised the Court that Citibank was not suing the parties to whom it wired the money. Citibank, of course, either believed the issue was not relevant to its claims, or did not want to focus the Court's attention on its litigation decision as to which parties to sue.[1]

---

[1] While Defendants do not fully understand Citibank's determination to sue investment managers rather than the lenders, and/or whether Citibank's determination was mistaken or strategic, Defendants have determined to defend against the merits of Citibank's claims for the benefit of the lenders. While there would be no basis to impose liability on Defendants for the return of funds they did not receive (assuming New York's discharge for value rule did not apply squarely to these facts), Defendants would of course comply with any Court order requiring that Defendants instruct the lenders to return such funds.

2

*Second*, Citibank's strategic decision to raise this issue now is manipulative. Just three days after receiving Citibank's August 31 document request, Defendants responded in writing that they would not produce such documents. By September 6, Citibank acknowledged in writing that the parties were at an "*impasse*" on this issue, which "*impasse*" Defendants confirmed the very same day. *See* ECF Dkt. 72 at 52-53 (Exhibit D to Citibank's letter motion to compel). Defendants, for their part, complied with the Court's Order providing that discovery disputes be raised "promptly," ECF Dkt. 46 at 3, filing a motion on September 7 to address requests to which Citibank refused to produce documents. Citibank, however, held this issue in its pocket for more than 10 days, only to raise it *after* the Court denied Defendants' motion to extend the case schedule. ECF Dkt. 65. Plainly, Citibank did not want to argue in favor of this substantial expansion of discovery while simultaneously opposing Defendants' request to extend the current schedule. At a minimum, Citibank's approach fails to comply with the Court's requirement that "[c]ounsel should seek relief in accordance with these procedures in a timely fashion," and that relief is "unlikely to be granted" to parties that wait until near the close of discovery "to raise an issue that could have been raised earlier." ECF Dkt. 46 at 3.

*Third*, and closely related to Citibank's strategic delay in raising this issue, the discovery Citibank now seeks would be extensive, difficult to compile, and wholly implausible in the time permitted for completion of discovery. As Citibank knows, there are 11 Defendants in this case that collectively manage approximately *130 lenders*. As indicated on page 3 of its motion, Citibank is now seeking production of five categories of documents, including "any contract" that defines the relationship between Defendants and each of their Customers. ECF Dkt. 72 at 3. For "indirect" customers, Citibank seeks "any contract completing the chain" between Defendants and those customers, geometrically expanding the universe of documents. *Id.* This is extensive discovery of files, not easily located through e-mail searches or otherwise, concerning more than 100 separate relationships. There is no basis for imposing such a burden on Defendants, especially given the lack of nexus between the discovery sought and the "narrow" topics the Court has identified as the outer limits of discovery in this case.

Finally, Citibank's assertion that Defendants are "trying to have it both ways" is backwards.[2] ECF Dkt. 72 at 2. It is Citibank that chose to sue entities to which it did not send any funds, and it is Citibank that urged this Court to implement an expedited schedule specifically because discovery could be limited to two topics (neither of which encompasses issues of "control"). Moreover, far from taking advantage of Citibank's decision to sue only managers, Defendants have cooperated to promote judicial efficiency, including by stipulating to "take all reasonable steps to direct and/or request that the various Non-Defendant funds managed or advised by such Defendant comply with any and all applicable orders of the Court." ECF Dkt. 52 at 1. Such cooperation is not grounds for subjecting Defendants to extensive and burdensome discovery on an issue that is not even relevant to whether the payments need to be returned.

---

[2] Citibank claims Defendants' position regarding the disputed funds has changed over time. That is demonstrably false. Curiously citing a September 15 news article, Citibank notes a report that "Brigade has said that it isn't a lender to Revlon and doesn't have the money." ECF Dkt. 72 at 1. Approximately one month earlier, *in its very first filing in this case*, Brigade (then the sole Defendant) stated that "Brigade itself was not a lender and does not have the money for which Citibank is now suing." ECF Dkt. 22, at 2.

3

For the reasons set forth above, Citibank's motion to compel should be denied.

Respectfully submitted,


/s/ Robert S. Loigman
Robert S. Loigman

cc    Counsel of Record (via ECF)