**MAYER | BROWN**

Mayer Brown LLP
1221 Avenue of the Americas
New York, NY 10020-1001
United States of America

T: +1 212 506 2500
F: +1 212 262 1910

mayerbrown.com

**Christopher J. Houpt**
Partner
T: +1 212 506-2380
F: +1 212 849-5830
CHoupt@mayerbrown.com

October 16, 2020

BY ECF

Hon. Jesse M. Furman
U.S. District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Centre Street, Room 2202
New York, NY 10007

Re:   In re Citibank August 11, 2020 Wire Transfers,
      No. 1:20-cv-06539 (JMF)

Dear Judge Furman:

    I write on behalf of plaintiff Citibank, N.A. in response to defendants' letter motion to compel dated October 13, 2020. Def. Mot. (Dkt. 109).

    Discovery has demonstrated that defendants knew Citibank's transfer of funds on August 11, 2020 was mistaken. Indeed, several defendants instructed other parties to return the payments to Citibank after receiving its recall notices—and reversed that decision only when Quinn Emanuel instructed them not to repay the funds.[1] So defendants have now fallen back on a new theory. They have moved to compel Citibank's communications with the much larger number of *non-party* "lenders who returned the money" because the defendants "suspect"—with no articulated foundation—"that Citibank applied pressure on those lenders." Def. Mot. at 1-2. These post-transfer nonparty communications are irrelevant to the two "limited" issues in this case: "(a) whether the August 11th transfers were a mistake; and (b) the viability of the discharge-for-value defense." Scheduling Order (Dkt 46) at 1. But in any event, defendants' motion is moot as to documents because Citibank has *agreed* to produce documents responsive to their request.

    There is no basis for compelling a Rule 30(b)(6) deposition. Post-transfer communications do not bear on whether Citibank's transfers were actually a mistake—which does not depend on *any* lender's knowledge. Nor do they bear on whether defendants can rely on the discharge-for-value rule—which depends on what *defendants* knew or should have known. See RESTATEMENT (FIRST) OF RESTITUTION § 14 (1937) ("A creditor of another . . . who has received

---

[1] Ex. A ( ███████████████████████████████████████████████████████████ ).

Mayer Brown is a global services provider comprising an association of legal practices that are separate entities including
Mayer Brown LLP (Illinois, USA), Mayer Brown International LLP (England), Mayer Brown (a Hong Kong partnership)
and Tauil & Chequer Advogados (a Brazilian partnership).

from a third person any benefit in discharge of the debt or lien, is under no duty to make restitution thereof . . . if the *transferee* . . . did not have notice of the transferor's mistake." (emphasis added)).

Defendants nonetheless contend that nonparty lender communications are material for two reasons. First, they say that this evidence "will reveal whether the lenders and managers initiated outreach to Citibank to report the receipt of a 'mistaken' transfer . . . upon receipt of the funds . . . or instead whether they were contacted first by Citibank." Def. Mot. at 2. Defendants do not explain why it matters whether lenders identified the mistake "upon receipt of the funds." The viability of their discharge-for-value defense turns on whether defendants themselves had notice of the mistake before *discharging the debt*. *See In re Calumet Farm, Inc.*, 398 F.3d 555, 560 (6th Cir. 2005) ("[T]he discharge-for-value defense will apply unless the beneficiary receives notice of a mistake before the beneficiary of the transfer credits the debtor's account."). To the extent that the views of the market generally are relevant at all, the Court has allowed defendants to present expert testimony on constructive notice.

Defendants argue next that the nonparty communications are relevant because they "*suspect* that Citibank applied pressure on [other] lenders that returned funds." Def. Mot. at 2 (emphasis added). However, contemporaneous communications of non-party lenders are simply irrelevant. And again, Citibank's communications with other lenders has no bearing on whether the *defendants* had notice of the mistake.

Furthermore, defendants' motion should be denied as moot as it relates to requests for documents that Citibank has already produced. In the request for production identified in defendants' motion, they sought "[c]ommunications between Citibank and any current or former lenders under the 2016 Credit Agreement regarding the return of funds transferred by Citibank." Dkt. 109-2 at 10. On September 3, 2020, Citibank responded that this request was "not relevant to the extent it call[ed] for documents related to Citibank's post-transfer recovery efforts" (*id.*), a position that aligns with this Court's discovery rulings. *See* Dkt. 46 ("Citibank's *post*-transfer recovery efforts are unlikely to be relevant to the issues in dispute (except insofar as they include communications that are relevant to whether the wire transfers were a mistake)."). Nevertheless, on September 4, 2020—a day after Citibank sent its responses—Citibank told defense counsel: "In the interest of compromise, we will agree to produce responsive non-privileged information . . . in response to [Request for Production] . . . 10. We are not conceding that this material is relevant." Ex. B. As of October 1, 2020, Citibank has produced all documents responsive to this request, to the extent they hit on the search terms and custodians that were agreed upon by the parties. *See, e.g.*, Ex. C. But on October 13, without warning, defendants filed this motion. The premise of their motion—that "Citibank refused to produce responsive documents" (Def. Mot. at 3)—is demonstrably false.

It is telling, however, that defendants now consider the nonparty lenders to be so central to their case. They began this litigation with the theory that *no defendant* had reason to believe that the August 11 transfers were anything other than deliberate principal payments on the Revlon debt. That theory has been refuted by discovery. Defendants' own testimony and contemporaneous communications show that their employees not only were aware of the mistake, but internally

ridiculed Citibank's employees for making it and ordered their trustees and custodians to ignore Citibank's notices of the mistake and requests for return of the funds. Indeed, several defendants *expressly concluded* that the Citibank payment was mistaken, and *instructed trustees to return the funds*, but stopped payment at the direction of Quinn Emanuel. *See* Ex. A. Given the discovery to date—which demonstrates that the defendants had *both* constructive and actual notice of the mistake, and never discharged the Revlon debt at all—it is no wonder that they have chosen to look for evidence elsewhere.

Because Citibank has already produced documents sought in defendants' motion to compel, and because preparing another Rule 30(b)(6) witness would be burdensome and the testimony irrelevant, we respectfully submit that the Court should deny the motion.

Respectfully submitted,

*/s/ Christopher J. Houpt*
Christopher J. Houpt