**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7229**

WRITER'S EMAIL ADDRESS
adamabensohn@quinnemanuel.com

October 18, 2020

**VIA ECF**

Hon. Jesse M. Furman
United States District Court for the
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re:   *In re Citibank August 11, 2020 Wire Transfers*, No. 20 Civ. 06539 (JMF) (S.D.N.Y.)

Dear Judge Furman:

      I write on behalf of Defendants in response to Citibank's letter to the Court dated October 16, 2020 (Dkt. 117), to address Citibank's mischaracterizations of the record and governing legal standard in this case.

      As an initial matter, Citibank's assertion that its communications with non-party lenders and fund managers are "irrelevant" is flatly at odds with Citibank's repeated representations to this Court that the decision by certain of those lenders to return a portion of the August 11 Transfers is the "best evidence" that those lenders had concluded—and that Defendants therefore should have concluded—that the transfers were by mistake and that Citibank was entitled to the funds. *See, e.g.*, Complaint, Case No. 1:20-cv-06617 (Dkt. 1), at ¶ 3.  Citibank cannot have it both ways:  It cannot rely on evidence that certain lenders returned funds while blocking discovery into whether the actions of those lenders actually supports the inferences Citibank is asking the Court to make.  The undoubted reason that Citibank is resisting the requested discovery is because it recognizes that it will not support its claims.  Defendants fully expect— *and Citibank never denies*—that discovery will demonstrate that virtually no lenders concluded upon receipt of the August 11 Transfer (and without subsequent outreach by Citibank), that it had occurred by mistake, or that they should return any portion of the funds.[1]

---

[1]  It is an empty assertion for Citibank to claim that it has already produced the requested communications, "to the extent they hit on the search terms and custodians that were agreed upon by the parties."  Letter from C. Houpt, dated Oct. 16, 2020 (Dkt. 117) ("Plaintiff's Letter"), at 2.  Citibank has refused to identify those custodians who "were involved in seeking the return of funds transferred pursuant to the Citibank Wire Transfers," (Dkt. 109-1 (Resp. & Objs. to

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE | BOSTON | SALT LAKE CITY
LONDON | TOKYO | MANNHEIM | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH | SHANGHAI | PERTH | STUTTGART

Citibank is also wrong in how it characterizes the discovery record thus far, and in how it characterizes Defendants' position. Defendants have not "fallen back on a new theory," and discovery has not shown that Defendants "knew Citibank's transfer of funds on August 11, 2020 was mistaken." Plaintiff's Letter, at 1. To the contrary, Defendants' position—from day one of this litigation—has been that they were not on notice that the August 11 Transfers were made by mistake (if they were made by mistake). *See* Ltr. from R. Loigman, dated Aug. 18, 2020 (Dkt. 22), at 3. And discovery has confirmed the point. There is not a shred of evidence—and Citibank does not identify a shred of evidence—that a single Defendant (or any lender) had concluded, *upon receipt of the August 11 Transfers or at any time prior to Citibank alleging mistake 20 hours later*, that those Transfers had occurred by mistake. Instead, the evidence has shown that Citibank transferred the precise amount of principal and accrued interest owed to each lender to the penny; that Citibank, in its entire history, had never made a mistaken transfer of the size or type that it claims occurred on August 11; and that Defendants reasonably concluded that the transfer was exactly what it appeared to be—voluntary prepayments of outstanding loans—and not, as Citibank maintains, an historically unprecedented, and yet somehow patent, mistake.[2]

Citibank tries to obscure these facts by asking the Court to focus on Defendants' actions after Citibank sent "notices of the mistake and requests for return" (Plaintiff's Letter, at 3), in which Citibank asserted for the first time—*more than 20 hours after receipt* of the August 11 Transfer—that the funds had been paid by mistake. And Citibank claims this is the relevant timeframe for assessing whether the loans were discharged, as opposed to the time that the funds were actually received, by invoking a single out-of-jurisdiction case setting forth Kentucky law (Plaintiff's Letter, at 2), *In re Calumet Farm, Inc.*, 398 F.3d 555 (6th Cir. 2005), which is irreconcilable with, and implicitly rejects, the New York authority that governs this action.[3] That

---

Defs.' First Set of Interrogatories) at 8-9), and the search terms did not include the names of the lenders and/or fund managers who returned funds. Moreover, Citibank itself told Defendants that it was rejecting their request for the production of these documents for the period from August 11 through August 17 because the additional searches "would vastly expand upon" the parties' agreement concerning search parameters for electronic discovery, *see* Dkt. 109-3 (Oct. 6, 2020 e-mail from A. Zolot)—an objection that would make no sense if, as Citibank suggests, Defendants are requesting documents "that Citibank has already produced." *See* Plaintiff's Letter, at 2.

[2] The notion that it was somehow inappropriate, or probative of anything, that Defendants sought legal counsel before determining their rights with respect to the funds upon Citibank's demand to return those funds is unremarkable. No further response to Citibank's frivolous assertion in this regard is warranted.

[3] *Calumet* expressly relies on the reasoning of *NBase Communications, Inc. v. American National Bank & Trust Company of Chicago*, 8 F. Supp. 2d 1071 (N.D. Ill. 1998). *NBase*, unlike *Calumet*, conducted a thorough analysis of *Banque Worms* and acknowledged that, under New York law, the *time of receipt* is the relevant point for determining notice of error. *Id.* at 1076. *NBase* rejected that view, explaining that "*Banque Worms* was based on several New York cases holding that in order to achieve finality in commercial transactions, possession of money vests title in the holder. ANB has not demonstrated that Illinois case law establishes a similar tradition. Because we are sitting in diversity, we are reluctant simply to adopt another state's

controlling authority, *Banque Worms v. BankAmerica International*, 77 N.Y.2d 362 (1991), holds that "*[w]hen a beneficiary receives money* to which it is entitled and has no knowledge that the money was erroneously wired, the beneficiary should not have to wonder whether it may retain the funds; rather, such a beneficiary should be able to consider the *transfer of funds as a final and complete transaction, not subject to revocation*." *Id.* at 373 (emphasis added). Assuming *arguendo* that decision does not by itself resolve the issue of when the test should be applied, the Second Circuit and this Court, in separate decisions, cement the conclusion. This Court concluded that notice of an error *two hours* "after the funds were transferred by wire is not material" and that separate, controlling Second Circuit law concerning the finality of wire transfers left no room for any argument that the discharge for value analysis should be delayed in order to await for "mere bookkeeping." *Banque Worms v. Bank America Int'l*, 726 F. Supp. 940, 942 (S.D.N.Y. 1989). The Second Circuit, after considering the New York Court of Appeals decision, affirmed this Court's ruling, rejecting all of appellant's arguments, including those advanced by Citibank in this case. *See Banque Worms v. Bank America Int'l*, 928 F.2d 538, 541 (2d Cir. 1991) ("At the time it *received* the mistaken payment, Banque Worms was Spedley's *bona fide* creditor," having "made no misrepresentation regarding the transfer or its right to receive the funds and . . . not hav[ing] notice of the transferor's error."). Persuasive authority, from the Court of Appeals for the Seventh Circuit, further defeats Citibank's argument that *Calumet* is consistent with or can be reconciled with New York law as enunciated by *Banque Worms*. *See General Elec. Capital Corp. v. Central Bank,* 49 F.3d 280, 284 (7th Cir. 1994) (Easterbrook, J.) ("As the [New York] Court of Appeals saw things [in *Banque Worms*], a creditor should be able to treat funds credited in apparent payment of a debt as irrevocably his, *unless news of the error precedes arrival of the funds*. Costs of errors should be borne by those who make errors (the better to induce them to take care) rather than by innocent beneficiaries.") (emphasis added).

   In sum, Citibank's persistent misstatement of the discharge for value defense should have no place in the Court's consideration of the motion now before it. Defendants are entitled to their requested discovery, and Citibank's efforts to avoid that discovery through inaccurate assertions regarding the record and the law, should be rejected.

Respectfully submitted,

*/s/ Adam M. Abensohn*

Adam M. Abensohn

cc: Counsel of Record (via ECF)

---

view that is clearly based on that state's tradition." *Id*. (emphasis added; citation omitted). Eliminating all doubt as to the court's view of New York law, the *NBase* court stated, "we disagree with *Banque Worms*' approach." *Id*.