Exhibit A-2

It is now settled ... that money paid under
a mistake of fact may be recovered back,
however negligent the party paying may have
been in making the mistake, unless the
payment has caused such a change in the
position of the other party that it would be
unjust to require him to refund.

Id. at 213.  Accord, Manufacturers Hanover Trust Co. v.

Chemical Bank, No. 30740-89 (Sup. Ct. N.Y. Co. Sept. 11, 1989)

appeal pending (Exhibit A hereto) (on summary judgment, funds

wire transferred by mistake must be returned even though used

to reduce creditor bank's overdraft from insolvent debtor; no

detrimental reliance); Bankers Trust Co. v. Manufacturers and

Traders Trust Co., No. 6747-88 (Sup. Ct. N.Y. Co. October 21,

1988) (Exhibit B hereto) (on summary judgment, wire transferred

funds ordered returned; use of erroneous payment to satisfy

other obligations not detrimental reliance); Citibank, N.A. v.

Warner, 113 Misc.2d 748, 449 N.Y.S.2d 822 (Sup. Ct. N.Y. Co.

1981)(on summary judgment, funds mistakenly credited to wrong

account must be returned; no detrimental reliance even though

defendant made use of the funds); Manufacturers Trust Co. v.

Diamond, 17 Misc.2d 909, 186 N.Y.S.2d 917 (1st Dep't 1959)

(bank entitled to return of check amount drawn to creditor on

closed account); Valley Bank of Nevada v. Bank of Commerce, 74

Misc.2d 195, 343 N.Y.S.2d 191 (N.Y. Civ. Ct. N.Y. Co. 1973)(on

summary judgment, bank entitled to recover funds paid on forged

check even though it had no right to the funds under the

U.C.C.); Bank Leumi Trust Co. v. Bally's Park Place, Inc., 528

F. Supp. 349, 354-355 (S.D.N.Y. 1981)(on summary judgment,

amount of check returned where creditor had claim against

estate of insolvent debtor and had presented check in hope of

mistaken payment) **Citibank, N.A. v. Misulovin**, slip op. (Sup. Ct. N.Y. Co. 1989) (Exhibit C hereto) (on summary judgment, mistaken computer deposit ordered returned; no detrimental reliance when defendant used money believing it to be a wedding gift from his father).

It is also well established that the fact that the person to whom a mistaken payment was made is a creditor of the depositor does not alter the general rule. Any recipient of a mistaken transfer has the burden of pleading and proving detrimental reliance. **Ball v. Shepard**, 202 N.Y. 247, 253 (1911). For example, in the case first enunciating the general rule, **Nat'l Bank of Commerce of New York v. Nat'l Mechanics Banking Ass'n in New York**, 55 N.Y. 211 (1873), the party seeking to retain the mistaken payment, National Mechanics Banking Association, claimed that it should be allowed to keep the money as a result of its overdraft position with its depositor. Plaintiff National Bank of Commerce had certified its check in a certain amount. Thereafter, the check had been fraudulently increased by defendant's depositor who deposited it in his account at defendant's bank and withdrew the proceeds. Plaintiff bank subsequently cashed the check without discovering the alteration. The Court held that plaintiff could recover the amount of the proceeds even though defendant was unquestionably owed money by its absconding depositor and that such a claim of loss could not be a defense to an action where the loss had been incurred prior to the mistaken payment. **Id**. at 216.

Similarly, in **Manufacturers Trust Company v. Diamond**,
17 Misc.2d 909 (1st Dep't 1959), a leading case frequently
cited, a bank was allowed recovery of funds paid by check to a
creditor where the check had been drawn on an account now
closed.   The Court found no detrimental reliance by defendant,
although it appeared that the maker of the check had
disappeared:

> The plaintiff's case put in the worst light
> shows that the mistake was solely its own
> and was due to its negligence.   Its
> negligence, however, does not defeat its
> right to recover so long as the defendant
> did not suffer as the result of its
> mistake.   As long ago as 1873 the Court of
> Appeals in **National Bank of Commerce in N.Y.**
> **v. National Mechanic's Banking Assn. of N.Y.**
> (55 N.Y. 211, 213) declared: 'It is now
> settled, both in England and in this State,
> that money paid under a mistake of fact may
> be recovered back, however negligent the
> party paying may have been in making the
> mistake, unless the payment has caused such
> a change in the position of the other party
> that it would be unjust to require him to
> refund.'   The doctrine here announced has
> been reaffirmed (**Lawrence v. American Nat.**
> **Bank**, 54 N.Y. 432; **Turetsky v. Morris Plan**
> **Ind. Bank**, 22 N.Y.S.2d 514; **Yonkers Nat.**
> **Bank & Trust Co. v. Yerks & Co.**, 142
> Misc.640, affd. 234 App. Div. 885).

> There is no reason why a bank, merely
> because it is a bank, should be denied
> recovery of money paid by mistake in
> circumstances which would justify recovery
> by anyone else.   Banks have been held
> entitled to relief in such situations
> (**Metropolitan Life Ins. Co. v. Bank of**
> **United States**, 259 N.Y. 365; **Chase Nat. Bank**
> **of City of N.Y. v. Battat**, 105 N.Y.S.2d 13;
> **Smith & McCrorken v. Chatham Phenix Nat.**
> **Bank & Trust Co.**, 239 App. Div. 318, and
> cases already cited).

17 Misc.2d at 909-10, 186 N.Y.S.2d at 918.

In **Cukierski v. Standard Milling Company**, 60 Misc.2d
690 (N.Y. Civ. Ct. N.Y. Co. 1969), the court, in a money had

- 26 -

and received action, squarely rejected allowing a creditor to keep a payment made by its debtor's president.  The court wrote:

> [T]here was no intent to apply the money to the corporation's general indebtedness.  The payment was made through a mutual mistake of fact and in equity and good conscience cannot be retained by the defendant.  This is so despite the large indebtedness due from the Stephens Corporation because the plaintiff personally was under no obligation in respect to that indebtedness.

Id. at 588 (citations omitted).

In Turetsky v. Morris Plan Industrial Bank of New York, 22 N.Y.S.2d 514 (2d Dep't 1936), plaintiff sued to collect the amount of two checks which had been mistakenly paid over stop payment orders.  Defendant was given credit by the drawee bank for the checks, but reversed the credit a week later upon being advised of the mistake by the drawee bank. Plaintiff's motion for summary judgment was denied.  The court held that New York's Negotiable Instruments Law did not prevent the bank's recovery of the mistaken payment under the general rule that "banks paying out money by mistake may recover even though they were negligent in making the mistake, provided no damage has been suffered by the party receiving the money." Id. at 515 (citations omitted).

Likewise, in Manufacturers Hanover Trust Co. v. Chemical Bank, supra, (Exhibit A hereto), the court granted summary judgment to plaintiff and held that far from detrimental reliance, Chemical had obtained an unjust benefit when it applied the mistaken wire transfer to reduce its overdraft position.  The Court wrote:

> The party resisting repayment (defendant here) bears the burden of proving his detrimental change in position.

> Defendant has failed to meet this burden.
> It did not, for example, ship goods in
> return for the mistaken payment or pay out
> on an erroneously certified check.  Instead,
> defendant credited an overdrawn account,
> which act taken in reliance upon the
> mistaken payment, ultimately resulted in a
> reduction of defendant's loss on that
> account.  Thus, far from changing its
> position to its detriment, defendant
> actually benefitted from plaintiff's
> mistaken payment, see Blue Cross of Central
> New York, Inc. v. Wheeler, 93 A.D.2d 995
> [4th Dept. 1983].
>
> The fact that Hazza is now judgment-proof
> does not establish that defendant has
> changed its position to its detriment so
> that the parties cannot be placed in status
> quo.  If defendant honored Hazza's debit
> authority, it would have taken that much
> greater a loss on the Hazza account.
> Payment to plaintiff now would have the same
> effect.  Therefore, since defendant has not
> changed its position to its prejudice by
> reason of plaintiff's payment, any
> negligence of plaintiff would not defeat its
> right to recover, Parsa v. State of New
> York, 64 N.Y.2d.  143 [1984]; Manufacturers
> Trust Co. v. Diamond, 17 Misc.2d. 909 [App.
> T. 1st. Dept. 1959].

Id. slip op. at 2.

Finally, in **Bankers Trust Company v. Manufacturers and
Traders Trust Co.,** **supra** (Exhibit B hereto), the Supreme Court
on summary judgment directed the return of $500,000 in
mistakenly transferred funds, holding there was no detrimental
reliance:

> MHT further claims, however, that it
> detrimentally changed its position in
> reliance on plaintiff's payment and,
> therefore, Bankers Trust may not
> recover. . . .  MHT admits that the $500,000
> was placed in an abeyance account and was
> "paired off against another transaction"
> which cannot be identified.  The use of an
> erroneous payment to satisfy other
> obligations or to engage in another
> transaction does not constitute a
> detrimental change of position and is not a

> defense to an action to recover a mistaken
> payment (44 NY Jur, Payment, § 106).

Id. slip op. at 3-4.

In all of these cases, creditor status and notice of the mistake are not even discussed, since they are clearly not the law. Under New York law, absent detrimental reliance by BW, the funds must be returned to SPIB. Here however, BW does not, and has not, claimed any detrimental reliance (A. 46-48). Its failure to plead it bars it from raising it as a defense now. See Nat'l Bank of Canada v. Artex Industries, Inc., 627 F. Supp. 610, 615 (S.D.N.Y. 1986) (citing Satchell v. Dilworth, 745 F.2d 781, 784 (2d Cir. 1984) (quoting 5 Wright & Miller, Federal Prac. and Pro., § 1278 at 339 (1969).)

Instead it urges its status as a bona fide creditor obviates the need to show detrimental reliance and points to the "Discharge for Value" rule and four district court check stop-payment cases as authority. In the face of the overwhelming authority cited above, the argument must fall.

> B.   New York Rejects The "Discharge For
> Value" Rule Set Forth In Section 14
> Of The Restatement Of Restitution.

The district court clearly erred in finding that New York recognizes the rule set forth in Restatement of Restitution Section 14, Paragraph 1. In making its finding the district court relied on two points: first, that the Reporters' Notes to illustration 3 of Section 14 included a reference to a 1908 appellate division case decided in New York; and second, the district court found that the "Discharge for Value" rule had been adopted in four cases dealing with stop-order payments for checks. Both prongs of the Court's decision rest on erroneous assessments of New York law.

- 29 -

Section 14 of "Discharge for Value" rule, Paragraph 1 states:

> A creditor of another or one having a lien
> on another's property who has received from
> a third person any benefit in discharge of
> the debt or lien, is under no duty to make
> restitution therefor, although the discharge
> was given by mistake of the transferor as to
> his interests or duties, if the transferee
> made no misrepresentation and did not have
> notice of the transferor's mistake.

All acknowledged, including the court below, that no New York State case has ever explicitly addressed Section 14 of the Restatement of Restitution.[10]  The particular illustration which the Court found as reflective of New York law and on which BW relied is illustration (3):

> A presents a check payable to him and for
> which he has paid value, drawn by B on the C
> bank.  The bank, erroneously believing that
> B has sufficient funds to his credit, pays
> the amount of the check to A who has no
> notice as to the insufficiency of funds.
> C is not entitled to restitution from A.

The Reporters' Notes to this illustration cite to Consolidated Nat'l Bank v. First Nat'l Bank of Middleton, 129 A.D. 538 (1908), as well as Oddie v. Nat'l City Bank, 45 N.Y. 735 (1871).  The district court relied only on the Consolidated Nat'l Bank case as evidencing support for the illustration.

---

10   The one New York case located which even mentions
Section 14, deals with a fraud of the type described in
illustration (9) of the Restatement.  In Alden Auto
Parts Warehouse, Inc. v. Dolphin Equipment Leasing
Corp., 682 F.2d 330, 334 (2d Cir. 1932) neither
plaintiff, Alden Auto Parts Warehouse, nor defendant,
Dolphin Equipment Leasing Corp., both defrauded by
Intertel Communications Corporation in connection with a
contract to lease equipment, were entitled to recover
damages from the other.

- 30 -

The facts of both <u>Oddie</u> and <u>Consolidated Nat'l Bank</u>, however, do not support the proposition that New York recognizes the "Discharge For Value" rule.

In <u>Oddie v. Nat'l City Bank</u>, 45 N.Y. 735, an early case still cited from time to time concerning the effect of a bank's acceptance of a check for deposit, the defendant bank attempted to revoke its crediting of an account on a check drawn upon itself upon realizing that the drawer's account was overdrawn. In holding that defendant could not revoke its credit, the Court stated:

> When a check is presented to a bank for deposit, drawn directly upon itself, it is the same as though payment in any other form was demanded. It is the right of the bank to reject it, or to refuse to pay it, or to receive it conditionally, as in <u>Pratt v. Foote</u> (9 N.Y. 463), but if it accepts such a check and pays it either by delivering the currency, or giving the party credit for it, the transaction is closed between the bank and such party, provided the paper is genuine.

<u>Id</u>. at 741-42. Clearly the ruling in <u>Oddie</u> has little if anything to do with illustration 3 to the so-called "Discharge for Value" rule. The focus of the <u>Oddie</u> court was not with any potential third-party creditor but rather with setting down a definite and certain rule as to the effect of unconditionally accepting a check for deposit.

Similarly, <u>Consolidated Nat'l Bank of New York v. First Nat'l Bank of Middletown</u>, 129 A.D. 538 (2d Dep't 1908), <u>aff'd</u>, 199 N.Y. 516 (1910), follows <u>Oddie</u> in holding that the acceptance of a check is irrevocable. In <u>Consolidated Nat'l Bank</u>, plaintiff presented a check for $150 to defendant who marked it paid and credited the amount to the account of

- 31 -

plaintiff's agency and charged it against the customer's account. The court, citing **Oddie v. Nat'l City Bank of New York**, found that as a matter of law that closed the transaction without power of revocation and the defendant bank became the debtor of plaintiff's agent to the amount of the credit given. **Id**. at 540. Thereafter an action was commenced by another party Seaman claiming an interest in the entire funds then on deposit with defendant bank, namely $473. The court held that under the circumstances the credit given to plaintiff could not be revoked. In addition, the court held that defendant's decision to pay out the full sum to the intervening party was at its peril, even though another action had adjudicated that the third-party was the holder of the entire fund because plaintiff had not been put on notice that the good faith of its presentment of the check would be an issue in the collateral proceeding. **Id**. at 540-42.

Clearly, neither of these cases deal with the situation at hand. Both the **Oddie** and **Consolidated** cases deal with the effect of a bank's acceptance of a check. Moreover, as the district court itself recognized (A. 653 n.3), both these cases may have been modified by later U.C.C. law which allows a bank to provisionally credit an account subject to collection. N.Y.U.C.C. Law §§ 4-212, 213, 301 (McKinney 1964).

The district court's error in relying on **Consolidated** is apparent when one looks at illustration 2 to Section 14, of the **Restatement** which is:

> believing that he owns Black Acre, A
> pays the taxes thereon to the city of
> B. A is not entitled to restitution
> from B.

- 32 -

This illustration had been rejected by New York case law, as the Reporters Notes, at 10, to this illustration recognize by citing <u>Mayer v. Mayor of New York</u>, 63 N.Y. 455 (1875), as "contra" authority.  In <u>Mayer v. Mayor</u>, plaintiff mistakenly paid a tax assessment on certain real property in New York City.  The Court wrote:

> The general rule that money paid under a
> mistake of material fact may be recovered
> back, although there was negligence on the
> part of the person making the payment, is
> subject to the qualification that the
> payment cannot be recalled when the position
> of the party receiving it has been changed
> in consequence of the payment, and it would
> be inequitable to allow a recovery.  The
> person making the payment must, in that
> case, bear the loss occasioned by his own
> negligence.  If circumstances exist which
> take the case out of the general rule, the
> burden of proving them rests upon the party
> resisting the repayment.

<u>Id</u>. at 457 (citations omitted).  The Court then rejected the whole underlying theory of the "Discharge for Value" rule by allowing recovery to plaintiff, who did not intend to discharge the liability of the owner of that lot when he paid the assessment, even though the city had received the money in discharge of a valid assessment.  The Court held that "we do not find the circumstance that money paid by mistake is received upon a valid claim in favor of the recipient against a third person prevents a recovery back...."  <u>Id</u>. at 459.

As previously discussed, the reasoning in the <u>Mayer</u> case still reflects the law today:  as a general rule, New York does not prevent recovery of money paid by mistake simply because it is received as creditor.  New York recognizes that there is no equity in allowing a person with a valid claim to retain money paid from a person not legally liable to it.

The New York formulation of the exception to this general rule in favor of restitution is set forth in Ball v. Shepard, 202 N.Y. 247 (1911).  In that case, which is still a leading case on mistake and restitution in New York, the Court collected its prior cases and organized them according to two principles, a principle not recognized by the Restatement or followed by the district court.[11]  In essence the Court in Ball v. Shepard found that absent fraud, a bank or party had the right to recover funds paid under a mistake of fact, unless there was detrimental reliance.  The Court organized its cases as follows:

> This claim is predicated upon the principle that a party who pays money under a mistake of fact, to one who is not entitled thereto, must in equity and good conscience be permitted to get it back.  That is a well-recognized principle of law, but we think it has no application to the case at bar.  The simplest statement of the rule **invoked by the plaintiffs is that if A pays money to B upon erroneous assumption of the former that he is indebted to the latter, an action may be maintained for its recovery. The reason for the rule is obvious.  Since A was mistaken in the assumption that he was indebted to B, the latter is not entitled to retain the money acquired by the mistake of the former, even though the mistake is the result of negligence.**

---

[11]   The district court below relied on a quote from 3 G. Palmer, The Law of Restitution 490-491 (1978) in support of its position that New York follows Section 14.  In doing so, the court omitted reference to Palmer's footnote to that quote which states "The New York courts have been slow to accept the ["Discharge for Value"] defense."  Id. at 491 n.3. Palmer goes on to opine that Ball v. Shepard is a recognition of the rule, an assessment which based on the case law seems more the author's hope than reality.  Even if Palmer is right, Ball v. Shepard modifies the Restatement position substantially by confining it to cases "superinduced by fraud."

*          *          *

> From what has been said it is evident that
> the rule which we have been discussing must
> have its antithesis, and we find it in that
> class of cases in which money is paid by one
> party, who labors under a mistake of fact,
> to another party who does not share in the
> mistake, and who received the money in good
> faith in the regular course of business and
> for a valuable consideration. . . . That
> rule has been tersely and correctly stated
> by Judge Gray in <u>Nassau Bank v. Nat. Bank of
> Newburgh</u>, (159 N.Y. 456) as follows: "When
> money has been received by a person in good
> faith, in the usual course of business and
> for a valuable consideration, it cannot be
> pursued into his hands by one from whom it
> has been obtained through the fraud of a
> third person." (p.459.)

<u>Id</u>. at 253-254 (citations omitted).

The Court summarized the distinction between the cases

as follows:

> Thus it will be seen that the two classes of
> cases above referred to are divided by a
> line which is very narrow and yet well
> defined.  In the first class, relied upon by
> the plaintiffs, the mistake of fact is
> usually one which arises <u>inter parties</u>, and
> in order to justify a recovery in any such
> case it must appear that the defendant was
> not, in the first instance, entitled to
> receive the money; and that his
> circumstances have not been so changed
> through its receipt as to render it unjust
> to compel him to refund.  In the second
> class the mistake of the payor is usually
> superinduced by the fraud of a third person
> and the payee is not only ignorant of the
> fraud or mistake, but receives the money in
> good faith in the regular course of business
> and for a valuable consideration.

<u>Id</u>. at 256.

It is conceded that there are no allegations of fraud

in this case, and that therefore this case must fall within the

first class of cases.  An examination of the first category of

cases cited by the <u>Ball</u> court makes it clear that status as a

- 35 -

creditor or notice of a mistaken transfer is irrelevant to the inquiry.  Thus, in <u>Union Nat'l Bank of Troy v. Sixth Nat'l Bank of New York</u>, 43 N.Y. 452 (1871), recovery was allowed despite the fact that defendant bank had, in relying upon the mistaken transfer of plaintiffs, paid the money over to a noteholder, from whom it could not recover as a result of the latter's insolvency.  Similarly, in <u>Lawrence v. American Nat'l Bank</u>, 54 N.Y. 432 (1873), plaintiffs overpaid defendant by an amount of $5,000.00.  Defendant in turn settled with certain sureties based on the overpayment.  The Court again refused to prevent restitution, stating that defendant would still have its claim against the surety.

Finally, in <u>Hathaway v. County of Delaware</u>, 185 N.Y. 368 (1906), plaintiffs drew a check payable to the County of Delaware believing it to be a loan and gave it to the county's former treasurer who, in turn, had it credited as a payment on his debt to the County.  Restitution was permitted despite the fact that the money had been intended to be paid by plaintiffs to the County.  The Court explicitly adopted the reasoning of <u>Mayer v. Mayor</u>, <u>supra</u>, and held that while the County was entitled to the money from its former treasurer, it was not entitled to it from plaintiffs.  It is difficult to imagine a clearer rejection of the whole underlying theory of the "Discharge for Value" rule.

        C.    **The Stop-Order Check Cases Do Not Support BW's Claim That New York Recognizes The "Discharge For Value" Rule.**

It is clear from an examination of the above cases that New York prior to the <u>Restatement of Restitution</u> had

rejected the "Discharge for Value" rule as ennunciated in the
**Restatement**.  Thus, in order for the district court's opinion
to be good law, it must point to subsequent New York cases
which in effect overrule the **Ball v. Shepard** distinction that a
mistaken payment must be returned absent fraud.  The district
court attempted to do so when it wrote (A. 654):

> A string of cases holds that restitution is
> inappropriate when a bank mistakenly pays
> funds, over a stop payment order, in
> satisfaction of a debt, unless the payee has
> notice of the error.  **See, e.g., Wells v.**
> **Washington Heights Federal Savings and Loan**
> **Association**, 312 N.Y.S.2d 236 (N.Y. Civ.Ct.
> 1970); **Commercial Insurance Co. of Newark v.**
> **S. Scalamandre**, 289 N.Y.S.2d 489 (N.Y. Civ.
> Ct. 1967); **Chase National Bank v. Battat**,
> 105 N.Y.S.2d 13 (N.Y. Sup.Ct. 1951);
> **National Boulevard Bank v. Schwartz**, 175
> F. Supp. 74, 76, affd. 274 F.2d 823 (2d Cir.
> 1959).

Examination of these cases, however, reveals that none
of them support the cited proposition.  In fact, none even
refer to Section 14 of the **Restatement of Restitution**.
Moreover, in the first instance, all the cases are now governed
by the Uniform Commercial Code ("UCC") and, in some cases by
the subrogation provisions of § 4-407, which, by statute,
subrogates a bank to the rights of the depositor as against a
third party payee in the case of a payment made in error over a
stop-order.  N.Y.U.C.C. Law § 4-407 (McKinney 1964).
Similarly, the issue of notice and finality of a check payment
is governed by the UCC's statutorily engrafted rules.  On the
other hand, the ultimate issue of whether the payment is
recoverable after the payment becomes final under the UCC is
governed by the common law of mistake and restitution.

N.Y.U.C.C. Law § 1-103 (McKinley 1964).[12]  In contrast to
check cases, Article 4 of the UCC does not govern wire
transfers.[13]  <u>Delbrueck v. Manufacturers Hanover Co.</u>, 609
F.2d. 1047 (2d Cir. 1979); <u>Evra Cup v. Swiss Bank Corp</u>, 673
F.2d 951, 955 (7th Cir. 1982).  The common law of mistake and
restitution thus governs this transaction, not Article 4.

As discussed below, far from holding that restitution
is inappropriate where a payment is made over a stop-order to a
creditor, one case holds a depositor is entitled to retain her
own funds in the face of quasi-fraudulent conduct by her agent,
two return the funds, and one denies restitution because of a
lack of competent evidence challenging the bona fides of the
transaction.

<u>Wells v. Washington Heights Federal Savings and Loan
Association</u>, 63 Misc.2d 424, 312 N.Y.S.2d 236 (N.Y. Civ. Ct.
N.Y. Co. 1970), held that an individual plaintiff was entitled
to retain her own funds which had been held for her by her
sister-in-law.  Plaintiff presented the account passbook and
received a teller's check from defendant Washington, which she
then deposited in a new account with defendant Chemical.  In
the interim, the sister-in-law requested a stop-payment order

---

12    New York's law on mistake and restitution is preserved
      under N.Y.U.C.C. Law  § 1-103 (McKinney 1964), except to
      the extent expressly altered by the UCC itself.

13    Proposed draft Article 4A to the UCC which would govern
      wire transfers does not contain a provision analogous to
      § 4-407 and would relegate the parties to the applicable
      state law on mistake and restitution.  The prefatory
      note to proposed Article 4A recognizes the unique nature
      of wire transfers, and the rationale for a separate
      statutory framework from that of negotiable instruments.

on the teller's check, which Washington gave.  Chemical paid
over the stop payment order, but upon discovery of the error,
failed to tell Washington of the payment.  As a result,
Washington paid the money to the sister-in-law believing that
the check had been stopped.  When Washington sought return of
its funds, Chemical "interviewed" plaintiff and forced her to
consent to debiting her account for her own money.  The court
found (1) the money was at all times plaintiff's, (2) plaintiff
did not consent to any debiting and (3) Chemical's actions
constituted a conflict of interest.  Nowhere does the case
stand for the proposition asserted by the district court.
Rather, it stands for the proposition that a bank cannot force
the recrediting of funds that *properly belong to its own
depositor* in an attempt to contain its own losses.

In Commercial Ins. Co. of Newark v. Scalamandre, 56
Misc.2d 628, 289 N.Y.S.2d 489 (N.Y. Civ. Ct. N.Y. Co. 1967),
plaintiff insurance company was subrogated pursuant to
UCC § 4-407 to the rights of the bank which had paid two checks
more than fourteen days after receipt of an oral stop-order.
The court found that plaintiff had failed to submit any
competent evidence on the motion for summary judgment that the
defendant was unjustly enriched or that the maker had a right
to refuse payment on the checks or a right to recover from the
defendants once the checks were honored and paid.  Presumably,
the result would have been different if competent evidence, as
opposed to an attorney's affirmation, had been presented.

Chase Nat'l Bank of City of New York v. Battat, 105
N.Y.S.2d 13 (Sup. Ct. N.Y. Co. 1951), also fails to support the

district court's ruling.  In that case, plaintiff bank was allowed to recover the amount of a check certified by plaintiff at defendant's request.  The court found that the defendant had suspected that the drawer of the check had stopped payment on it before defendant presented it for certification.  The plaintiff bank paid the check in question under a mistake of fact and the court awarded judgment to the bank.  In its opinion, the court refers to the **Restatement of Restitution** Sections 1, 2 and 45-comment b, but Section 14 is not mentioned.

The final case cited by the district court as supporting the "Discharge for Value" rule is **Nat'l Boulevard Bank of Chicago v. Schwartz**, 175 F. Supp. 74 (S.D.N.Y. 1959), **aff'd** 274 F.2d 823 (2d Cir. 1960).  In that case which involved federal court analysis of New York and Illinois law, including New York's Negotiable Instruments Law, summary judgment was awarded returning the funds because while the check in question was deposited on January 15, it was not actually paid by the plaintiff bank until January 20 and in the interim defendant conceded that he had become aware of a stop-payment order.  The court noted that the real substance of the dispute was between defendant and the drawer and noted that the defendant could not shift the burden of his lawsuit with the drawer to an innocent party, the plaintiff in this action, by retaining the proceeds of the check.  **Id**. at 77.

D.   **Summary.**

New York courts do not look to the status of a party, **i.e.**, whether it is a creditor, in determining whether restitution is appropriate.  Rather, they look to whether there

is detrimental reliance and, here, it is conceded that no such reliance exists. The New York rule is that money paid by mistake must be returned, unless there is detrimental reliance, and the burden is on BW to prove that reliance. BW has in essence argued that summary judgment must be entered against it unless this Court judicially engrafts new law onto New York's existing banking laws. That is something this Court has repeatedly declined to do, especially in view of New York's interest in regulating its local banking industry. See, e.g., Young v. U.S. Dept. of Justice, 882 F.2d 633, 643 (2d Cir. 1989), cert. denied, 110 S. Ct. 1116 (1990).

### POINT II

**SUMMARY JUDGMENT MUST BE DENIED TO
BW BECAUSE MATERIAL ISSUES OF FACT
EXIST AS TO BW'S ENTITLEMENT TO
THE FUNDS IN QUESTION**

Pursuant to the so-called "Discharge for Value" rule, the district court found as matter of law prior to any discovery that BW was entitled to the funds in question as an alleged bona fide creditor and that SPIB could raise no defense to this claimed entitlement because it could not show BW had notice of the mistaken payment. Additionally, the district court apparently believed that because Spedley did not go into liquidation before the mistaken transfer, although its own employee essentially conceded it was insolvent at the time of the transfer, that the transfer could not be revoked. The district court erred in making both of these rulings by misapplying applicable legal standards. The proper inquiry under New York law is whether "it is just and equitable" for a

recipient to retain mistakenly-transferred funds, not whether BW knew of the mistaken payment or the precise timing of Spedley's filing for liquidation.

### A. It Is Inequitable For A Payee To Retain Funds Received By Mistake Where The Payee Has Notice Of The Probable Insolvency Of The Payor.

It is axiomatic that a payee cannot retain funds where it has notice of insolvency of the payor, yet the district court ignored the issue of the bona fides of BW's attempts to obtain money from its insolvent debtor. Indeed the district court apparently believed that although BW might not have a legitimate claim to the funds that this could only be asserted in the Australian liquidation proceeding (A. 650 n.2). *In so holding, the district court apparently misunderstood the thrust* of SPIB's argument.

Even the very commentary to Section 14 of the Restatement on Restitution on which the district court so heavily relies states:

> Restitution by the drawee is allowed where the holder of the check had notice of the insolvency of the drawer, Martin v. Morgan, 1 Brod. & Bing 289 (1819), or that the drawer had insufficient funds in the bank, Peterson v. Union Nat. Bk., 52 Pa. 206 (1866); Bankers Trust Co. v. U.S. Register Co., 200 Iowa 1014, 205 N.W. 838 (1925).

Notes on Certain Important Sections of Restatement of Restitution at 12-13. Accord, Nat'l Boulevard Bank v. Schwartz, 175 F. Supp. at 76 ("However, where the party to whom the payment was made knew that the drawer's account was insufficient, the drawee may recover from such party.") In Martin v. Morgan, 129 Eng. Rep. 734, 1 Brod. & Bing 290

(C.P. 1819), the court found the bank was entitled to the return of funds where the payee knew of the probable insolvency of payor, even though the bank paid when no funds were on deposit from its customer who then declared insolvency. The law is clear that the bona fides of any payor raises a material issue of fact. See Smith & McCrorken v. Chatham Phenix Nat. Bank & T. Co., 239 A.D. 318, 320 (1st Dep't 1933)(error to exclude evidence that defendants were not bona fide holders for value); Commercial Ins. Co. of Newark v. Scalamandre, 56 Misc.2d 628 (N.Y. Civ. Ct. N.Y. Co. 1967)(discussed supra); Morgan Guar. Trust Co. v. American Sav. and Loan, 804 F.2d 1487 (9th Cir. 1986)(applying New York law, held on summary judgment, funds wire transferred by mistake must be returned where holder in due course of a note knew of maker's bankruptcy).

Yet, despite this settled law, the district court failed to consider the factual issues concerning the reasons for BW's attempts to obtain payment. The record shows that BW had repeatedly extended at three-month intervals its credit facility to Spedley for a period of several years (A. 157). On or about March 30, 1989 it called the facility and directed it to be repaid (A. 158). SPIB raised this argument on the motion below and BW chose not to address it except to argue as a matter of law that the argument did not constitute a defense. All inferences must be drawn against BW therefore as a result of its deliberate decision not to disclose on the record the facts concerning the genesis of the credit relationship and surrounding the calling of the credit facility at a point in

time when speculation was rampant in the Australian press as to Spedley's difficulties. See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-24, 330-31 (1986).

With those inferences drawn against it, the record is clear that there had been considerable speculation in the Australian financial press indicating the possible failure of Spedley from November 1988 on (A. 341, 359-378) and that it is more than likely that the reason the credit facility was called was because of the concern on BW's behalf that Spedley would fail. It is highly likely that BW took the payment with notice of a potential liquidation of Spedley which occurred within hours of the mistaken payment. Indeed the very reason the payment instructions were voided was because Spedley had no funds. In contrast, SPIB in New York as an intermediary receiving bank for Spedley, acting as paying agent only, had no knowledge or idea of the true state of affairs as to BW or Spedley. It was not until April 16, days after the mistaken transfer, that SPIB even learned that Spedley was in receivership or had any real understanding of the nature of the mistake which had occurred (A. 327).

Under these circumstances, there is certainly a material issue of fact under New York law as to whether it is equitable for BW to retain the funds.

> **B. The Court's Use Of <u>Delbrueck</u> To Analogize A Wire Transfer To A Check Case Effectively <u>Ignores The Reality Of This Transaction.</u>**

The court's reliance on <u>Delbrueck & Co. v. Manufacturers Hanover Trust Co.</u>, 609 F.2d 1047 (2d Cir. 1979), is misplaced and effectively undermines New York's entire

- 44 -

corpus of law on mistake and restitution, which is certainly not **Delbrueck's** intent.  The district court found that **Delbrueck** held that wire transfer payments were final when made (A. 652).  From that proposition, the Court found that because **Spedley** had not gone into liquidation before the mistaken payment and because BW claimed ignorance of the revocation of instructions, the payment was final when made and could not be revoked (A. 651-654).

This argument is without merit for several reasons. Wire transfers are not checks, and as **Delbrueck** itself recognizes, the U.C.C. law on checks does not apply to a mistaken-wire transfer.  **Id**. at 1051.  Second, **Delbrueck** itself does not compel the holding of the district court.  In **Delbrueck**, the first of this circuit's wire transfer decisions,[14] plaintiff sued its bank MHTCO for failure to revoke two wire transfers to Herstatt's account at Chase made at 11:36 a.m. and 11:37 a.m. on June 26.  Delbrueck called at

---

[14]      The second is **Middle East Banking Company v. State Street Bank Int'l**, 821 F.2d 897 (2d Cir. 1987).  In **Middle East Banking**, the Court held that State Street Bank & Trust Co. ("State Street"), which debited its customer Middle East Banking Company's ("MEBCO") account without the customer's permission, breached its contract of deposit with MEBCO and was liable for the actual damages resulting from the debit.  **Id**. at 902.  MEBCO's customer, Al-Rajhi, wire transferred funds to MEBCO's New York account at State Street to offset withdrawals of funds from his checking account with MEBCO in Beirut, Lebanon.  Thereafter, Al-Rajhi requested that the New York transfer be stopped **after** he had withdrawn funds on the Beirut account.  By the time the funds were debited from MEBCO's account without its permission, MEBCO had honored withdrawals by Al-Rajhi, even though the agreed upon cover funds had been returned to Al-Rajhi.  **Id**. at 899-900.

12 noon of that same day to try to recall the funds because of the failure of Herstatt at 10:30. The Court characterized the issues as follows:

> Liability for alleged failure to revoke the $12.5 million credit transfers was essentially dependent upon the answer to the question posed by Delbrueck (Delbrueck Br., p. 11) "That issue [breach of contract] inescapably requires consideration of the questions, when did the credit transfers to Herstatt become irrevocable?"
>
> The breach of contract issue is characterized by Delbrueck as "the central issue on this appeal". Manufacturers' alleged failure to revoke was "in breach of contract [because it] did not do so". Delbrueck concedes that: "If the credit transfers were irrevocable this appeal must fail, for the contract between Manufacturers and Delbrueck requires that any stop order issued by Delbrueck be received by Manufacturers at a time when Manufacturers still had power to revoke the transfers".

Id. at 1050 n.2.

In glaring contrast to the situation in Delbrueck, SPIB had no valid instructions to pay to BW at any time after 3:00 a.m. on April 4, well before the mistaken payment was made at 11:30 a.m. As the Larimore affidavit indicates (A. 161-62), SPIB cannot charge back the funds mistakenly paid back to Spedley. The district court's apparent belief that SPIB would have a claim over against Spedley would be contested by Spedley and demonstrates again the Court's misunderstanding of the record. While SPIB believed it was forwarding Spedley's funds at the time of the transfer, the subsequent reality is that it had no ability to charge the funds back to Spedley, and had transferred its own funds.

The notion that wire transfers are in any way analogous to check stop-payment cases must fail when the realities of the check payment and wire transfer systems are compared. A check ordinarily moves through a banking system at a slow pace taking as much as two weeks for final payment. In contrast, a wire transfer is instantaneous. Under the circumstances it made no sense for the district court to hold that the payment was final for notice purposes as if it were a check.[15] A comparison of the situation presented by the SPIB transfer with that in **Nat'l Boulevard Bank v. Schwartz**, 175 F. Supp. 74, demonstrates the fallacy inherent in the Court's opinion. In **Nat'l Boulevard**, there was at least a five-day "window" before presentment and payment during which the holder learned of the stop order. The court therefore ordered the return of the funds. Here the district court's reasoning effectively eliminates any "window" at all.

Even if the finding is made that payment is final, it does not alter the result. The payment was made a mistake.

---

[15]  By analogy, a payor in a wire transfer transaction would recover its mistaken payment when a payee has knowledge of the mistake before the transaction is final. Here, one could argue the transfer was never final because BI was notified of the mistake on that same day, and agreed to send the funds back. A CHIPS wire transfer becomes final for CHIPS purposes at the end of the business day when member banks settle the transactions for that day among themselves. As **Delbrueck**, at 1051-52, recognizes, BI's knowledge as paying and receiving agent for BW must be imputed to BW and BI knew of the mistake-transfer by 1:45 p.m. on April 10. BI then returned the funds pursuant to CIB Rule II.4, "Return of Payment 'Missent Payment.'" CIB Rule II.4 (A. 83) provides that when "a payment that should not have been sent," such as the one sent by SPIB to BI, the missent funds may be returned upon the issuance of a CIB indemnity.

Spedley, according to Larimore, did not have the funds to pay for it and determined to withdraw the payment (A. 159). BW has without any doubt been unjustly enriched and benefitted by the payment, and under the circumstances the money must be returned. See <u>Manufacturers Hanover Trust Company v. Chemical Bank</u>, No. 30740-87 (Sup. Ct. N.Y. Co. Sept. 11, 1989), and the cases cited in Point I (A), <u>infra</u>. There is no claim that BW will not be left in the exact position it would have been had Spedley's instructions been followed, <u>i.e.</u>, it would have a claim in the Spedley liquidation. See <u>Mayer v. Mayor</u>, 63 N.Y. 455 (1875). There is no law or equitable authority which supports the proposition that an intermediary paying agent bank located in New York should be forced to assert that claim in the Spedley liquidation.

BW has from time to time made much of the fact that SPIB, as was its obligation, paid back to the proper payee on the same day without awaiting receipt of the funds mistakenly transferred from BW. That issue, however, is legally irrelevant. SPIB had its own obligation to make sure its customer's proper instructions were followed. If SPIB had waited for the money to return from BI, Spedley or its liquidator would simply have sued SPIB to get the cover back in accordance with the correct instructions. The reality is that Spedley revoked its orders because it knew it was insolvent and unable to pay, and because of that insolvency, it knew that any payment it made would be an unjustifiable preference in Australia. The reality is that BW was not the innocent bona fide purchaser that it has attempted to portray itself in this

action.  Far from being the more innocent of two innocents, BW, in the face of its debtor's bankruptcy, has attempted to force SPIB into the position of paying off a loan that it did not even know existed, where SPIB's only involvement was to transfer funds received as cover to the proper payee.  Under the reasoning of <u>Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank</u>, 731 F.2d 112 (2d Cir. 1984), such a result cannot stand. <u>See also</u>, <u>Uban Int'l Ltd. v. Mitsui Bank, Ltd.</u>, N.Y.L.J. May 3, 1985 at 12, Col. 3 (Sup. Ct. N.Y. Co.) (Exhibit D hereto) (plaintiff loaned $4 million to Hong Kong Guaranty Deposit, Ltd. ("HKGD"); upon learning of the HKGD's insolvency, Uban attempted to reverse the transaction by use of CIB indemnities, when intermediary banks protested, Uban sued.  The Court found no liability to the intermediary banks noting "To do otherwise ... would have compelled the banks 'to extend more than $3,000,000 worth of credit to a bankrupt HKDG'"); <u>Bank Leumi Trust Co. v. Bally's Park Place, Inc.</u>, 528 F. Supp. 349 (S.D.N.Y. 1981) (Bally's presented a check for which it had reason to know was there would be insufficient funds in the hopes of a payment by mistake).

This case was brought by BW coming to this jurisdiction and suing BI for summary judgment immediately after answering.  BI in turn moved for summary judgment against SPIB and SPIB cross-moved against BW.  BW then moved for summary judgment against SPIB.  Under the circumstances where no discovery has been taken and where BW chose not to disclose any of the facts underlying its claimed creditor status, BW's motion should be denied.  Upon discovery, SPIB fully believes

that it will discover that BW had actual and constructive knowledge of Spedley's insolvency at the time of ordering the transfer and that it was indeed attempting to force its funds out of an estate which it soon believed would be in liquidation.  Under those circumstances, that knowledge alone, like that of the defendants in both <u>Morgan</u> cases, makes it unjust for BW to retain the funds in question.

<u>CONCLUSION</u>

SPIB respectfully requests that the district court's judgment be reversed with directions to enter summary judgment in SPIB's favor for $1,974,267.97, with interest from August 3, 1989 and costs.

Dated:   New York, New York
         March 12, 1990

                    Respectfully submitted,

                    KELLEY DRYE & WARREN

                    By:  _Sarah L Reid_____
                         A Member of the Firm

                    Attorneys for Third-Party
                    Defendant-Appellant, Security
                    Pacific International Bank
                    101 Park Avenue
                    New York, New York 10178
                    (212) 808-7800