**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7229**

WRITER'S EMAIL ADDRESS
**adamabensohn@quinnemanuel.com**

November 19, 2020

<u>VIA ECF</u>
FURMAN_NYSDCHAMBERS@NYSD.USCOURTS.GOV

Hon. Jesse M. Furman
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re:   *In re Citibank, August 11, 2020 Wire Transfers*, 1:20-cv-06539 (JMF)

Dear Judge Furman:

I write on behalf of Defendants in response to a late development in this case. Yesterday, we received a request to consent to *two* proposed *amicus curiae* submissions in "support[] of the positions in Citibank's pretrial submission." Email from T. Snyder, dated November 18, 2020. The proposed *amici* are certain "industry groups," the Loan Syndications and Trading Association ("LSTA"), The Bank Policy Group Institute ("BPI"), The Clearing House Association LLC, and The Clearing House Payments Company, LLC, that, according to their counsel, would submit briefing that will "assist the Court by providing industry perspective on the legal standards, policies and industry practices applicable to erroneous wire transfers, including the discharge for value defense." *Id.* For the reasons discussed below, the proposed submissions will not, and cannot, aid the Court. In the interests of judicial and party economy, and in view of the impending trial date scheduled in less than three weeks' time, Defendants respectfully request the Court schedule a conference to discuss the request and/or prohibit the filing of any such submissions.

As an initial matter, Defendants have serious concerns about the inherent bias in any filing proposed by these industry groups. Citibank is not only a member of both the LSTA and BPI, it holds or has held leadership positions in each association. Indeed, the former chairperson of the LSTA's governing board is a Citibank managing director.[1] Incredibly, that very same chairperson

---

[1] As of yesterday, November 18, 2020, the LSTA's website reflected that Ms. Sohoni was the Chair of its board of directors. Today, LSTA removed her from its website. *Compare* LSTA,

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE | BOSTON | SALT LAKE CITY
LONDON | TOKYO | MANNHEIM | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH | SHANGHAI | PERTH | STUTTGART

has three times submitted sworn testimony in this very case. *See* Declaration of Mitali Sohoni, Case No. 20-6539 (ECF No. 7); Case No. 20-6617 (ECF No. 8); Case No. 20-6713 (ECF No. 7). The Court granted Citibank a Temporary Restraining Order "having considered . . . the supporting Declaration[] of Mitali Sohoni . . . ." Case No. 20-6539 (ECF No. 25); Case No. 20-6617 (ECF No. 16); Case No. 20-6713 (ECF No. 14). With respect to the BPI, an even higher ranking Citigroup employee resides on its board of directors—Citigroup's Chief Executive Officer, Michael Corbat.[2] Where appropriate, *amici* are to "provide the court with an objective, dispassionate, neutral discussion of the issues . . . [not] as an advocate for one side . . . ." *United States v. Gotti*, 755 F. Supp. 1157, 1159 (E.D.N.Y. 1991). Biased *amici*, however, "do[] the court, itself and fundamental notions of fairness a disservice." *Id.; see also Strasser v. Doorley*, 432 F.2d 567, 570 n.2 (1st Cir. 1970) (quoting an attorney describing an amicus: "That fellow isn't any more a friend of the court than I am."). Here, it is quite clear that the proposed "*amicus curiae*" submissions would, in effect, function as Citibank's *second and third* pre-trial briefs. *See Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1063 (7th Cir. 1997) (Posner, J.) ("The vast majority of amicus curiae briefs are filed by allies of litigants and duplicate the arguments made in the litigants' briefs, in effect merely extending the length of the litigant's brief. Such amicus briefs should not be allowed. They are an abuse. The term 'amicus curiae' means friend of the court, not friend of a party.").

       Separate and apart from the *amici's* lack of objectivity, a plurality of proposed *amicus curiae* submissions, solicited by Citibank, at this point in the case is as unreasonable as it is unnecessary. This case is scheduled for trial in less than three weeks. Substantial pre-trial briefing has already been submitted by the parties and will be complete by tomorrow, November 20. The "discharge for value" rule has been comprehensively briefed by able counsel. *See Gotti*, 755 F. Supp. at 1159 (finding leave to file *amicus* brief should be denied "when it appears that the parties are well represented and that their counsel do not need supplemental assistance and where the joint consent of the parties to the submission by the *amicus* is lacking"); *Lehman XS Trust, Series 2006-GP2 v. Greenpoint Mortg. Funding, Inc.*, No. 12 Civ. 7935(ALC)(HBP), 2014 WL 265784, at *2 (S.D.N.Y. Jan. 23, 2014) (denying leave to file *amicus* brief in support of plaintiffs' positions where "Plaintiffs are represented by competent counsel that has given as good as it gets"); *U.S. v. Ahmed*, 788 F.Supp. 196, 198 n.1 (S.D.N.Y. 1992) (denying leave file *amicus* brief in support of defendant's positions "defendant's interests are adequately represented by counsel"); *McBeth v. Gabrielli Truck Sales, Ltd.*, 768 F.Supp.2d 392, 394 (E.D.N.Y. 2011) ("The interests of the

---

Board of Directors, https://web.archive.org/web/20201031090828/https://www.lsta.org/about/board-of-directors/ (Oct. 31, 2020 archive, showing Ms. Sohoni as Chair) and LSTA, Mitali Sohoni, https://web.archive.org/web/20200922042357/https://www.lsta.org/about/personnel/mitali-sohoni/ (Sept. 22, 2020 archive, showing Ms. Sohoni as Chair) *with* LSTA, Board of Directors, https://www.lsta.org/about/board-of-directors/ (today, omitting Ms. Sohoni altogether) and LSTA, Mitali Sohoni, https://www.lsta.org/about/personnel/mitali-sohoni/ (today, "Sorry, that page doesn't exist here"). Ms. Sohoni, however, remains an acting member and Vice Chair of the LSTA's governing body, upon information and belief, notwithstanding her absence from the website.

[2] *See* https://bpi.com/about-us#board-members (Michael Corbat)

Defendants here have been very well represented by Defense counsel. The Defense memoranda of law, submitted on both the motion for summary judgment, and in support of reconsideration are well-researched and written. . . . Accordingly, the motion to participate in this matter as amici curiae is denied."). In addition, the parties have already submitted proffered testimony from 25 witnesses. Defendants must now devote their time and energy to preparing to present their case to the Court, just as Citibank will be doing without the distraction of responding to two additional submissions.

In addition, it is particularly inappropriate for Citibank to cause the filing of *amicus curiae* submissions given Citibank's prior positions and conduct in this case. The Court will recall that, in opposing expert discovery proposed by Defendants, Citibank stated that the Court can "resolve [the issues of mistake and discharge for value] as a matter of law and commonsense" and that the "Court need not parse industry-specific standards to determine whether defendants were on notice that Citibank made a mistake on August 11, 2020…" Letter from M. Ingber (ECF No. 74 at 1-2); *see also Lehman*, 2014 WL 265784, at *3 ("[T]he additional argument about industry custom practice does not present unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." (internal quotations and citations omitted)). The Court concluded that "*limited* expert testimony (and discovery) [was] appropriate." Order granting Letter Motion for Expert Discovery (ECF No. 83) (emphasis added). Indeed, throughout this case, the Court has, very judiciously, governed expansion of the record. Nevertheless, after taking the position that industry practice was irrelevant to the disposition of this matter, Citibank served two expert reports and now seeks to facilitate the submission of multiple *amicus curiae* submissions from "industry groups." This sort of litigation gamesmanship should not be countenanced.

Finally, even if the proposed *amici* were impartial, and even if Citibank were not continuing to seek unfair advantage in this matter, *amicus curiae* submissions cannot assist the court in adjudicating this matter because the law is already resolved by New York's highest court. *Amicus curiae* submissions are allowed where doing so may aid the Court's evaluation of the issues presented to it. *U.S. v. Ahmed*, 788 F.Supp. 196, 198 n.1 (S.D.N.Y.), *aff'd* 980 F.2d 161 (2d Cir. 1992). Here, however, the "industry groups'" policy-based arguments cannot assist the Court because the New York Court of Appeals has already concluded that the "discharge for value" rule is the law of New York, thereby rendering policy discussion moot. Moreover, in resolving New York law (and adopting the discharge for value rule), the New York Court of Appeals already engaged in a comprehensive survey of policy considerations. *See, e.g., Banque Worms v. Bankamerica*, 77 N.Y.2d 362, 371 (1991) (reviewing "policy considerations addressed by [article 4A of the New York Uniform Commercial Code in order to] appropriately inform [its] decision … in aid of the resolution of the issue presented in this case.").[3] The parties are free to argue the *application* of the discharge for value rule and to address the policy analysis the New York Court of Appeals already performed—as the Parties have already done in extensive briefing; but a presentation of alternative policies, or an elaboration on argument already fully briefed, cannot be of assistance to the Court.

---

[3] In addition, in *Banque Worms*, the New York Court of Appeals considered the need for "speed, efficiency, certainty (i.e., to enable participants in fund transfers to have better understanding of their rights and liabilities), and finality [as] a singularly important policy goal." *Id*. at 372.

For all of these reasons, Defendants request that the Court schedule a conference to discuss the request and/or prohibit the filing of any such submissions.

Respectfully submitted,

/s/ Adam M. Abensohn

Adam M. Abensohn

Application DENIED. The Court sees no need for a conference. No amicus brief may be filed without leave of court; as of this moment, no motion for such leave has been filed. If a motion for such leave is filed by either of the amici referenced above, the Court will treat this letter as Defendants' opposition to the motion. In that event, Plaintiff may file a letter responding to Defendants' letter **within one business day** of the motion for leave to file as amicus. The Clerk of Court is directed to terminate ECF No. 154. SO ORDERED.

November 19, 2020