UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE CITIBANK AUGUST 11, 2020 WIRE TRANSFERS

No. 1:20-cv-06539 (JMF)

## JOINT PRE-TRIAL ORDER

I. **The full caption of the action**

   See above.

II. **The names, law firms, addresses, and telephone and fax numbers of trial counsel if not already listed on the docket**

   The names, law firms, addresses and telephone and fax numbers of trial counsel are listed on the docket.

III. **Brief statement by plaintiff as to the basis of subject matter jurisdiction, and a brief statement by each other party as to the presence or absence of subject matter jurisdiction. [Such statements shall include citations to all statutes relied on and relevant facts as to citizenship and jurisdictional amount]**

   A. **Plaintiff's Statement**

   The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000 and the parties are citizens of different states.

   B. **Defendants' Statement**

   Defendants do not dispute subject matter jurisdiction.

IV. **Summary by each party of the claims and defenses that the party asserts remain to be tried, including citations to any statutes on which the party relies. Such summaries shall also identify all claims and defenses previously asserted that are not to be tried. The summaries should not recite any evidentiary matter**

   A. **Plaintiff's Summary**

   Citibank is asserting four causes of action under New York law: (i) unjust enrichment; (ii) conversion; (iii) money had and received; and (iv) payment by mistake. All claims remain to be

tried. It is Citibank's understanding, as set forth in the Court's Scheduling Order dated August 25, 2020 (Dkt. No. 46) and the Order dated September 15, 2020 (Dkt. No. 62), that the defenses that remain to be tried are "(a) whether the August 11th transfers were a mistake; and (b) the viability of the discharge-for-value defense."

A more detailed exposition or outline of Citibank's factual and legal claims and arguments can be found in its Proposed Findings of Fact and Conclusions of Law, which is incorporated by reference.

    **B.**    <u>**Defendants' Summary**</u>

Citibank's claims—all of which sound in restitution—are all subject to the "discharge for value" defense. The defense has not only been endorsed by New York's highest court, it has been applied, in controlling precedent, to remarkably similar facts by the Court of Appeals for the Second Circuit. *Banque Worms v. BankAmerica Intern.*, 928 F.2d 538 (2d Cir. 1991).

Defendants have also pled other affirmative defenses which remain to be tried: (1) the Complain fails to state a claim on which relief may be granted; (2) Plaintiff's payments to Defendants were voluntary and in discharge of debt, and thus no Defendant is under a duty to make restitution to Plaintiff; (3) Plaintiff's claims are preempted by the New York Uniform Commercial Code; (4) Defendants are entitled to set off the funds against the debt owed by Revlon under the relevant credit agreement; (5) Plaintiff's damages, if any, were caused by person other than Defendants, including Plaintiff itself; (6) Plaintiff's claims are barred or reduced by Plaintiff's negligence and unclean hands; (7) Plaintiff's claim for conversion is frivolous, unreasonable, and groundless, entitling Defendants to an award of attorneys' fees; (8) Defendants are not the appropriate defendants in this action because they did not receive the payments at issue.

A more detailed exposition or outline of Defendants' factual and legal defenses can be found in its Proposed Findings of Fact and Conclusions of Law, which is incorporated by reference herein. All claims and defenses remain to be tried.

**V.  Statement as to the number of trial days needed and whether the case is to be tried with or without a jury**

Pursuant to the Court's Order dated November 11, 2020 (Dkt. No. 139), the parties will file, no later than November 19, 2020, a proposed order governing protocols for trial that "shall include . . . a revised estimate of the length of trial."

**VI.  Joint statement summarizing the nature of the case, to be read to potential jurors during jury selection**

Not applicable. This trial is set to be tried without a jury.

**VII.  A list of people, places, and institutions that are likely to be mentioned during the course of the trial, to be read to potential jurors during jury selection**

Not applicable. This trial is set to be tried without a jury.

**VIII.  Statement as to whether all parties have consented to trial by a magistrate judge, without identifying which parties do or do not consent;**

The parties have not consented to trial by a magistrate judge.

**IX.  Any stipulations or agreed statements of fact or law to which all parties consent. In a jury case, the parties should memorialize any such stipulations or agreed statements of fact or law in a standalone document that can be marked and admitted at trial;**

See Ex. A.

**X.  A list of all trial witnesses, indicating whether such witnesses will testify in person or by deposition, whether such witnesses will require an interpreter (and, if so, which party will pay the costs for the interpreter), and a brief summary of the substance of each witness's testimony. Absent leave of Court, a witness listed by both sides shall**

**testify only once (with the defendant permitted to go beyond the scope of the direct on cross-examination), and counsel should confer with respect to scheduling;**

A.      **Plaintiff's Witness List**

Pursuant to Section 8.d of this Court's August 25, 2020 Scheduling Order (Dkt. No. 46), the following witnesses are submitting declarations constituting their direct testimony in lieu of live testimony.  A brief summary of the substance of those declarations, which are incorproated herein by reference, is set forth below.  Citibank reserves all rights to alter or amend this witness list.

1. Vincent Farrell

Vincent Farrell, who is the head of North American Loan Operations at Citibank, will testify regarding the loan documentation and databases used at Citibank to record and track, among other things, the composition of a lender syndicate for a particular loan, including the Revlon 2016 Term Loan.  Mr. Farrell will also testify about the August 11, 2020 wire transfers that were mistakenly made by Citibank in connection with a "rollup" transaction that took place on that date with respect to the Revlon 2016 Term Loan, including calculation statements that were sent—prior to the mistaken wire transfers—to defendants and/or lenders holding portions of that Loan.  He will further testify as to efforts that were made on August 12, 2020 to understand what happened, his involvement in addressing the mistake and efforts that were made to get the mistakenly transferred funds back by, among other things, sending recall notices to defendants and/or their lenders funds on August 12, 2020 and the following several days.

2. Vincent Fratta

Vincent Fratta is a Loan Agency Senior Manager in Citibank's Global Loans Operations Group, focusing on North America.  He will testify about the circumstances giving rise to the mistaken wire transfers on August 11, 2020, including his role as the Citibank "approver" for the transaction.  He will testify that, at all times, it was his intention to transfer to lenders only the interest payment received from Revlon earlier that day.  He will also testify about his role in discovering the mistake and communicating about the mistake to relevant Citibank personnel.

3. Arokia Raj

Arokia Raj is an employee of Wipro Limited. He works exclusively for Citibank under the supervision of Vincent Fratta.  Mr. Raj will testify about the circumstances giving rise to the mistaken wire transfers on August 11, 2020, including his role as the "checker" who reviewed the transaction in Citibank's loan processing system.  He will testify that, at all times, it was his intention to transfer to lenders only the interest payment received from Revlon earlier that day.  He will further testify about how he discovered the mistake on the morning of August 12, and his communications with Mr. Fratta upon discovery of the mistake.

4. Santhosh Ravi

Santosh Ravi is an employee of Wipro Limited. He works exclusively for Citibank under the supervision of Vincent Fratta. Mr. Ravi will testify about the circumstances giving rise to the mistaken wire transfers on August 11, 2020, including his role as the "maker" in creating the transaction in Citibank's loan processing system. He will testify that at all times, it was his intention to only transfer the interest payment received from Revlon earlier that day to the lenders. He will also testify about how the mistake occurred.

5. Brendan Zeigon

Brendan Zeigon, who is the Global Head of Loan and Risk Management Services Operations at Citibank, will testify that the overpayment made by Citibank to lenders under the Revlon 2016 Term Loan on August 11, 2020 was a mistake. He will further testify as to efforts that were made on August 12, 2020 to understand what happened, his involvement in addressing the mistake and efforts that were made to get the mistakenly transferred money back by, among other things, sending recall notices to defendants and/or their lender funds on August 12, 2020 and the following several days.

6. Mark Sunshine

In response to defendants' anticipated expert testimony, Mark Sunshine will testify as an expert in syndicated commercial loans and electronic payment processing and funds transmissions on the question of whether a reasonable lender would have understood that the August 11 transfers were made in error. Mr. Sunshine will testify about his experience, which includes a 36-year career as an investment banker, senior executive officer, consultant and lawyer who has personally participated in thousands of commercial loan transactions, including syndicated loan transactions, and has observed hundreds of wire transfer errors.

In his opinion, a reasonable lender would have understood that the August 11 transfers were made in error based on a comparison of the pre-wire calculation statement and the amount actually transferred, and bolstered by a variety of other factors, including: (1) the absence of a prepayment notice; (2) the recall notice sent by Citibank at 2:22 p.m. on August 12; (3) the subsequent recall notices sent by Citibank in the evening of August 12 and on August 13 and August 17; (4) the disclosure to the lenders that the amount mistakenly wired was Citibank's money and not Revlon's; and (5) that Revlon's financial condition made it unlikely that it was paying off the balance of the loan. He will opine that a reasonable lender would not consider speculative theories over facts in evaluating the question of whether the August 11 wire transfers were made in error, and that, at the very least, a reasonable lender with questions about whether a payment had been made in error would present those questions to the relevant parties—here, Citibank and Revlon.

7. John Byrne

In response to defendants' anticipated expert testimony, John Byrne will testify as a back-office financial industry expert on how a reasonable lender would have understood the August 11 payments before and after receipt of Citibank's recall notices.  Mr. Byrne will testify about his experience, including his 39-year career in the financial industry during which he has performed nearly every role of the middle and back office operations of financial institutions. That includes overseeing incoming and outgoing payments, implementing and enhancing operations systems to manage securities transactions and accompanying payments, and addressing issues with outgoing payments, including the resolution of thousands of payments made in error.  Mr. Byrne will refute defense expert testimony that the August 11 payments lacked indicia of error.  On the contrary, he will opine that a reasonable lender would have understood that the discrepancy between the payment amounts advised in the Calculation Notices and the amounts actually paid on August 11 created an anomaly requiring investigation and reconciliation.  Any hypothesis that the payment was intended to retire Revlon's debt would face a further anomaly in the absence of the required notice of prepayment, again requiring investigation and reconciliation.  He will further opine that an error notice such as those delivered by Citibank the afternoon of August 12 is an overwhelming indicator of error; an error notice is almost always honored and at the very least requires further investigation before a payment can be accepted as proper.

**B.      Defendants' Witness List**

1. Mr. Frederick Bailey Dent, III

Defendants will present the testimony of Mr. Dent, an equity member and portfolio manager at New Generation Advisors, LLC, by affidavit.  Mr. Dent will testify regarding New Generation's business, the 2016 Revlon Term Loans held by New Generation's customers, the August 11 transfers received by New Generation's customers, and the fact that Defendants were not on notice of any mistake upon receipt or any time prior to Citibank's August 12 error notices.

2. Mr. Jeremy Phipps

Defendants will present the testimony of Mr. Phipps, managing director and the Chief Investment Officer at Medalist Partners Corporate Finance LLC, by affidavit.  Mr. Phipps will testify regarding Medalist's business, the 2016 Revlon Term Loans held by Medalist's customers, the August 11 transfers received by Medalist's customers, and the fact that Defendants were not on notice of any mistake upon receipt or any time prior to Citibank's August 12 error notices.

3. Mr. William Lenga

Defendants will present the testimony of Mr. Lenga, managing member at Tall Tree Investment Management, LLC , by affidavit.  Mr. Lenga will testify regarding Tall Tree's business, the 2016 Revlon Term Loans held by Tall Tree's customers, the August 11 transfers received by Tall Tree's customers, and the fact that Defendants were not on notice of any mistake upon receipt or any time prior to Citibank's August 12 error notices.

6

4. Ms. Catherine McCoy

Defendants will present the testimony of Ms. McCoy, an employee of Allstate Insurance Company and a Portfolio Manager with Allstate Investment Management Company and Allstate Investements, LLC by affidavit. Ms. McCoy will testify regarding Allstate's business, the 2016 Revlon Term Loans held by Allstate's customers, the August 11 transfers received by Allstate's customers, and the fact that Defendants were not on notice of any mistake upon receipt or any time prior to Citibank's August 12 error notices.

5. Mr. Scott Caraher

Defendants will present the testimony of Mr. Caraher, portfolio manager, co-head of investments, and head of loans at Symphony Asset Management LLC, by affidavit. Mr. Caraher will testify regarding Symphony's business, the 2016 Revlon Term Loans held by Symphony's customers, the August 11 transfers received by Symphony's customers, and the fact that Defendants were not on notice of any mistake upon receipt or any time prior to Citibank's August 12 error notices.

6. Mr. John Vaughan

Defendants will present the testimony of Mr. Vaughan, a senior loan operations associate at Symphony Asset Management, LLC, by affidavit. Mr. Vaughan will testify regarding Symphony's business, the 2016 Revlon Term Loans held by Symphony's customers, the August 11 transfers received by Symphony's customers, and the fact that Defendants were not on notice of any mistake upon receipt or any time prior to Citibank's August 12 error notices.

7. Mr. Eric Lee

Defendants will present the testimony of Mr. Lee, a Vice President of Operations at Symphony Asset Management, LLC, by affidavit. Mr. Vaughan will testify regarding communications he had with Mr. Vaughan and Mr. Caraher on August 12 concerning the August 11 transfers received by Symphony's customers.

8. Mr. Scott Crocombe

Defendants will present the testimony of Mr. Crocombe, Managing Director in the public credit team at HPS Investment Partners, LLC, by affidavit. Mr. Crocombe will testify regarding HPS's business, the 2016 Revlon Term Loans held by HPS's customers, the August 11 transfers received by HPS's customers, and the fact that Defendants were not on notice of any mistake upon receipt or any time prior to Citibank's August 12 error notices.

9. Mr. George Xanthakys

Defendants will present the testimony of Mr. Xanthakys, Senior Vice President in the operations group at HPS Investment Partners, LLC, by affidavit. Mr. Xanthakys will testify regarding HPS's business, the 2016 Revlon Term Loans held by HPS's customers, the August 11

7

transfers received by HPS's customers, and the fact that Defendants were not on notice of any mistake upon receipt or any time prior to Citibank's August 12 error notices.

10. Ms. Melrose Meneses

Defendants will present the testimony of Ms. Meneses, Senior Analyst at ZAIS Group, LLC, by affidavit. Ms. Meneses will testify regarding ZAIS's business, the 2016 Revlon Term Loans held by ZAIS's customers, the August 11 transfers received by ZAIS's customers, and the fact that Defendants were not on notice of any mistake upon receipt or any time prior to Citibank's August 12 error notices.

11. Mr. Steven Abrams

Defendants will present the testimony of Mr. Abrams, Managing Director and Portfolio Manager at Greywolf Capital Management LP, by affidavit. Mr. Abrams will testify regarding Greywolf's business, the 2016 Revlon Term Loans held by Greywolf's customers, the August 11 transfers received by Greywolf's customers, and the fact that Defendants were not on notice of any mistake upon receipt or any time prior to Citibank's August 12 error notices.

12. Mr. Michael Josephson

Defendants will present the testimony of Mr. Josephson, an operations employee at Greywolf Capital Management LP, by affidavit. Mr. Josephson will testify regarding Greywolf's business, the 2016 Revlon Term Loans held by Greywolf's customers, the August 11 transfers received by Greywolf's customers, and the fact that Defendants were not on notice of any mistake upon receipt or any time prior to Citibank's August 12 error notices.

13. Mr. Matthew Perkal

Defendants will present the testimony of Mr. Perkal, a partner and senior analyst at Brigade Capital Management, LP, by affidavit. Mr. Perkal will testify regarding Brigade's business, the 2016 Revlon Term Loans held by Brigade's customers, the August 11 transfers received by Brigade's customers, and the fact that Defendants were not on notice of any mistake upon receipt or any time prior to Citibank's August 12 error notices.

14. Mr. Jeffrey Frusciante

Defendants will present the testimony of Mr. Frusciante, the Bank Debt Manager at Brigade Capital Management, LP, by affidavit. Mr. Frusciante will testify regarding Brigade's business, the 2016 Revlon Term Loans held by Brigade's customers, the August 11 transfers received by Brigade's customers, and the fact that Defendants were not on notice of any mistake upon receipt or any time prior to Citibank's August 12 error notices.

15. <u>Mr. John Greene</u>

Defendants will present the testimony of Mr. Greene, Partner and Portfolio Manager at Bardin Hill Investment Partners LP, by affidavit. Mr. Greene will testify regarding Bardin Hill's business, the 2016 Revlon Term Loans held by Bardin Hill's customers, the August 11 transfers received by Bardin Hill's customers, and the fact that Defendants were not on notice of any mistake upon receipt or any time prior to Citibank's August 12 error notices.

16. <u>Richard Bram Smith</u>

Defendants will present the testimony of Defendants' expert Mr. Smith, who has more than 40 years of experience in the US corporate loan market, including ten years as the Executive Director of the Loan Syndications and Trading Association.

Mr. Smith will testify regarding how lenders in the market would respond to the receipt of wires such as those at issue in this case. In Mr. Smith's opinion, a reasonable lender would not believe that the August 11 wire transfers were paid in error. In his opinion, prior to receiving an express notice of error, a lender would have no reason to believe that a payment of the amount owed to such lender—including the accrued principal and outstanding interest—would be in error. Mr. Smith will opine that receipt of such a payment in the middle of an interest period would reinforce a lender's expectation of a principal prepayment because (a) the governing credit agreement provides for payment of interest in the middle of an interest period in one circumstance only: prepayment of principal, and (b) borrowers do not prepay solely interest, as Citibank has alleged to be a reasonable inference here, because there is no economic benefit in doing so. Mr. Smith will opine that reasonable lenders would consider Revlon's motivation to prepay the loans, such as the potential springing maturity of the loans in November 2020, and that they would be aware of multiple avenues for Revlon to obtain funds to pay down the loans at par, as Revlon has done with respect to several other debt obligations this year. Mr. Smith will further opine that the asserted error in this case would be an extremely rare event, and that reasonable lenders would have no basis to anticipate that Citibank would make such an error.

Mr. Smith will also respond to the opinions offered by Plaintiff's experts, Messrs. Byrne and Sunshine, that were offered in rebuttal of Mr. Smith's opinions.

17. <u>Peter Vinella</u>

Defendants will present the testimony Mr. Vinella, Managing Director at PVA Toucan International, LLC, possessing more than 35 years of experience in the financial services industry, including as the chief executive of an affiliate of a nationally-chartered bank (Wilmington Trust Company) offering corporate trust and fund administration services to issuers of and investors in structured financial products such as collateralized loan obligations and syndicated loans such as those at issue in this matter, as a senior executive at two major broker-dealers (Smith Barney Shearson and Drexel Burnham Lambert), and as a consultant to over 150 financial services clients around the world, including, without limitation, central banks, government agencies, and top-tier commercial banks, broker-dealers, and institutional investors. Mr. Vinella will testify that there is nothing about the payments, or notice sent with each payment, in this case which, on their face,

should or would prompt a back-office lender representative of reasonable skill, experience, and knowledge to conclude that they were sent in mistake or error. In addition, Mr. Vinella will testify that there are not any generally accepted industry standards regarding the format or delivery of payment notices, such that Citibank's assertion that Defendants should have known of Citibank's putative error solely on account of the notice that Citibank sent to each lender, which notice included the correct amount of principal and accrued interest, is without merit.

18. Vincent Fratta

Mr. Fratta, head of the loans operations group at Citibank that was responsible for executing the August 11 Transfers and the Citibank employee responsible for providing sign off on the August 11 Transfers, will provide live testimony. He will testify regarding the circumstances of the August 11 Transfers, including the notices sent and discovery of the payments, Citibank's procedures for making wire transfers, and his recollection of previous errors by Citibank.

19. Justin Tichauer

Mr. Tichauer, the Managing Director at Citibank who was responsible for negotiating and signing the 2020 Amendment to the Credit Agreement for the 2016 Revlon Term Loan, which replaced and superseded the 2016 Credit Agreement in all respects, will provide live testimony. Mr. Tichauer will testify regarding his understanding of various provisions of the Credit Agreement, concerning the payment of interest and the payment of loans prior to maturity.

20. Brendan Zeigon

Mr. Zeigon, head of the global loan operations and CRMS at Citibank, who was responsible for overseeing Mr. Fratta's group, and has testified as Citibank's corporate representative, will provide live testimony. Mr. Zeigon will testify regarding the circumstances around the August 11 Transfers, including the related business transactions, Citibank's determination that it had made an error, Citibank's controls to prevent errors, and Citibank's efforts to obtain return of the transfers.

21. Eric Warren

Mr. Warren, Revlon's Treasurer who testified as Revlon's corporate representative, will provide live testimony. He will testify regarding the transactions that gave rise to the August 11 payments and Revlon's management of its indebtedness, as each are relevant to what a reasonable lender would have expected from Revlon on August 11.

**XI.** **A designation by each party of deposition testimony to be offered in its case-in-chief and any counter-designations and objections by any other party. The parties need not designate deposition testimony to be used for impeachment purposes only;**

Pursuant to Paragraph 8(e) of the Scheduling Order (Dkt. No. 41) and Paragraph 5.E.ii of the Court's Individual Rules and Practices in Civil Cases, the parties have served separately their deposition designations, counter-designations, objections and a one-page synopsis (with transcript citations) of their affirmative designations on each other and have also emailed them to the Court. Attached as Exhibits B.1 and B.2 are charts setting out the parties' deposition designations, counter-designations and objections.

**XII.** **A list by each party of all exhibits to be offered in its case-in-chief, with a single asterisk indicating exhibits to which no party objects on any ground. If a party objects to an exhibit, the objection should be noted by indicating the Federal Rule of Evidence that is the basis for the objection. If any party believes that the Court should rule on such an objection in advance of trial, that party should include a notation to that effect (e.g., "Advance Ruling Requested") as well. In general, the Court will rule on relevance and authenticity objections at the time of trial;**

See Exhibits C.1 and C.2.

**XIII.** **A statement of the damages claimed and any other relief sought, including the manner and method used to calculate any claimed damages and a breakdown of the elements of such claimed damages;**

See Exhibit D.

**XIV.** **A statement of whether the parties consent to less than a unanimous verdict.**

Not applicable. This trial is set to be tried without a jury.

Dated: November 13, 2020
New York, New York

| | |
|---|---|
| QUINN EMANUEL URQUHART & SULLIVAN, LLP | MAYER BROWN LLP |
| By: /s/ Michael Carlinsky | By:/s/ Matthew D. Ingber |
| Michael Carlinsky | Matthew D. Ingber |
| Robert Loigman | Christopher J. Houpt |
| Benjamin Finestone | Allison Zolot |
| Adam M. Abensohn | Luc W. M. Mitchell |
| Anil Makhijani | Anjanique M. Watt |
| Sophia Qasir | 1221 Avenue of the Americas |
| Alexandre Tschumi | New York, New York 10020 |
| Zachary Russell | (212) 506-2500 |
| Mario Gazzola | |
| 51 Madison Avenue, 22nd Floor | THE LAW OFFICES OF JOHN F. BAUGHMAN, PLLC |
| New York, New York 10010 | |
| (212) 849-7000 | |
| | John F. Baughman |
| Bennett Murphy | Andrew H. Reynard |
| 865 S. Figueroa Street, 10th Floor | 299 Broadway, Suite 207 |
| Los Angeles, CA 90017 | New York, New York 10007 |
| (213) 443-3000 | (347) 241-6347 |
| *Attorneys for Defendants* | *Attorneys for Citibank, N.A.* |

This Order (and the attachments, which appear as exhibits to ECF No. 144) are adopted by the Court, as modified by any rulings that the Court has made (at the final pretrial conference and before). SO ORDERED.

December 7, 2020