UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE CITIBANK AUGUST 11, 2020 WIRE TRANSFERS | No. 1:20-cv-06539 (JMF) |

### Declaration of Santhosh Kuppusamy Ravi

I, Santhosh Kuppusamy Ravi, declare pursuant to 28 U.S.C. § 1746 as follows:

1.  My name is Santhosh Kuppusamy Ravi. I am an analyst at Wipro Limited ("Wipro"). In this role, I work with Citibank's Asset-Based Transitional Finance group, also referred to as the ABTF group, which is within Citibank's Global Loans Operations group. My business address is Wipro Limited, CDC 5, Block S7, Floor 5, Elcot SEZ, Sholinganallur, Chennai, Tamil Nadu - 600 119. I have worked at Wipro for approximately one and a half years.

2.  As an analyst at Wipro, I am responsible for, among other things, carrying out ABTF transactions arising out of Citibank's role as administrative agent. On August 11, 2020, I was asked by my supervisor, Arokia Raj, to assist with the processing of interest payments made pursuant to a 2016 term loan for Revlon administered by Citibank ("Revlon loan").

3.  I understand that this declaration serves as my direct testimony at trial, but I am also informed that I may be asked to supplement my testimony to address other matters raised in the case.

1

**Background**

4.      I am a citizen of India and I reside in Chennai, India.  I obtained my Bachelor's degree from Sacred Heart College, Anna University, and then in 2012, I received an M.B.A. from Sona College of Technology, Anna University.

5.      After graduating, I worked in marketing and data for approximately 3.5 years.  I then transitioned to working in finance.  From approximately March 2017 through January 2019, I worked as an Operation Executive for BNY Mellon, International Operation (India) Private Limited, Chennai.

6.      I joined Wipro in February 2019 as an analyst.  I report to Arokia Raj, a Team Manager based in Chennai. I have no direct reports.  As mentioned, my responsibilities include processing payments related to ABTF loans administered by Citibank.  That involves carrying out transactions within our loan product processing software, such as wire transfers, renewals, and interest payments.  The Wipro ABTF team only processes transactions for Citibank.  Because we only serve Citibank, we keep U.S. business hours even though we are based in India.  (Throughout this declaration, all referenced times are in Eastern Daylight Time.)

**August 11, 2020**

7.      On August 11, 2020, at around 5:00 p.m., I received an assignment from my supervisor, Arokia Raj, asking that I perform the "maker" function in our "six-eye" review/approval process for wire transfers, in connection with an interest payment related to a Revlon loan for which Citibank acts as administrative agent.  Mr. Raj then provided me with the contract reference number.

8.      After being assigned to the transaction, I reviewed a 4:54 p.m. email from Joshua Kaufmann in which he stated that "Interest funds are in.  ABTF team.. Please proceed per

Dorothy's instructions below." A copy of this email is attached as Exhibit A (PX 469). I had already received this email as a member of the "GL US ABTF" email group.

9. The "instructions below," as referenced in Mr. Kaufmann's email, were outlined in a 4:02 p.m. email from Ms. Lee-Murray and were clear to me: "Please pay the Principal to the Wash Account when accrued interest is processed effective 8/11/2020." Ex. A (PX 469) at Citi00001762.

10. Based on this email, I understood that Citibank would be making an interest payment to the Revlon lenders that day, and would, at the same time and as part of the same transaction, set the principal balance to an internal Citibank "wash" account. The wash account is an internal Citibank account used for certain Flexcube transactions to ensure that money does not leave the bank. I understood from the instructions that only interest was to be paid to lenders.

11. After reviewing the 4:54 p.m. email from Mr. Kaufmann, I began to prepare the transaction. Processing a transaction of this type includes multiple steps. These steps include creating an interest schedule, setting up invoices to be sent to lenders, inputting payment instructions, and then fund sighting to release the wire transfer to the lenders. This transaction, like all loan-processing transactions, would be executed through Flexcube, a system that I am familiar with and have used for approximately one and a half years.

12. When processing a payment, Flexcube gives the user various boxes to check depending on whether any of Flexcube's "default settlement instructions" should be suppressed or overridden. Here, the "default settlement instruction" was that the interest and principal amounts that we input into Flexcube are released unless we checked the appropriate box on the appropriate Flexcube screen to override that default instruction. Below is a screenshot of the "boxes" in

3

Flexcube. Ex. B (PX 366) at Citi00000541. It is an accurate image of the Flexcube screen after I input the data. Prior to that, the screen did not have any of these boxes checked.

[Flexcube screen image showing BDLL Borrower LIBOR Drawdown Prod, Drawdown, 001BDLL201480094, 024462, REVLON CONSUMER PRODUCTS CORP, Facility Name REVLON TERM LOAN 2016, GL Detail with Component, Internal GL, Overwrite default settlement instruction columns. Components listed: COLLAT, COMPINTSF, DEFAUL, DFLFTC, FRONT, FUND, INTEREST, PRINCIPAL (with Internal GL 3003000023 and checkbox checked).]

The available boxes include, among others, "Principal," "Fund," and "Front." In order to suppress the principal and set it to the wash account, I incorrectly believed that I needed to check only the box labeled "Principal." I therefore checked the "Principal" box only. At the time, I did not know that the "Front" and "Fund" boxes also needed to be checked in order to suppress the payment. Again, at all times I intended for Citibank to send only interest to lenders and to set the principal amount to the internal wash account.

13. Between approximately 5:15 p.m. and 5:45 p.m., my supervisor Mr. Raj and I communicated by telephone as I built the transactions. During that period, he reviewed and provided the required approvals. I then sent an email at 5:45 p.m. to Mr. Raj, asking him to provide final approval for the transaction. I included a note stating "Principle to Wash A/c & Interest to DDA A/c." DDA stands for "Demand Deposit Account," which is the Citibank operations account that is used to collect payments from customers such as Revlon and make wire transfers to lenders. It is an external-facing account. Ex. A (PX 469) at Citi00001760-61. Based on my note "Principle

4

to Wash A/c," I believed I had processed the transaction such that the principal was set to the internal wash account and would not be paid out to the Revlon lenders.

14. Mr. Raj reviewed the transaction and sent an email at 5:47 p.m. to Vincent Fratta (the approver from Citibank in Delaware) to request six-eye review on the transaction. Mr. Fratta then sent an email approval at 5:54 p.m. Ex. A (PX 469) at Citi00001760. I was copied on these emails as part of the GL US ABTF group. Each of the emails confirmed what I thought I had instructed Flexcube to do: set the principal to the wash account and not send that amount to lenders. Ex. A (PX 469). At 6:09 p.m., Mr. Raj sent an email to the group confirming that he had released the funds and reiterating that "Principal set to wash and Interest paid to Investors with Invoice." Exhibit C (PX 419). I took these emails to mean that the transaction had been completed consistent with how I believed I had instructed Flexcube.

15. At 6:53 p.m., I sent an email to Mr. Raj and others on my team with the back-ups for the transaction. Ex. A (PX 469). Back-ups include the documentary support for the transaction, which we send in the regular course of our business. I attached the approval emails, a record of a receipt of the interest payment from Revlon, and screenshots from Flexcube showing that the payment had been made. The screenshots showed an "interest" component of $7,809,594.19 under a field titled "Amount Paid," and a "principal" component of $893,944,008.52 under the same field. This did not cause me any concern, because I understood that Flexcube was recording the principal as "paid" or set to Citibank's internal non-cash wash account. I did not know that the second part of the transaction—principal to the wash account—had not been executed as intended.

16. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.



Dated: November 13, 2020
       Chennai, India

Santhosh Kuppusamy Ravi