UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In re:*<br><br>*Citibank August 11, 2020 Wire Transfers* | Case No. 1:20-cv-06539 (JMF)<br><br>**DECLARATION OF JEFFREY FRUSCIANTE** |

### DECLARATION OF JEFFREY FRUSCIANTE

I, Jeffrey Frusciante, being duly sworn, state the following under penalty of perjury:

1. I am a resident of the State of Connecticut, over the age of 18, and competent to make this statement.

I. **Introduction**

2. I am the Bank Debt Manager at Brigade Capital Management, LP ("Brigade"). I have worked at Brigade for five years. I have been the Bank Debt Manager for two years. I submit this declaration as my testimony in support of Brigade's defense of claims asserted by Plaintiff Citibank, N.A. ("Citibank") in this action.

3. In my role as Bank Debt Manager, I am familiar with and have first-hand knowledge of the facts set forth in this declaration. I have knowledge regarding Brigade's internal structure and operations. I am also aware of our clients' holdings in Revlon's $1.8 billion term loan facility issued in 2016 (the "2016 Term Loans," the holder of which, the "2016 Term Lender"). I have similar knowledge regarding our clients' receipt of payments on August 11, 2020, each in the amount of the outstanding principal and accrued interest Revlon owed those clients.

4. From the outset, I want to make clear that when the payments at issue in this case were received by Brigade-managed accounts, funds, and CLOs on the evening of August 11, 2020, there was no indication that those payments had been made by mistake. And when I first

1

learned of those payments the following morning, it was my belief that they were an intentional paydown of our clients' 2016 Term Loans. Even after I learned that Citibank had circulated notices approximately 20 hours after the transfers asserting the payments were made by mistake, I was skeptical that that was the case, as it seemed more plausible that the payments were intentional than that one of America's largest banks accidentally paid off our loans down to the penny.

II.     **Background**

5.     Brigade is a fund manager for certain collateralized loan obligations ("CLOs"), collateralized debt obligations ("CDOs"), private funds, and separately managed accounts ("SMAs"). Brigade selects investments for these entities, which I will refer to as clients. Eight CLOs managed by Brigade invested in the 2016 Term Loans: ACIS CLO 2014-5 Ltd. ("CLX5"), Battalion CLO VII Ltd. ("CLO7"), Battalion CLO VIII Ltd. ("CLO8"), Battalion CLO X Ltd. ("CL10"), Battalion CLO IX Ltd. ("CLO9"), Battalion CLO XI Ltd. ("CL11"), Battalion CLO XII Ltd. ("CL12"), and Battalion CLO XIV Ltd. ("CL14"). Two CDOs managed by Brigade invested in the 2016 Term Loans: Brigade Debt Funding I , Ltd. ("CLB1"), and Brigade Debt Funding II, Ltd ("CLB2"). Four private funds managed by Brigade invested in the 2016 Term Loans: Brigade Credit Fund II Ltd. ("BCF2"), Brigade Distressed Value Master Fund Ltd. ("DSTR"), Brigade Opportunistic Credit LBG Fund Ltd. ("LBNK"), and Brigade Leveraged Capital Structures Fund Ltd.[1]  Twenty-eight SMAs managed by Brigade invested in the 2016 Term Loans: Big River Group Fund SPC LLC ("BIGR"), Blue Falcon Limited ("BLUE"), Brigade Diversified Credit CIT ("BCIT"), City of Phoenix Employees' Retirement Plan ("COPX"), Delta Master Trust ("DLTA"), FCA Canada Inc. Elected Master Trust ("JCAN"),

---

[1] Brigade Leveraged Capital Structures Fund Ltd. holds the 2016 Term Loans through a total return swap ("TRS") account.

2

FCA US LLC Master Retirement Trust ("JEEP"), FedEx Corporation Employees' Pension Trust ("FEDX"), Future Directions Credit Opportunities Fund ("AMPI"), Goldman Sachs Trust II – Goldman Sachs Multi-Manager Non-Core Fixed Income Fund ("GS40"), Illinois State Board of Investment ("ISBI"), JPMorgan Chase Retirement Plan Brigade ("JPRP"), JPMorgan Chase Retirement Plan Brigade Bank Loan ("JPBD"), Los Angeles County Employees Retirement Association ("LCRA"), Mediolanum Best Brands ("MIFL"), New York City Fire Department Pension Fund, Subchapter 2 ("NYCF"), New York City Police Pension Fund, Subchapter 2 ("NYCP"), Northrop Grumman Pension Master Trust ("GRUM"), Panther BCM, LLC ("NOCA"),[2] SC Credit Opportunities Mandate LLC ("SACR"), SEI Global Master Fund Plc the SEI High Yield Fixed Income Fund ("SGMF"), SEI Institutional Investments Trust-High Yield Bond Fund ("SIIT"), SEI Institutional Managed Trust – Multi-Strategy Alternative Fund ("SIMO"), SEI Institutional Managed Trust-High Yield Bond Fund ("SIMT"), Teachers' Retirement System of the City of New York ("NYCT"), The Coca-Cola Company Master Retirement Trust ("SODA"), and SEI Investments Canada Company - U.S. High Yield Bond Fund ("SEIC").[3]

6. Investment managers, including Brigade, generally have both front office and back office functions. The front office is responsible for making investment determinations on

---

[2] NOCA holds some of the 2016 Term Loans through a TRS account.
[3] True and correct copies of the investment management agreements ("IMAs"), collateral management agreements ("CMAs"), and indentures governing Brigade's relationship with these entities are available at DX-0320 (NOCA IMA); DX-0200 (CLO9 Indenture); DX-0910 (BLUE IMA); DX-0221 (CL10 Indenture); DX-0137 (AMPI IMA); DX-0222 (CL10 CMA); DX-0186 (CLO7 Indenture); DX-0187 (CLO7 CMA); DX-0225 (SIMO and SMT IMA); DX-0272 (CL12 Indenture); DX-0304 (CL14 Indenture); DX-0252 (CL11 Indenture); DX-0292 (CLB2 Indenture); DX-0268 (CLB1 Indenture); DX-0197 (CLO9 CMA); DX-0247 (CLO8 CMA); DX-0246 (CLO8 Indenture); DX-0130 (BIGR IMA); DX-0312 (CLX5 IMA); DX-0235 (GS40 IMA); DX-0276 (COPX IMA); DX-0282 (CLB1 CMA); DX-0139 (SODA IMA); DX-0911 (DLTA IMA); DX-0290 (CLB2 CMA); DX-0305 (CL14 CMA); DX-0251 (CL11 CMA); DX-0273 (CL12 CMA); DX-0138 (FEDX IMA); DX-0275 (SIIT IMA); DX-0322 (BCF2 IMA); DX-0133 (DSTR IMA); DX-0912 (LBNK IMA); DX-0217 (JCAN IMA); DX-0216 (JEEP IMA); DX-0234 (ISBI IMA); DX-0307 (GRUM IMA); DX-0288 (NYCF, NYCP, and NYCT IMA); DX-0132 (LCRA IMA); DX-0127 (JPRP IMA); DX-0913 (JPBD IMA); DX-0306 (MIFL IMA); DX-0914 (SEIC IMA); DX-0915 (SGMF IMA).

behalf of our clients.  Our back office is responsible for the day-to-day support of trade activity and provides ongoing support and maintenance for positions within the investment portfolios.  It also serves as the primary point of contact for prime brokers, custodians, and other service providers.  Our back office is assisted by a subservice organization, SS&C Fund Services, in carrying out several of its administrative functions.  My position and function places me within Brigade's back office.

### III.     The Revlon 2016 Term Loans

7.      In 2016, Revlon issued approximately $1.8 billion of debt pursuant to a credit agreement (the "2016 Credit Agreement").  At the outset, and for several years thereafter, Citibank served as the lenders' administrative agent under the 2016 Credit Agreement.

8.      As of August 11, 2020, the 42 clients listed above for which Brigade acts as investment manager held terms loans issued by Revlon under the 2016 Credit Agreement.  Those clients, accordingly, were lenders to Revlon at that time.  Out of the entire facility, Brigade's clients held approximately $211,227,472.72 of the 2016 Term Loans.  Approximately $36,575,975.20 of that amount is held by Brigade's clients through TRS accounts.[4]

9.      The last scheduled interest payment under the 2016 Term Loan before the August 11 payments was on May 29, 2020.  Following the May interest payment, the next day on which interest was due under the 2016 Term Loan was August 28, 2020.

---

[4] True and correct copies of the payment notices showing each clients' holdings are available at DX-0936 (AMPI); DX-0731 at Citi00001609 (BCF2); DX-0960 (BCIT); DX-0934 (BIGR); DX-0947 (BLUE); DX-0929 (CL10); DX-0943 (CL11); DX-0944 (CL12); DX-0949 (CL14); DX-0950 (CLB1); DX-0961 (CLB2); DX-0930 (CLO7); DX-0957 (CLO8); DX-0946 (CLO9); DX-0962 (COPX); DX-0935 (DLTA); DX-0948 (DSTR); DX-0953 (FEDX); DX-0958 (GRUM); DX-0951 (GS40); DX-0933 (ISBI); DX-0954 (JCAN); DX-0939 (JEEP); DX-0937 (JPBD); DX-0952 (JPRP); DX-0731 at Citi00001612 (LBNK); DX-0731 at Citi00001615 (LCRA); DX-0730 at Citi00001449 (MIFL); DX-0940 (NOCA); DX-0942 (NYCF); DX-0928 (NYCP); DX-0941 (NYCT); DX-0956 (SACR); DX-0932 (SEIC); DX-0931 (SGMF); DX-0731 at Citi00001618 (SIIT); DX-0959 (SIMO); DX-0955 (SIMT); DX-0945 (SODA); DX-0938 (CLX5).

10.     I understand that Citibank is asserting that it intended to pay interest to all of the 2016 Term Lenders on August 11, 2020, because Revlon was repurchasing 2016 Term Loans from selected lenders on that day.  I did not know that Revlon was conducting such a repurchase on that day, or planning any interest payment.  Citibank did not provide advance notice to Brigade that such repurchases were going to occur or that interest was being paid in connection with repurchases.

IV.     **The Payoff of the 2016 Term Loans**

11.     At or around 5:33 P.M. on August 11, 2020, each of Brigade's clients that held 2016 Term Loans received, by wire transfer, a payment of the outstanding principal and accrued interest they were owed.[5]  The funds were accepted for deposit into each of the clients' accounts, which are maintained at various banks, including BNP Paribas, Goldman Sachs, Brown Brothers Harriman & Co., Bank of New York Mellon, U.S. Bank, Virtus, J.P. Morgan, State Street, Northern Trust, RBC, and CIBC Mellon.  The payment confirmation accompanying each transfer expressly stated that the payment was being made on account of the Revlon 2016 Term Loans.

---

[5]  True and correct copies of documents showing the amounts received are available at DX-1005 (AMPI); DX-0729 at Citi00001488 (BCF2); DX-0387 (BCIT); DX-0574 at BRIGADE_CITI_00010685 (BIGR); DX-0593 (BLUE); DX-0777 (CL10); DX-0775 at BRIGADE_CITI_00002353 (CL11); DX-0775 at BRIGADE_CITI_00002353 (CL12); DX-0775 at BRIGADE_CITI_00002353 (CL14); DX-0487 (CLB1); DX-0487 (CLB2); DX-0775 at BRIGADE_CITI_00002353 (CLO7); DX-0780 (CLO8); DX-0775 at BRIGADE_CITI_00002353 (CLO9); DX-0785 at BRIGADE_CITI_00002378 (COPX); DX-0766 at BRIGADE_CITI_00002290 (DLTA); DX-0762 at Citi00001375 (DSTR); DX-0776 at BRIGADE_CITI_00002355-56 (FEDX); DX-0776 at BRIGADE_CITI_00002355 (GRUM); DX-0776 at BRIGADE_CITI_00002355 (GS40); DX-0639 (ISBI); DX-0776 at BRIGADE_CITI_00002356 (JCAN); DX-0776 at BRIGADE_CITI_00002355 (JEEP); DX-0766 at BRIGADE_CITI_00002290 (JPBD); DX-0766 at BRIGADE_CITI_00002290 (JPRP); DX-0135 (LBNK); DX-0776 at BRIGADE_CITI_00002355 (LCRA); DX-0786 at BRIGADE_CITI_00002380 (MIFL); DX-0787 at BRIGADE_CITI_00002384 (NOCA); DX-0776 at BRIGADE_CITI_00002354-55 (NYCF); DX-0776 at BRIGADE_CITI_00002356 (NYCP); DX-0776 at BRIGADE_CITI_00002354 (NYCT); DX-0576 at BRIGADE_CITI_00010813 (SACR); DX-0791 (SEIC); DX-0789 (SGMF); DX-1012 at BRIGADE_CITI_00010882 (SIIT); DX-1013 at BRIGADE_CITI_00010889 (SIMO); DX-1015 at BRIGADE_CITI_00010900 (SIMT); DX-0639  (SODA); DX-1119 (CLX5).

12. The amounts that the clients received were identical to the outstanding principal and accrued interest owed under the 2016 Term Loan as of August 11, 2020. The specific amounts owed to and received by the clients are attached hereto in Schedule A.

13. The transfers were sent by wire to the same banks, and same accounts, as all past payments by Citibank in connection with the 2016 Term Loan. The transfers were not accompanied by any notice of mistake or other documentation indicating that the funds had been sent in error. Each of the wire transfers cleared on the evening of August 11, 2020, and the money was accordingly deposited into each lender's account that evening.

14. I first learned about the August 11 payment on the morning of August 12, 2020. Specifically, at 9:07 a.m., EDT, Daiying Lei, Data Analyst at Virtus, LLC ("Virtus"), emailed a daily cash flow statement for a CLO managed by Brigade named Battalion CLO VIII Ltd. A true and correct copy of that exchange is available at DX-0483. Brigade contracts with Virtus – which is a partner of Citibank – to act as fund administrator for certain funds, and, as a standard part of its work, it provides cash flow statements, like the one referenced here, each business day for the funds it handles. The cash flow statement we received on August 12 indicated that Virtus had applied the wire to the 2016 Term Loan, but did not yet apply the funds to principal or interest sub-accounts, and noted that "[w]e are reaching out to agent for below Revlon wire." *Id.*

15. At 11:29 a.m., EDT, Ms. Lei sent an updated cash flow "with Revlon paydown processed." *Id*. My assumption at the time when I saw this exchange was that Virtus had reached out to Citibank and confirmed how to apply the wire to principal and interest sub-accounts.

16. Around the same time, we received an inquiry from Paige Williams of SEI Investments Company ("SEI"), which is an administrator for various of our other accounts,

asking if we had received further backup regarding a Revlon payment. A true and correct copy of that exchange is available at DX-0545. My colleague Maureen Turk asked Mr. Williams for the "value date," because administrators sometimes ask for backup for payments that were made weeks or even months in the past. *Id.* By asking for the value date, Ms. Turk was identifying whether SEI sought backup for a recent payment or an older payment.

17. After receiving the emails from Virtus and SEI showing that some of our portfolios had received paydowns for Revlon, I directed my colleagues to begin reaching out to verify whether all of our portfolios had received the same paydown.

18. Prior to receiving Citibank's message stating that the principal payment was in error, I did not believe the payments were erroneous. Given that the payments precisely matched principal and interest owed to each of Brigade's clients, I would have no reason to suspect an error. Similarly, none of the administrators that contacted Brigade on the morning of August 12 regarding the payments suggested that they were made in error. No one I had contact with suggested that the payments could have been an error before Citibank sent out its notices. And in fact, all of the circumstances surrounding the payment suggested that Revlon had intentionally paid down the loans: First, our clients had all received the exact amount of principal and interest they were owed. Second, the transaction confirmations explicitly stated that they were on behalf of the 2016 Term Loan. Third, our clients received interim interest and the payment was made in the middle of an interest period. This is an important point – in the syndicated loan industry, there are very few reasons why interim interest would be paid. Interim interest is always accompanied either by some sort of principal activity or an amendment of the loan documents, and in my experience, I have never seen a borrower or agent bank pay interim interest for any other reason – it just is not done in the industry.

7

V.     **Citibank's "Error" Notices**

19.    At or around 2:23 p.m., EDT on August 12, Citibank sent an email to our Bank Debt email distribution list, stating that the wire payments that Citibank had made on August 11, 2020 had been "released erroneously." The message did not provide any explanation of how or why such a payment could have been made in error, or why it was being sent almost a full day after the payments were completed. Up until this point, neither I nor, to my knowledge, anyone else at Brigade, had received any notice of a potential error in connection with the August 11 payments. As noted above, this was after I had already concluded that the payments were genuine paydowns on the 2016 Term Loans.

20.    Even after I reviewed the notice, it did not make sense to me because it suggested that only the principal portion was paid in error. As discussed above, interim interest is not paid without some accompanying principal activity, or, at a minimum, without an amendment to the loan documents. Moreover, I am not aware of any other situation where Brigade clients received interim interest payments in connection with selective repurchases of other lenders' holdings, which is how Citibank has attempted to explain these payments.

21.    Even though I was skeptical of Citibank's "error notices," it became apparent to me and my colleagues, once we received those notices, that Citibank was claiming it was entitled to the return of the funds and that there would be a dispute, even possibly litigation. Therefore, in order to be prudent, Brigade instructed custodians and administrators to freeze the August 11 payments in place in suspense accounts belonging to each client on August 13 so that the money would not be returned to Citibank, sent to investors through the CLOs' waterfalls, or re-invested. That way, the money would be frozen until the issue was sorted out, and, indeed, the funds now

remain in suspense pursuant to a Temporary Restraining Order issued in this case on August 18, 2020.

22. Brigade considers the 2016 Term Loan to be paid off, and indeed generally views loans as paid off upon receipt of the outstanding amounts owed.

## VI. Prior to Citibank's Recall Notice, There Was No Reason to Believe the Payments Were Mistaken

23. To be clear, I did not believe, and had no reason to believe, prior to receiving Citibank's error notices, that the payments were a mistake. As detailed above, the payments were received, and accepted for deposit into our clients' accounts, late in the day on August 11, 2020. The payments were made without any accompanying "error notice," and without any other indication of a mistake.

24. As I explain above, it was clear to me, as soon as I received confirmation that our clients had received the funds, that their loans had been repaid. Indeed, when I began learning of the loan payments on the morning of August 12, I saw that the amount of the payments corresponded exactly with the outstanding principal and accrued interest owing by Revlon to each of the clients that received a payment. The payments were not too low or too high; nor did they suggest some form of random generation. They did not include any indication of error—such as a shifted decimal point or transposition of numbers. The payments appeared to be prepayments on the Revlon loans, similar to other prepayments we have seen for other customers in connection with other loans.

25. When I first learned of the prepayments, I did not know if all of Brigade's clients that held 2016 Term Loans had been paid in full, nor did I know if clients of other investment managers had received such payments. Therefore, I sent out multiple emails to the clients' custodians to inquire whether other clients holding the 2016 Term Loans also received payment

9

on August 11 from Citibank. When I sent out these emails, I certainly did not think that the payments that had already been confirmed were the result of a mistake at Citibank.

26. When I received and reviewed the payment notifications sent by Citibank with the payments, I did not find anything that would indicate the payments were an error. To the contrary, I saw that the payment amounts matched exactly with the amounts that were indicated on the "Debit Amount" and "Credit Amount" lines of the payment confirmation documents. The "Additional details" column of the payment confirmation documents stated that the payments were for "Revlon Term Loan 2016 Revlon Consumer Products Corp," which I understood—correctly, I believe—to be the 2016 Term Loans Brigade's various clients were holding.

27. I also reviewed Citibank's notices providing the interest calculation in connection with the payments. The interest calculation statements demonstrated how the interest portion of the payments we received was determined. Additionally, the interest calculation notices said that interim interest was "due" on August 11, 2020 – as discussed, the most likely reason for interim interest being "due" was a principal paydown.

28. The absence of a principal notice gave me no reason to believe that the prepayment of the 2016 Term Loans was in error. We often receive payments without notices, including notices that are required by the corresponding credit agreements. That is a common event; certainly far more common than receiving erroneous payments of the type and amount asserted by Citibank here. Notices are often received after payments are made, many times several days after payment. For example, earlier this year, Fitness International made an unscheduled paydown on January 8, 2020 with principal and accrued interest. The agent bank sent Brigade clients an interest notice on January 8, 2020, but did not send the paydown notices until January 10, 2020. In contrast, I am not aware of Brigade clients ever receiving a payment

that matched exactly what they were owed that later turned out to be a mistake.  When Brigade and the administrators it works with undertake to locate missing notices, that does not indicate any expectation or belief that the payments were sent in error.  It is simply a commonplace routine to ensure documentation for payments received is as detailed as possible.

29. Helping administrators and custodians identify notices is a daily aspect of my job, and, again, does not signal that the underlying payments were mistaken.  Some administrators will require an explanation of full payment amounts for purposes of applying the funds, and when a notice is missing, they routinely reach out to me and my colleagues in Brigade's back office.  That typically means waiting for notices to arrive, which often come after payments are made – and in some cases, well after payments are made.

30. Also, some administrators do not require notices to apply payments.  Here, many of the administrators applied the payments to both principal and interest because those payments matched the exact amount of outstanding principal and accrued interest, making it clear that they were intended as paydowns on the loans.  For example, Virtus applied the payments received by CLO8 to the CLO's principal and interest collection sub-accounts on the morning of August 12.  A true and correct copy of the cash flow sheet that shows that application is included in DX-0483 at BRIGADE_CITI_00003314.  A few days after receiving the recall notices, I called Ms. Lei to ask why Virtus, a Citibank partner, completed the application.  She transferred me to her supervisor, Javier Tapia, who explained that Virtus applied the payment pursuant to a policy they have that no notice or verification is necessary for a paydown that matches outstanding principal and interest to the penny.  Several other administrators also applied the funds to principal and interest when the payments were received, including BNP Paribas, SEI Investments, Bank of New York Mellon, JP Morgan, and Northern Trust.  These administrators applied the funds for at

least fourteen different lenders: AMPI, BCF2, BCIT, BIGR, BLUE, CLO8, COPX, DLTA, DSTR, ISBI, JPBD, JPRP, LBNK, NOCA, SACR, SGMF, and SODA.[6]

31. The custodians and administrators for at least thirty-four of Brigade's clients also tied the payments received on August 11, 2020 to the 2016 Term Loan prior to receipt of the error notices: AMPI, BCIT, BIGR, BLUE, CL10, CL11, CL12, CL14, CLB1, CLB2, CLO7, CLO8, CLO9, COPX, DLTA, DSTR, FEDX, GRUM, GS40, JCAN, JEEP, JPBD, JPRP, LBNK, LCRA, MIFL, NOCA, NYCF, NYCP, NYCT, SACR, SEIC, SGMF, and CLX5.[7]

32. Finally, the distressed trading price for the 2016 Term Loans also gave me no reason to believe that the prepayment of the 2016 Term Loans was in error. Brigade manages portfolios that hold positions in well over 1,000 unique credit investments. The back office team does not look at trading levels or the credit quality of issuers when processing payments. When we receive payment on a loan, particularly in the exact amount owed, it is our natural conclusion that the payment was intended.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

---

[6] True and correct copies of the documents showing that application are available at DX-1005 (AMPI); DX-0369 (BCF2); DX-0387 (BCIT); DX-0574 (BIGR); DX-0584 (BLUE); DX-0593 (BLUE); DX-0483 at BRIGADE_CITI_00003314 (CLO8); DX-1009 at BRIGADE_CITI_00010800 (COPX); DX-0384 at BRIGADE_CITI_00010910 (DLTA); DX-0583 at BRIGADE_CITI_00011042 (DSTR); DX-0639 (ISBI); DX-0383 at BRIGADE_CITI_00010830 (JPBD); DX-0383 at BRIGADE_CITI_00010828 (JPRP); DX-0135 (LBNK); DX-0363 at BRIGADE_CITI_00010838 (NOCA); DX-0576 at BRIGADE_CITI_00010813 (SACR); DX-1006 at BRIGADE_CITI_00010869 (SGMF); DX-1014 (SODA).

[7] True and correct copies of the documents showing that they tied the payment to the 2016 Term Loan are available at DX-1005 (AMPI); DX-1121 at BRIGADE_CITI_00002375 (AMPI); DX-0387 (BCIT); DX-0574 (BIGR); DX-0584 (BLUE); DX-0593 (BLUE); DX-1110 (CL10); DX-1116 (CL11); DX-1112 (CL12); DX-1111 (CL14); DX-1118 (CLB1); DX-1117 (CLB2); DX-1113 (CLO7); DX-0483 at BRIGADE_CITI_00003314 (CLO8); DX-1115 (CLO8); DX-1114 (CLO9); DX-1009 at BRIGADE_CITI_00010800 (COPX); DX-0384 at BRIGADE_CITI_00010910 (DLTA); DX-0583 at BRIGADE_CITI_00011042 (DSTR); DX-0383 at BRIGADE_CITI_00010830 (JPBD); DX-0383 at BRIGADE_CITI_00010828 (JPRP); DX-0135 (LBNK); DX-1011 at BRIGADE_CITI_00010848 (MIFL); DX-0786 at BRIGADE_CITI_00002380 (MIFL); DX-0363 at BRIGADE_CITI_00010838 (NOCA); DX-0576 at BRIGADE_CITI_00010813 (SCAR); DX-1025 (SEIC); DX-1006 at BRIGADE_CITI_00010869 (SGMF); DX-1119 (CLX5); DX-0776 (FEDX, GRUM, GS40, JCAN, JEEP, LCRA, NYCF, NYCP, NYCT).

*[Rest of page intentionally left blank – signature on following page]*

Dated: November 12, 2020
      New York, New York

_____
Jeffrey Frusciante

## SCHEDULE A

| Lender Name | Principal Outstanding as of August 11, 2020 | Accrued Interest Outstanding as of August 11, 2020 | Total Payment by Citibank on August 11, 2020 |
|---|---|---|---|
| ACIS CLO 2014-5 Ltd. | $2,771,208.23 | $24,209.58 | $2,795,417.81 |
| Battalion CLO IX Ltd. | $4,672,318.15 | $40,817.89 | $4,713,136.04 |
| Battalion CLO VII Ltd. | $4,674,202.06 | $40,834.35 | $4,715,036.41 |
| Battalion CLO VIII Ltd. | $5,068,312.34 | $44,277.34 | $5,112,589.68 |
| Battalion CLO X Ltd. | $3,233,418.17 | $28,247.50 | $3,261,665.67 |
| Battalion CLO XI Ltd. | $5,079,994.91 | $44,379.40 | $5,124,374.31 |
| Battalion CLO XII Ltd. | $1,821,197.60 | $15,910.18 | $1,837,107.79 |
| Battalion CLO XIV Ltd. | $869,878.02 | $7,599.35 | $877,477.37 |
| Big River Group Fund SPC LLC | $1,293,954.55 | $11,284.49 | $1,305,239.04 |
| Blue Falcon Limited | $4,032,315.18 | $35,226.75 | $4,067,541.94 |
| Brigade Credit Fund II Ltd. | $39,781,444.61 | $347,159.61 | $40,128,604.22 |
| Brigade Debt Funding I, Ltd. | $3,859,319.53 | $33,715.44 | $3,893,034.97 |
| Brigade Debt Funding II, Ltd. | $2,891,977.61 | $25,264.64 | $2,917,242.24 |
| Brigade Distressed Value Master Fund Ltd. | $2,992,227.98 | $2,825.99 | $2,995,053.97 |
| Brigade Diversified Credit CIT | $1,271,114.54 | $11,081.40 | $1,282,195.94 |
| Brigade Opportunistic Credit LBG Fund Ltd. | $17,468,301.42 | $152,424.25 | $17,620,725.67 |
| City of Phoenix Employees' Retirement Plan | $869,659.86 | $7,579.09 | $877,238.94 |
| Delta Master Trust | $2,600,081.41 | $22,647.13 | $2,622,728.54 |
| FCA Canada Inc. Elected Master Trust | $542,163.01 | $4,724.93 | $546,887.95 |
| FCA US LLC Master Retirement Trust | $1,643,028.73 | $14,294.96 | $1,657,323.70 |
| FedEx Corporation Employees' Pension Trust | $5,670,171.68 | $49,400.57 | $5,719,572.25 |
| Future Directions Credit Opportunities Fund | $3,649,935.77 | $31,886.24 | $3,681,822.02 |
| Goldman Sachs Trust II - Goldman Sachs Multi-Manager Non-Core Fixed Income Fund | $1,403,341.99 | $12,259.75 | $1,415,601.74 |
| Illinois State Board of Investment | $3,959,936.14 | $34,530.15 | $3,994,466.30 |
| JPMorgan Chase Retirement Plan Brigade | $553,091.93 | $4,831.87 | $557,923.80 |

| Lender Name | Principal Outstanding as of August 11, 2020 | Accrued Interest Outstanding as of August 11, 2020 | Total Payment by Citibank on August 11, 2020 |
|---|---|---|---|
| JPMorgan Chase Retirement Plan Brigade Bank Loan | $1,159,789.49 | $10,132.05 | $1,169,921.54 |
| Los Angeles County Employees Retirement Association | $9,477,040.97 | $82,792.48 | $9,559,833.46 |
| Mediolanum Best Brands | $7,445,819.23 | $65,047.50 | $7,510,866.73 |
| New York City Fire Department Pension Fund | $449,209.93 | $3,924.35 | $453,134.28 |
| New York City Police Pension Fund | $885,555.47 | $7,736.31 | $893,291.78 |
| Northrop Grumman Pension Master Trust | $1,975,772.60 | $17,107.36 | $1,992,879.95 |
| Panther BCM, LLC[8] | $1,528,123.39 | $13,349.86 | $1,541,473.25 |
| SC CREDIT OPPORTUNITIES MANDATE LLC | $3,167,244.27 | $27,621.40 | $3,194,865.67 |
| SEI Global Master Fund Plc the SEI High Yield Fixed Income Fund | $1,774,217.87 | $15,499.76 | $1,789,717.63 |
| SEI Institutional Investments Trust-High Yield Bond Fund | $7,967,831.48 | $69,572.90 | $8,037,404.37 |
| SEI Institutional Managed Trust - Multi-Strategy Alternative Fund | $855,770.95 | $7,446.24 | $863,217.20 |
| SEI Institutional Managed Trust-High Yield Bond Fund | $4,956,765.26 | $43,297.58 | $5,000,062.83 |
| Teachers' Retirement System of the City of New York | $3,033,982.48 | $26,505.21 | $3,060,487.69 |
| The Coca-Cola Company Master Retirement Trust | $5,900,224.88 | $51,455.30 | $5,951,680.19 |
| SEI Investments Company - U.S. High Yield Bond Fund | $1,401,553.84 | $12,244.13 | $1,413,797.97 |
| Brigade Leveraged Capital Structures Fund Ltd. - Citi TRS (Citi USPTRS1 Loan Funding LLC) | $31,782,683.71 | $277,657.06 | $32,060,340.77 |
| Panther BCM, LLC - Citi TRS (Citi USPTRS1 Loan Funding LLC) | $4,793,291.48 | $41,874.73 | $4,835,166.21 |

---

[8] This excludes the amount that was held in a TRS account.