UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In re:*<br><br>*Citibank August 11, 2020 Wire Transfers* | Case No. 1:20-cv-06539 (JMF)<br><br>**DECLARATION OF MICHAEL JOSEPHSON** |

## **DECLARATION OF MICHAEL JOSEPHSON**

I, Michael Josephson, being duly sworn, state the following under penalty of perjury:

1. I am a resident of the State of New York, over the age of 18, and competent to make this statement.

I. **Introduction**

2. I work in operations at Greywolf Capital Management LP ("Greywolf"). I have been employed at Greywolf since 2007. I submit this declaration as my testimony in support of Greywolf's defense of claims asserted by Citibank, N.A. ("Citibank") in this action.

3. I have first-hand knowledge of the facts set forth in this declaration. Among other things described below, I am familiar with our clients' participation as lenders in the 2016 Term Loans, and the events surrounding Citibank's transfer of funds in repayment of those loans on August 11, 2020.

4. As I will discuss in greater detail below, Citibank transferred funds to Greywolf's clients, late on August 11, 2020, in the exact amounts those clients were owed on the 2016 Term Loans. The funds were accepted for deposit into the clients' accounts, and the transfers were not accompanied by any notice, or indication of any sort, that they had been sent by mistake. It was not until at least 20 hours later that Citibank first circulated "error notices" claiming that there had been a mistake. Without those notices, I would not have suspected that the funds had been

transferred by mistake. Never in my entire career have I seen a bank accidentally pay down an entire syndicated loan, in the exact amounts owed to each lender.

II. **Background**

5. Greywolf is a collateral manager for certain collateralized loan obligations ("CLOs"). As of the morning of August 11, 2020, three CLOs managed by Greywolf invested in the 2016 Term Loans. These three CLOs are Greywolf CLO II, Ltd. ("Greywolf CLO II"), Greywolf IV, Ltd. (Re-issue) ("Greywolf CLO IV"), and Greywolf CLO V, Ltd. ("Greywolf CLO V"). In its role as collateral manager, Greywolf selected investments for these CLOs.

6. Greywolf's front office is responsible for making investment decisions for our clients. Our back office provides day-to-day support of trade activity and maintains positions within the investment portfolios. It also serves as a point of contact for trustees, fund administrators, and other service providers. My position and function places me within Greywolf's back office.

III. **The Revlon 2016 Term Loans**

7. As of August 11, 2020, three CLOs for which Greywolf acts as collateral manager held 2016 Term Loans issued by Revlon under the 2016 Credit Agreement. Those clients were lenders to Revlon at that time. Out of the entire facility, Greywolf's clients held approximately $15,920,138.89 of the 2016 Term Loans.[1] The next day on which interest was due under the 2016 Term Loan was the end of August.

IV. **The August 11 Transfer**

---

[1] *See, e.g.*, DX-0783, DX-0657, DX-0655. These are each true and correct copies of emails that I received in the ordinary course of my business.

8. On August 11, 2020, at around 6:00 p.m. EDT, three CLOs managed by Greywolf – Greywolf CLO II, IV, and V – received transfers totaling their respective outstanding principal and interest under the 2016 Term Loan. The funds were accepted for deposit into each of these clients' accounts, which are all maintained by their fund administrator Virtus. The description in the payment confirmations stated the payments were made in connection with the 2016 Term Loan.[2]

9. The amounts that each client received were identical to the outstanding principal and accrued interest owed under the 2016 Term Loans as of August 11, 2020. The specific amounts owed to and received by the clients are as follows:[3]

| Lender Name | Amount of Principal Outstanding as of August 11, 2020 | Amount of Accrued Interest Outstanding as of August 11, 2020 | Total Amount of Principal and Interest Outstanding as of August 11, 2020 | Total Wire Payment by Citibank on August 11, 2020 |
|---|---|---|---|---|
| GREYWOLF CLO IV, LTD. (RE-ISSUE) | 4,812,500.00 | 42,042.53 | 4,854,542.53 | 4,854,542.53 |
| GREYWOLF CLO II, LTD. | 3,888,888.89 | 33,973.77 | 3,922,862.66 | 3,922,862.66 |
| GREYWOLF CLO V, LTD. | 7,218,750.00 | 63,063.80 | 7,281,813.80 | 7,281,813.80 |

10. The transfers were sent to the same accounts as all past payments by Citibank in connection with the 2016 Term Loan. The transfers were not accompanied by any notice of mistake nor other documentation indicating that the funds had been sent in error.

---

[2] *See, e.g.*, DX-0865.
[3] *See, e.g.*, DX-0783, DX-0657, DX-0655.

11.     Virtus maintains the official books and records for each CLO.  Virtus did not take any action upon receipt of the funds indicating that it had concluded that the payments had been made by mistake.  For instance, prior to Citibank's error notice on the afternoon of August 12, Virtus did not escalate anything regarding these payments to me or anyone at Greywolf's back office, as I would have expected if they perceived a problem with the payment.

12.     I learned of the August 11 payments on the 2016 Term Loans, and that Citibank circulated notices the following day (on August 12, 2020) claiming those payments had been made by mistake, on the morning of August 13, 2020.  That morning, at around 11:00 a.m. EDT, I received several emails from my colleague at Greywolf, Steven Abrams, asking me whether Greywolf had been paid off on the 2016 Term Loans.  True and correct copies of these emails are included in exhibits DX-0630, DX-0628, DX-0629.  From one of the emails I received at around 11:14 a.m. EDT from Mr. Abrams, I understood that any monies received on account of the 2016 Term Loans should not be returned.  *See* DX-0630.  Because I was busy with work, I did not see those emails as I received them in my email inbox.

13.     Sometime approximately between 11:15 a.m. and 11:30 a.m. EDT, I received a phone call from Mr. Abrams advising me of Revlon's paydown on the 2016 Term Loans.  I promptly called Virtus to inquire about any payments pursuant to the 2016 Term Loans.  I do not recall who I talked to at Virtus, but I understood from the phone call that Virtus would look into it and provide details to me.

14.     At around 11:30 a.m. EDT, I also sent an email to Blesson Varghese at Virtus instructing him not to make any cash movements on the 2016 Term Loans without checking with Greywolf first.  A true and correct copy of this email is included in DX-0783.  I gave this instruction based on the earlier guidance I received from Mr. Abrams.

15. At around 11:35 a.m. EDT on August 13, 2020, I received an email from Blesson Varghese at Virtus. A true and correct copy of this email is included in DX-0655. I understood from the email that Greywolf CLO IV and Greywolf CLO V had received a paydown. *See id.* At that time, I understood from the email that Mr. Varghese did not believe Greywolf CLO II had received a paydown. *See id.* I also understood from the email that Virtus had already sent money back to Citibank for Greywolf CLO IV, after it had received the recall notice from Citibank. *See id.*

16. I responded to Virtus at around 11:50 a.m. EDT, reiterating Greywolf's instruction not to send back funds for Greywolf CLO V and to ask Virtus to seek a recall of funds from Citibank for Greywolf CLO IV. *See id.* I also asked Mr. Varghese to double check on the funds for Greywolf CLO II to see if a paydown had been received. *See id.*

17. At around 11:54 am on August 13, 2020, I received an email from Mr. Varghese. *See* DX-0783. I understood from that email that Greywolf CLO IV had received funds from Citibank and that Virtus was trying to get money back that it had already returned to Citibank from Greywolf CLO IV. *See id.* Citibank never sent those funds back to Greywolf CLO IV.

V. **Prior to Citibank's Recall Notice, I Would Not Have Had a Reason to Believe the Payments Were Mistaken**

18. Prior to receiving Citibank's "error notices," I would not have had a reason to believe that the payments had been made by mistake. As detailed above, the payments were received, and accepted for deposit into our clients' accounts, late in the day on August 11, 2020. The payments were made without any accompanying "error notice," and without any other indication of a mistake.

19. Additionally, it would not have even occurred to me that the August 11 payments were made by mistake if I had not been advised that Citibank, the day after that transfer, sent

5

notices claiming that such a mistake had occurred.  There are several reasons for this.  First, each client that received a payment on August 11, 2020, received the exact amount that was owed to that client—precisely the amount of outstanding principal and accrued interest as of that date. To me, that would have made it seem obvious that Revlon was paying down the loans.

20.     It would have been inconceivable to believe that Citibank would have accidentally paid our clients, or the larger universe of 2016 Term Loan holders, exactly the amounts they were owed in principal and interest on outstanding loans.  In my entire career, I have never before seen an accidental complete prepayment of a syndicated loan.

21.     Interest was not scheduled to be paid on the 2016 Term Loans until the end of August.  There was no interest payment scheduled on August 11, 2020.  In my experience, it is common for loans to be prepaid prior to maturity and with all accrued interest.  Receiving principal and interest on a day that is not a scheduled interest payment date suggests a prepayment and would not cause me to think that the payment was in error.  Never in my career do I recall seeing a principal and interest payment (down to the penny) made in error.

22.     Additionally, Citibank is one of the largest and most sophisticated financial institutions in the world.  I have long presumed that Citibank has multiple levels of internal controls and safeguards in place to prevent mistaken payments.  Absent Citibank's error notices, which I understand were sent the day after the August 11 payments, it would have seemed extremely unlikely to me that, despite those controls, Citibank had accidentally transferred tens of millions of dollars to multiple lenders in the exact amounts they were owed.

\*     \*     \*

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: November 12, 2020
       Harrison, New York

_____
Michael Josephson