UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

*In re:*

*Citibank August 11, 2020 Wire Transfers*

Case No. 1:20-cv-06539 (JMF)

**DECLARATION OF ERIC LEE**

**DECLARATION OF ERIC LEE**

I, Eric Lee, being duly sworn, state the following under penalty of perjury:

1. I am a resident of the State of California, over the age of 18, and competent to make this statement.

I. **Introduction**

2. I am a Vice President of Operations at Symphony Asset Management, LLC ("Symphony"). I have been with Symphony since July of 2011. I submit this declaration as my testimony in support of Symphony's defense to claims asserted by Citibank, N.A. ("Citibank") in this action.

3. I am familiar with and have first-hand knowledge of the facts set forth in this declaration. I am aware of our clients' holdings in Revlon's $1.8 billion term loan facility issued in 2016, and, though I was on vacation at the time, I had a limited number of communications on August 12, 2020 with colleagues regarding the wire transfers by Citibank paying down the Revlon Term Loan the night before (the "August 11 transfer").

4. At the time of the August 11 transfer, my title was Loan Operations Manager. In that role, I managed day-to-day loan operations, which includes settling trades, loan reporting, and processing loan data. I managed, and still manage, a team of three operations employees, including John Vaughan. My position and function places me within Symphony's back office.

1

II.     **The August 11 Transfer**

5.      I learned of the August 11 transfer the morning of August 12, 2020.  That day, I was on vacation and was not working, beyond checking in occasionally with certain colleagues.

6.      At around 9:51 AM PDT, I received a Slack message from Mr. Vaughan stating that there had been "drama" that day in connection with Revlon.  Mr. Vaughan advised me that the 2016 Term Loans had received a "[f]ull paydown," and that Mr. Caraher, who co-heads investments for Symphony, was calling Mr. Vaughan "a ton."[1]

7.      My immediate reaction was that Mr. Caraher was likely calling Mr. Vaughan because he was upset with the operations team, possibly because they had missed the paydown.  In order to find out if that was the case, I asked, "just missed the paydown?"  I also asked "optional?"—meaning that the transfer had been an unscheduled pre-payment on the Term Loans —because, if the payment had been unscheduled (*i.e.*, optional), it would have explained why the operations team would not have recorded it immediately upon receipt.  I concluded by writing "any error?," which I asked, again, based on my concern—from Mr. Vaughan's mention that Mr. Caraher had been calling a "ton"—that the operations team may be receiving blame for failing to record the paydown immediately upon receipt.

8.      To be clear, I did not, at any time during my exchange with Mr. Vaughan or during the morning of August 12, think that Citibank had made an "error" by sending the money.  It did not even occur to me that Citibank could have sent the funds by mistake.  Rather, the only potential "error" that I perceived, as described above, was that my operations team may have failed to book the paydown immediately upon receipt, thus causing Mr. Caraher to become frustrated and to call Mr. Vaughan "a ton."

---

[1] A true and correct copy of this message is DX-1004 (SYMPHONY_CITI_00007174).

2

9. A few hours after my Slack exchange with Mr. Vaughan, I learned for the first time, on a phone call with Mr. Caraher and Mr. Vaughan, that Citibank was claiming that the paydown was made by mistake and requesting the funds be returned. Prior to that call, it had not even occurred to me that the payments could have been anything other than an intentional paydown of the 2016 Term Loans.

10. Shortly thereafter, Mr. Caraher instructed me and Mr. Vaughan to make sure none of the client funds' custodians, trustees, or fund administrators were planning to transfer the money back to Citibank. I drafted a statement for Mr. Vaughan to send to the custodians, trustees, and fund administrators, and sent it to Mr. Vaughan via Slack at 12:47 pm PDT.[2]

11. I also instructed Mr. Vaughan not to book the paydown and instead "keep it in suspense."[3] I gave this direction because I knew that Citibank was claiming it was entitled to the return of the funds and that there might be a dispute. It seemed prudent to me that the paydown be held in suspense so that the money would remain segregated and available until the issue was sorted out, and, indeed, the funds now remain in suspense pursuant to a Temporary Restraining Order issued in this case.

\*   \*   \*

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: November 12, 2020
San Francisco, California

---

[2] *Id.* at SYMPHONY_CITI_00007192.
[3] *Id.*


_____
Eric Lee