UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In re:*<br><br>*Citibank August 11, 2020 Wire Transfers* | Case No. 1:20-cv-06539 (JMF)<br><br>**DECLARATION OF JOHN VAUGHAN** |

### DECLARATION OF JOHN VAUGHAN

I, John Vaughan, being duly sworn, state the following under penalty of perjury:

1. I am a resident of the State of California, over the age of 18, and competent to make this statement.

I. **Introduction**

2. I am a senior loan operations associate at Symphony Asset Management, LLC ("Symphony"). I have worked at Symphony for six years. I have worked in loan operations that entire time. I submit this declaration as my testimony in support of Symphony's defense of claims asserted by Citibank, N.A. ("Citibank") in this action.

3. In my role as senior loan operations associate, I am familiar with and have first-hand knowledge of the facts in this declaration. I have knowledge regarding Symphony's internal structure and operations. I am also aware of our clients' holdings in Revlon's $1.8 billion term loan facility issued in 2016, and am familiar with the events surrounding our clients' receipt of payments from Citibank in connection with the Revlon loans on August 11, 2020.

4. When Citibank sent the funds on the evening of August 11, 2020, there was no indication that those payments had been made by mistake. And after I confirmed those payments with our clients' custodians the following morning, it was my belief that they were an intentional paydown of our clients' 2016 Term Loans. It did not even occur to me, until I saw "error notices" sent by Citibank later on August 12, that the payments could have possibly been made

1

by mistake. I have never seen or even heard of an instance in which a bank mistakenly paid the full and exact amounts owed on an outstanding loan, including both principal and interest.

II.     **Background**

5.      Symphony is a fund manager for certain collateralized loan obligations ("CLOs"), private funds, mutual funds, and separately managed accounts ("SMAs"). The client funds are:

- Ten CLOs managed by Symphony invested in the 2016 Term Loans: California Street CLO IX Limited Partnership, California Street CLO XII Ltd. (F/K/A) Symphony CLO XII Ltd., Symphony CLO XIV Ltd., Symphony CLO XV Ltd., Symphony CLO XVI Ltd. (F/K/A) Symphony XVI Funding LLC, Symphony CLO XVII Ltd., TCI-Symphony CLO 2016-1 Ltd., Symphony CLO XVIII Ltd., TCI-Symphony CLO 2017-1 Ltd, and SCOF-2 Ltd.,

- Ten mutual funds managed by Symphony invested in the 2016 Term Loans: Nuveen Senior Income Fund, Nuveen Diversified Dividend and Income Fund, Nuveen Floating Rate Income Fund, Nuveen Floating Rate Income Opportunity Fund, Nuveen Credit Strategies Income Fund, Nuveen Symphony High Yield Income Fund (F/K/A/) Nuveen Symphony Credit Opportunities Fund, Nuveen Symphony Floating Rate Income Fund, Nuveen Short Duration Credit Opportunities Fund, Principal Funds Inc. Diversified Real Asset Fund, Goldman Sachs Trust II – Goldman Sachs Multi-Manager Non-Core Fixed Income Fund

- Six SMAs managed by Symphony invested in the 2016 Term Loans: Municipal Employees' Annuity & Benefit Fund of Chicago, Symphony Floating Rate Senior Loan Fund, Principal Diversified Real Asset CIT (F/K/A) Diversified Real Asset CIT, Menard Inc., Pensiondanmark Pensionsforsikringsaktieselskab, BayCity

  Alternative Investment Funds SICAV-SIF – BayCity US Senior Loan Fund (F/K/A/) Symphony Alternative Investment Funds SICAV-SIF – Symphony US Senior Loan Fund

- Four private funds managed by Symphony invested in the 2016 Term Loans: BayCity High Yield Income Fund LP (F/K/A) Bay City Credit Opportunities Fund LP, BayCity Long-Short Credit Master Fund Ltd. (F/K/A/) Symphony Long-Short Credit Master Fund Ltd., BayCity Senior Loan Master Fund Ltd. (F/K/A) Symphony Senior Loan Master Fund Ltd., Nomura Multi-Managers Fund Global Bond.

6. Symphony's front office is responsible for making investment determinations on behalf of our clients. Our back office, which is where I work, is responsible for the day-to-day support of trade activity. It also serves as the main point of contact between Symphony and prime brokers, custodians, and other service providers.

III. **The Revlon 2016 Term Loans**

7. In 2016, Revlon issued approximately $1.8 billion of debt pursuant to a credit agreement (the "2016 Credit Agreement"). At the outset, and for several years thereafter, Citibank served as the lenders' administrative agent under the 2016 Credit Agreement.

8. As of August 11, 2020, the thirty Symphony clients listed above held 2016 Term Loans issued by Revlon under the 2016 Credit Agreement. Those clients were lenders to Revlon at that time. Out of the entire facility, Symphony's clients held approximately $109,673,303.59 of the 2016 Term Loans.

IV. **The Payoff of the 2016 Term Loans**

3

9. At around 2:30 P.M. PDT on August 11, 2020, each of Symphony's clients that held 2016 Term Loans received, by wire transfer, a payment of the outstanding principal and accrued interest they were owed. The funds were accepted for deposit into each of the clients' accounts, which are maintained at various banks, including CIBC Mellon, U.S. Bank, State Street, Mitsubishi UFJ, Deutsche Bank, and Bank of New York Mellon. The payment confirmation accompanying each transfer stated that the payments were made on account of the Revlon 2016 Term Loans. True and correct copies of statements confirming the wire transfers are at DX-0798, DX-0800-02, DX-0825-48.

10. The amounts that Symphony's clients received were identical to the outstanding principal and accrued interest owed to them under the 2016 Term Loan as of August 11, 2020.

11. The specific amounts owed to and received by the clients are as laid out in the attached Appendix A.

12. The transfers were sent by wire to the 2016 Term Lenders' bank accounts. The transfers were not accompanied by any notice of mistake or other documentation indicating that the funds had been sent in error. Each of the wire transfers were deposited into each lender's account on the afternoon of August 11 (Pacific Time).

13. I first learned about the August 11 payment on the morning of August 12, 2020. I live and work in San Francisco. At a little after 8:00 A.M. PDT, I spoke by phone with Scott Caraher, who works at Symphony in the front office. Scott asked me to check with all the custodians handling the accounts of the 2016 Term Lenders to confirm whether our clients had received full principal and interest on the 2016 Term Loans.

14. Based on Mr. Caraher's direction, I began reaching out to the custodians, by email and by phone, asking them to confirm whether they had received a full paydown. Starting at

4

approximately 8:30 A.M. PDT, I emailed or phoned representatives from each of the custodians or trustees overseeing the accounts for Symphony's clients who were invested in the 2016 Term Loans, and received confirmation from them that all of those Term Loans had been paid in full. The following exhibits are true and correct copies of my written communications with the custodians: DX-0640, DX-0577, DX-0501, DX-0533, DX-0562, DX-0549, DX-0551, DX-0503, DX-0552, DX-0562 at SYMPHONY_CITI_00000232-242.

15. I also received confirmation from several custodians, on the morning of August 12, that they had applied the funds on their own initiative as a paydown in the records they maintain for the client funds. True and correct copies of such confirmations are, for Bank of New York Mellon, DX-0503 and DX-0562 at SYMPHONY_CITI_00000235; for Mitsubishi UFJ, DX-0721; and for Deutsche Bank, DX-0562 at SYMPHONY_CITI_00000232.

16. In another instance, at 8:45 A.M. PDT, I reached out to the team at U.S. Bank, one of the custodians for our client funds, and asked them to confirm that our clients had received full paydowns on their 2016 Term Loans. A true and correct copy of that e-mail is DX-0640. Dominique Kemp, a U.S. Bank employee, responded with confirmation that the money had been received and asking for a notice. I replied that "there are no paydown notices" and explained that "[t]he payment matches our position." *Id*. I then asked U.S. Bank to "apply the full paydown," as a number of other custodians had already done. *Id*. I would not have asked the custodian to apply the paydown if I had not been confident that the payment was in fact a full paydown.

17. Symphony also maintains an internal recordkeeping system for our clients and their investments. We use software called Wall Street Office ("WSO"). In a Slack message that I sent the morning of August 12, I informed Samantha Nguyen, who also works in Symphony's

back office, that there was a full paydown on Revlon. Thereafter she applied the paydown in our WSO system. A true and correct copy of this Slack message is DX-1003. I would not have told her that there was a full paydown if it had not been my understanding that the loans had been paid down. True and correct copies of screenshots from Symphony's WSO system, showing the date and time of Samantha's entries, made at my direction, are Exhibits DX-0964-1001.

18. Prior to receiving Citibank's message stating that the principal payment included with the August 11 transfer had occurred by mistake, I did not believe the payments were erroneous. All the circumstances surrounding the payment suggested that Revlon had intentionally paid down the loans. First, our clients had all received the exact amount of principal and interest they were owed. Second, the transaction confirmations stated that the payments were on behalf of the Revlon 2016 Term Loan. Third, our clients received interim interest and the payment was made in the middle of an interest period. In my experience, interim interest is generally paid when there is a prepayment of the loan or an update or amendment to the contract. Given that this payment included the exact amount of outstanding principal along with the interest amount, it seemed obvious that, of those possibilities, this was a full prepayment of the loan. Lastly, I have never seen an accidental payment of the exact amount outstanding on a loan across positions, and had no reason to think that had happened here.

19. My supervisor, Eric Lee, was on vacation on August 12, so I reached out to him via Slack to inform him of the paydown around 9:51 A.M. PDT that morning. I told him that our clients had received a full paydown on the Revlon Term Loans, and that Mr. Caraher was calling me "a ton." A true and correct copy of our Slack exchange is DX-1002 at SYMPHONY_CITI_00007262. Mr. Lee wrote back to me, "Just missed the paydown? Optional?" and "Any error?" *Id*. I understood him to be asking whether the paydown had been

an optional prepayment and whether our operations team may have made an "error[,]," perhaps by missing receipt of the paydown. I explained to him that the paydown was just unexpected, considering that the Revlon Term Loans were trading at a steep discount. *Id.* at '263. I did not take Mr. Lee to be suggesting that Citibank may have made an error in sending our clients the exact amounts of outstanding principal and interest on their Term Loans. Mr. Lee then instructed me to ensure that the payment was booked so that the Net Asset Value of the relevant clients would be correctly reflected in our system. *Id.*

V.  **Citibank's Error Notices**

20. At or around 11:23 A.M. PDT on August 12, Citibank sent notices to our Client Funds stating that Citibank had "erroneously" sent the "principal amounts" in the August 11, 2020 transfers. *See, e.g.*, DX-0562 at SYMPHONY_CITI_00000318. In subsequent error notices that Citi sent the same day, it started to remove the reference to "principal amounts." *See e.g.*, PX-0889. The notices gave no explanation of how or why such a payment could have been made in error, or why the notices were being sent almost a day after the payments were completed.

21. It seemed hard to believe that an institution like Citibank could accidentally pay out loans in the exact amounts owed to the lenders, and, as discussed above, it certainly seemed to me, when I confirmed the August 11 transfer with our clients' custodians, that the Revlon Term Loans were being paid down. It was clear when I later learned of the error notices, however, that Citibank was claiming it was entitled to the return of the funds and that there would be a dispute.

22. That afternoon, I spoke with Mr. Lee and Mr. Caraher about how to proceed. Mr. Caraher instructed Mr. Lee and me to direct the various trustees, custodians, and collateral

administrators for the relevant clients not to return the funds. Mr. Lee sent me language via Slack that I then sent to the trustees, custodians, and collateral administrators instructing them to hold the funds in suspense accounts belonging to each client so that the money would be frozen until the issue was sorted out. DX-1002 at SYMPHONY_CITI_00007264. The funds now remain in suspense pursuant to a Temporary Restraining Order issued in this case on August 19, 2020.

23. For the same reason – because I understood there was a dispute over the funds – I directed Samantha Nguyen to reverse the entries in Symphony's WSO system, in which we had recorded full paydowns on the loans. *See* DX-1003.

## VI. **Prior to Citibank's Recall Notice, There Was No Reason to Believe the Payments Were Mistaken**

24. To be clear, I did not believe, and had no reason to believe, prior to receiving Citibank's error notices, that the payments were a mistake. As discussed above, the payments were received, and accepted for deposit into our clients' accounts, late in the day on August 11, 2020. The payments were made without any accompanying "error notice," and without any other indication of a mistake. And the payments were in the exact amount outstanding on our clients' 2016 Term Loans. For all of those reasons, it was clear to me, as soon as I received confirmation that our clients had received the funds, that they had been paid on purpose. Specifically, it appeared to me that the payments were prepayments on the Revlon 2016 Term Loans, similar to other prepayments we have seen for other customers in connection with other loans.

25. The absence of a principal payment notice gave me no reason to believe that the prepayment of the 2016 Term Loans was in error. We often receive payments and paydowns before we receive notices. That is a common event; certainly far more common than receiving

8

erroneous payments in the exact amount owed on an outstanding loan, which is something I have never seen before.

26. I consider the Revlon 2016 Term Loan to be paid off for all Symphony clients and indeed generally view loans as paid off upon receipt of the outstanding amounts owed.

\*   \*   \*

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

*[Rest of page intentionally left blank.  Signature on next page.]*

Dated:  November 12, 2020
       San Francisco, CA

_____
John Vaughan

## Appendix A

| Lender Name | Amount of Principal Outstanding as of August 11, 2020 ($) | Amount of Accrued Interest Outstanding as of August 11, 2020 ($) | Total Amount of Principal and Interest Outstanding as of August 11, 2020 ($) | Total Wire Payment by Citibank on August 11, 2020 ($) |
|---|---|---|---|---|
| Nuveen Senior Income Fund | 2,513,845.03 | 21,961.23 | 2,535,806.26 | 2,535,806.26 |
| Nuveen Diversified Dividend and Income Fund | 746,003.58 | 6,517.17 | 752,520.75 | 752,520.75 |
| Nuveen Floating Rate Income Fund | 5,027,689.97 | 43,922.46 | 5,071,612.43 | 5,071,612.43 |
| Nuveen Floating Rate Income Opportunity Fund | 3,633,536.78 | 31,742.98 | 3,665,279.76 | 3,665,279.76 |
| Nuveen Credit Strategies Income Fund | 15,055,796.61 | 131,529.11 | 15,187,325.72 | 15,187,325.72 |
| Municipal Employees Annuity & Benefit Fund of Chicago | 1,008,331.09 | 8,808.89 | 1,017,139.98 | 1,017,139.98 |
| Nuveen Symphony High Yield Income Fund | 7,347,134.31 | 64,185.38 | 7,411,319.69 | 7,411,319.69 |
| Nuveen Symphony Floating Rate Income Fund | 3,979,650.76 | 34,766.67 | 4,014,417.43 | 4,014,417.43 |
| Nuveen Short Duration Credit Opportunities Fund | 2,140,156.78 | 18,696.65 | 2,158,853.43 | 2,158,853.43 |
| Symphony Floating Rate Senior Loan Fund | 1,488,267.74 | 13,001.67 | 1,501,269.41 | 1,501,269.41 |
| Principal Funds, Inc. - Diversified Real Asset Fund | 3,670,168.61 | 32,063.00 | 3,702,231.61 | 3,702,231.61 |
| California Street CLO IX Limited Partnership | 3,853,806.65 | 33,667.28 | 3,887,473.93 | 3,887,473.93 |
| Principal Diversified Real Asset CIT | 1,835,083.93 | 16,031.51 | 1,851,115.44 | 1,851,115.44 |
| California Street CLO XII, LTD. | 5,878,829.89 | 51,358.11 | 5,930,188.00 | 5,930,188.00 |
| Menard, Inc. | 3,247,347.84 | 28,369.19 | 3,275,717.03 | 3,275,717.03 |
| BayCity Senior Loan Fund, L.P. (FKA) Baycity Senior Loan Master Fund  LTD (FKA) Symphony Senior Loan Master Fund LTD | 2,484,983.45 | 21,709.09 | 2,506,692.54 | 2,506,692.54 |

# Appendix A

| Lender Name | Amount of Principal Outstanding as of August 11, 2020 ($) | Amount of Accrued Interest Outstanding as of August 11, 2020 ($) | Total Amount of Principal and Interest Outstanding as of August 11, 2020 ($) | Total Wire Payment by Citibank on August 11, 2020 ($) |
|---|---|---|---|---|
| Symphony CLO XIV, Ltd. | 6,524,108.31 | 56,995.34 | 6,581,103.65 | 6,581,103.65 |
| Nomura Multi Managers Fund - Global Bond | 567,439.23 | 4,957.21 | 572,396.44 | 572,396.44 |
| Symphony CLO XV, Ltd. | 5,466,748.06 | 47,758.12 | 5,514,506.18 | 5,514,506.18 |
| SCOF-2 LTD. | 3,159,429.45 | 27,601.13 | 3,187,030.58 | 3,187,030.58 |
| Goldman Sachs Trust II - Goldman Sachs Multi-Manager Non-Core Fixed Income Fund | 1,311,728.86 | 11,459.41 | 1,323,188.27 | 1,323,188.27 |
| BayCity High Yield Income Fund, L.P. | 645,307.22 | 5,637.48 | 650,944.70 | 650,944.70 |
| Symphony CLO XVI, LTD. | 3,512,280.70 | 30,683.67 | 3,542,964.37 | 3,542,964.37 |
| Pensiondanmark Pensionsforsikringsaktieselskab | 3,677,319.95 | 32,125.48 | 3,709,445.43 | 3,709,445.43 |
| BayCity Long-Short Credit Master Fund Ltd. | 4,743,725.56 | 2,240.09 | 4,745,965.65 | 4,745,965.65 |
| Symphony CLO XVII, LTD. | 3,984,608.15 | 34,809.98 | 4,019,418.13 | 4,019,418.13 |
| BayCity Alternative Investment Funds SICAV-SIF - BayCity US Senior Loan Fund | 1,890,123.97 | 16,512.33 | 1,906,636.30 | 1,906,636.30 |
| TCI-Symphony 2016-1 Ltd | 3,512,280.51 | 30,683.67 | 3,542,964.18 | 3,542,964.18 |
| Symphony CLO XVIII, LTD. | 3,385,678.20 | 29,577.66 | 3,415,255.86 | 3,415,255.86 |
| TCI-Symphony 2017-1 Ltd | 3,381,892.40 | 29,544.59 | 3,411,436.99 | 3,411,436.99 |