KC75citC                    conference

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

IN RE CITIBANK AUGUST 11, 2020
WIRE TRANSFERS,

                                    20 CV 6539 (JMF)

                                        via Zoom

------------------------------x

                                    New York, N.Y.
                                    December 7, 2020
                                    10:10 a.m.

Before:

                    HON. JESSE M. FURMAN,

                                        District Judge

                        APPEARANCES

LAW OFFICES OF JOHN F. BAUGHMAN
        Attorney for Plaintiff
BY:  JOHN F. BAUGHMAN

MAYER BROWN LLP (NY)
        Attorneys for Plaintiff
BY:  MATTHEW D. INGBER
        CHRISTOPHER J. HOUPT
        RICHARD A. SPEHR

QUINN EMANUEL URQUHART & SULLIVAN LLP
        Attorneys for Defendants
BY:  ROBERT LOIGMAN
        BENJAMIN FINESTONE
        ADAM ABENSOHN
        SOPHIA QASIR

KC75citC                              conference

1            (The Court and all parties present via Zoom)

2            THE COURT:  We are here for the final pretrial

3     conference in Citibank v. Brigade, et al., 20 CV 6539.

4            I am sorry about the slight delay.  I understand there

5     was some technical problems with the audio feed.  I think we

6     have come up with a workaround good for today, though my hope

7     is that we will figure out a better solution for purposes of

8     trial.  On that score, let me know -- my understanding is that

9     we do have the public access audio line up and running.  I am

10    assuming that both sides have plenty of folks who are calling

11    in and listening on that line.  So, I would appreciate it if

12    during the trial you just made sure to let me know if at any

13    point there was a problem with the public access and you were

14    not able to hear.  I would want to know that immediately so

15    that we take care of the problem.

16           I also want to note we have gotten a few queries from

17    members of the press, maybe even members of the public who are

18    interested in the video feed.  I had mentioned in my order last

19    week that the video feed would be made available to in-house

20    members of the press but we have received some questions from

21    others, and to accommodate those requests we will be making the

22    video feed available in the jury assembly room at 500 Pearl

23    Street in Daniel Patrick Moynihan Court House.  So, I want to

24    make that clear and I think I will issue an order so that it is

25    on the docket and folks know about it.

KC75citC                         conference

1          First of all, it is good to see you all and make your

2     acquaintance slightly closer to being in person.  It is good to

3     see everybody today.  With that, let's get started and I think

4     we should enter notices of appearance for purposes of today and

5     the trial begin with Citibank, please.

6          MR. INGBER:  Good morning, your Honor.  Matthew Ingber

7     from Mayer Brown for Citibank.  It is nice to see you as well.

8     I am joined by two of my colleagues today -- Christopher Houpt

9     and Richard Spehr -- both of whom will be on the trial team

10    from Mayer Brown, along with Jack Baughman.  I will let each of

11    them introduce them search warrant.

12          THE COURT:  Mr. Houpt?

13          MR. HOUPT:  Good morning, your Honor.  Christopher

14    Houpt of Mayer Brown for Citibank.

15          THE COURT:  Mr. Spehr?

16          MR. SPEHR:  Good morning, your Honor.  Richard Spehr,

17    Mayer Brown, Citi.

18          THE COURT:  All right.

19          MR. BAUGHMAN:  Good morning, your Honor.  Jack

20    Baughman, Law Office of John F. Baughman, also for Citibank.

21          THE COURT:  For defendants?

22          MR. FINESTONE:  Good morning, your Honor.  Ben

23    Finestone, Quinn Emanuel, with my partners Robert Loigman, Adam

24    Abensohn, and our associate Sophia Qasir.  I will let them

25    introduce themselves.  And, we are all here for defendants,

 1    your Honor.

 2              MR. LOIGMAN:  Good morning, your Honor.  Robert

 3    Loigman, also Quinn Emanuel, here on behalf of defendants.

 4              MR. ABENSOHN:  Good morning, your Honor.  Adam

 5    Abensohn for the defendants.

 6              MS. QASIR:  (inaudible)

 7              THE COURT:  Ms. Qasir, is there some way to make your

 8    audio louder or microphone closer or something?  Now I don't

 9    hear you at all.  Why don't you see if you can fix that at some

10    point today maybe later or a break at any point.

11              Nice to put faces to your names and, Ms. Qasir, nice

12    to have a little gender diversity in the crowd today.  With

13    that, let's talk about the various things on our plate for

14    purposes of trial.

15              First, let's get an update on the subject matter

16    jurisdiction issue.  I did get defendants' letter on Friday

17    indicating that the remaining two defendants that

18    investigations were still ongoing to confirm that there is

19    complete diversity as to those entities.

20              So, Mr. Finestone, are you taking charge of that and

21    do you want to let me know what is going on?

22              MR. FINESTONE:  Yes, your Honor.  Benjamin Finestone

23    for the defendants.

24              At the risk of repeating what was in the written

25    correspondence filed on the docket on Friday, we have confirmed

1    complete diversity for eight out of the 10 defendants.  The

2    analysis does continue for the remaining two defendants but we

3    made quite a bit of progress, we are down to a handful, your

4    Honor, of partners of partners, or members of members.  We have

5    encountered no jurisdictional spoilers, your Honor, and we are

6    cautiously optimistic that those hypothetical jurisdictional

7    spoilers don't exist.  So, we have complete diversity.  As of

8    now, the analysis will continue and we will keep the court

9    apprised in real-time and we hope that this will be put to bed

10   with finality by the start of trial.

11            THE COURT:  So, I guess there are two issues that that

12   raises.  One is what to do if it is not put to bed with respect

13   to either or both of those two entities; and two, whether the

14   docket should be updated in some manner to reflect the actual

15   citizenship of the defendant entities either by way of

16   amendments of the complaints or some sort of filing that

17   specifies the citizenship of each defendant.  Any thoughts on

18   those?  Do you want to discuss with opposing counsel and see if

19   you can come to agreement on the best way to proceed?  I guess,

20   to be clear, I think that the docket should reflect the actual

21   citizenship of the defendants, whether that's done by amendment

22   or not.  I am agnostic, unless the law requires the complaints

23   to be amended, in which case they should be and, as for the

24   first issue, needless to say, I don't think we should go to

25   trial if subject matter jurisdiction is in doubt with respect

1    to -- I don't think we should go to trial with respect to a

2    defendant if subject matter jurisdiction is in doubt with

3    respect to that defendant but I'm not sure where that leaves us

4    since everybody would, including myself, would like to ensure

5    that the trial proceeds this week, as planned.

6              Do you have thoughts about both of those?

7              MR. FINESTONE:  My first thought, your Honor, is to

8    consult with plaintiff's counsel to see -- it is ultimately, it

9    is in the first instance, at least, plaintiff's burden so we

10   will deliver the content, the data to plaintiffs and let's

11   discuss with plaintiff's counsel about what the appropriate

12   filing would be on the docket, your Honor.

13             THE COURT:  All right.

14             Mr. Ingber?

15             MR. INGBER:  Yes.  That's fine, your Honor.  We think

16   the representation from defendant's counsel is probably

17   sufficient but Mr. Finestone and I can have a conversation

18   about whether something more is required, whether it's

19   affidavits from the individual defendants or information

20   provided to us and coupled with an amended complaint which we

21   are happy to do, if that's necessary.

22             On the second question, I certainly agree, we have to

23   wait and see what the results of the defendants' diligence is

24   on this issue.  I have confidence, based on what Mr. Finestone

25   just said, that we will have an answer before trial.  If we

 1    don't, and of course this is your Honor's call to make, we are

 2    certainly open, if it is an open question still, we are open to

 3    moving forward with the two defendants subject to further

 4    diligence by Mr. Finestone and his team.  There is always --

 5    the Court always has the ability to drop an individual

 6    defendant that is not diverse, in this case if HPS or

 7    Bardin Hill turn out to be not completely diverse, that is, if

 8    there is a partner or a member of the LLC that is a citizen of

 9    South Dakota, that defendant can be dropped from the case

10    during the trial, could be dropped from the case after the

11    trial, if necessary.  And so, it really depends, I think, on

12    how far along the defendants are in their investigation.  If

13    they remain cautiously optimistic at the start of trial that

14    there is going to be complete diversity Citibank is comfortable

15    moving forward with the understanding that those defendants

16    could eventually be dropped if it doesn't bear out as the

17    defendants expect.  But, of course, we will do whatever your

18    Honor tells us to do on this score.

19          THE COURT:  I will say, I am not sure that that is

20    proper in the sense that a Court lacks power to do anything, if

21    there is no subject matter jurisdiction and has an obligation

22    to confirm subject matter jurisdiction.  So, I don't think one

23    should sort of begin in what could end up being an advisory

24    trial if one doesn't know.  Having said that, let's take this

25    in steps and let's hope that we don't come to the point where

1    we need to make that decision.

2           So, what I would propose is why don't you confer with

3    one another, number one, about how to update the record to make

4    clear what the states of citizenship of the defendants are and,

5    to be clear, I assume everybody understands that that is as of

6    the date of the filing of the complaints not as of today; and

7    number two, to update one another on the progress of the

8    investigation with respect to the remaining two defendants and

9    then to update me.  And why don't you submit, Mr. Finestone,

10   why don't defendants submit a letter to me -- or, actually,

11   even better, a joint letter from both of you, by noon tomorrow,

12   letting me know where things stand on that and with respect to

13   the remaining two defendants actually getting into the

14   particulars if there is further investigation to be done

15   telling me what exactly that is, how many entities we are

16   talking about and what it involved and, if we need to, we will

17   jump on a conference call tomorrow afternoon to figure out how

18   to proceed and if we put the issue to rest, even better.  So,

19   why don't we do that in the first instance.

20          Does that make sense, Mr. Finestone?

21          MR. FINESTONE:  Yes, your Honor.

22          THE COURT:  Mr. Ingber?

23          MR. INGBER:  Yes, your Honor.

24          THE COURT:  Great.

25          Second, just to put to rest the sort of Rule 19

1   joinder issue that I had raised last week, I can't say that my

2   concerns have fully been assuaged, allayed, that is to say I am

3   a little bit anxious that whatever outcome there is from this

4   trial that there may be collateral litigation thereafter but,

5   listen, to some extent that is a risk that is often present in

6   complex financial cases so it is what it is.  Given that

7   neither side, given that you are both content to proceed,

8   neither of you believes that the lenders themselves are

9   necessary parties, I am inclined to proceed.  I don't think,

10  based on my research of the law and review of the cases, that

11  you brought to my attention that I have an obligation to raise

12  it let alone that it is jurisdictional.  So, on that basis, I

13  am content to proceed notwithstanding some lingering

14  misgivings.  So we can at least put that to rest for present

15  purposes.

16          I don't otherwise -- I have read all of your pretrial

17  submissions, read most of the affidavits.  I haven't spotted

18  any other legal issues that really require discussion in

19  advance of trial.  There are obviously many legal issues that

20  require discussions and/or rulings at some point but I don't

21  think there are pretrial issues, per se, but I don't know if

22  anybody disagrees or thinks that there is anything else that

23  you would benefit from getting my views on, if not today, in

24  advance of trial.

25          Let me check with you, Mr. Ingber, first.

KC75citC                        conference

1          MR. INGBER:  Your Honor, there is no issues in the

2     briefing, legal issues or other issues that we would need early

3     resolution on.  Obviously there are trial logistics issues,

4     allocation of time to each party and the like that we expect

5     that we will get into with your Honor today.

6          THE COURT:  Yes.  And I plan to get into all of that.

7     I was thinking more substantive legal issues at the outset.

8          MR. INGBER:  There is one and I can raise it now, I

9     was going to raise it towards the end of the conference.  There

10    is one issue with respect to the TRO.  I believe it is docket

11    94, your order of September 30th, 2020, extends the TRO through

12    the new date of the trial and we would ask that your Honor

13    extend the TRO through -- at least through the end of the trial

14    but really through the date of the decision from the Court on

15    the matters before the Court.

16         THE COURT:  I was planing to raise that myself and I

17    would certainly agree that that would presumably be

18    appropriate.

19         Mr. Finestone?

20         MR. FINESTONE:  No objection, your Honor.

21         THE COURT:  So it is extended through the date of my

22    ruling which I hope to get to you at some point not long after

23    trial.

24         Now, Mr. Finestone, any legal issues on your end that

25    you can think of?  Again, we will go over logistics and the

KC75citC                              conference

1   particulars of trial today.

2           MR. FINESTONE:  No.  Just some logistics, your Honor.

3           THE COURT:  Let's get into the particulars on the

4   logistics.

5           First, I have reviewed your proposed joint pretrial

6   order.  I will and do plan to sign it so that it becomes an

7   order of the Court subject to any rulings I have made before

8   today and will make here today.

9           On the witness front, plaintiffs list seven witnesses

10  who will be testifying by declaration; five fact witnesses and

11  two experts.  Defendants list 15 fact witnesses testifying by

12  affidavit, two expert witnesses by affidavit, and four live

13  witnesses, two of whom are plaintiff's witnesses testifying by

14  affidavit.  So, one thing I want to discuss is how that will

15  work, that is to say the two overlapping witnesses, since my

16  practice and default is to have witnesses called only once

17  during trial.  Why don't we talk about that first and then I

18  have another question concerning the witnesses.

19          So, on that I think the two overlapping witnesses, if

20  I am not mistaken are Mr. Fratta, F-R-A-T-T-A, and Mr. Zeigon,

21  Z-E-I-G-O-N.  And, that reminds me, counsel, I would ask just

22  that you get the court reporters a list of the names that are

23  likely to come up during trial so that they don't need to

24  interrupt to get the spellings of those names and have a

25  comprehensive or as comprehensive a list, as possible.  That

1    would be great.  So, both witnesses who will be testifying and

2    just names that are likely to come up in testimony.  Now, if I

3    am not mistaken, those are the only two overlapping witnesses.

4    What would propose is that plaintiffs call them as part of

5    their case-in-chief and when they wish to do so and that

6    defendants then do a hybrid combined cross and direct, that is

7    to say I would permit defendants to go beyond the scope of

8    plaintiff's direct since it would be a hybrid of both cross and

9    defendants' own direct and then that would be the end of it and

10   we wouldn't need to call them twice let alone as part of the

11   defense case.

12            Mr. Ingber?

13            MR. INGBER:  No objection, your Honor.

14            THE COURT:  Mr. Finestone?

15            MR. FINESTONE:  No objection, your Honor.

16            THE COURT:  Great.

17            MR. INGBER:  Your Honor, if I may, just very quickly

18   on the witness front.  Your Honor mentioned that there were --

19   that Citibank was planning to call five fact witnesses and two

20   expert witnesses and that is correct.  I just wanted to clarify

21   that the two expert witnesses on our list are rebuttal

22   witnesses, our two experts prepared reports in response to the

23   expert report of Bram Smith.  Their declarations were in

24   response -- well, the anticipated testimony of Mr. Smith and

25   Mr. Vinella.  And so it was our expectation, subject to the

1    Court's approval, that we would call our five fact witnesses in

2    our case-in-chief and we would call our two experts in our

3    rebuttal case.

4            I just wanted to mention that to the Court to avoid

5    any surprise on that issue.

6            THE COURT:  All right.  Well, that was exactly the

7    issue I was about to turn to and to inquire what your thoughts

8    and plans were on that front.  I think that probably makes

9    sense.  I think that makes sense and I know that some of the

10   objections pertain to the nature of the defense expert's

11   testimony and whether it was a fair representation of it and I

12   think it would help clarify that.

13           Mr. Finestone, any views on that?

14           MR. LOIGMAN:  Your Honor, it is Robert Loigman.  If I

15   can address that issue?

16           THE COURT:  Sure.

17           MR. LOIGMAN:  So, to be honest, your Honor, we were

18   surprised when we saw the way that Citibank had submitted its

19   witness list to the Court.  We had discussed this issue with

20   Citibank in advance and it had been our understanding their

21   proposal was to do their entire case first, then we would do

22   our entire case.  And then, when we saw the list, we raised it

23   with them and they said, well, they had not intended to deceive

24   us about that.  In any event, I don't think the way Citibank is

25   proposing actually makes sense to sort of sandwich defendants'

1    case between their fact witnesses and their expert witnesses.

2    There are a few reasons for that.  First of all, as Mr. Ingber

3    represented, these are rebuttal witnesses.  In fact, they're

4    not rebuttal witnesses at all, they have put in their testimony

5    via declaration, the same way all of the other witnesses had.

6    The declarations themselves are not rebutting declarations

7    submitted -- excuse me -- by any of the other witnesses.  All

8    of the declarations were submitted to the Court at the same

9    time.  Secondly, and consistent with that point, each expert's

10   testimony stands on its own.  None of the declarations is

11   written from the perspective of being a rebuttal argument, each

12   one stands on its own and they don't make much reference to any

13   of the other expert declarations.  And third, even if it

14   mattered, the concept that Citibank's witnesses were actually

15   rebuttal witnesses, I think, turns out to be factually

16   incorrect.  It does come in to rebut Mr. Smith's testimony but

17   then the final expert reports were actually submitted by

18   Mr. Smith and then we brought in a new expert who had not even

19   appeared before that because Citibank had surfaced two experts.

20   So, the last reports that were filed in the case were actually

21   filed by Mr. Smith and our other expert Mr. Vinella.  So,

22   Citibank's experts were not rebuttal, they didn't come at the

23   very end, and with respect to their testimony which is being

24   given by declaration like everybody else's testimony, it all

25   went in at the same time.  And I think if Citibank's proposed

1   order were actually followed then the way it would work is that

2   Citibank would present its fact witnesses, we would present our

3   fact witnesses, then they would present their experts, then we

4   would present our reply to their experts.  I don't think that

5   makes sense, sort of Ping-Ponging back and forth.  What I would

6   propose to the Court, your Honor, is that we do it the way the

7   parties had originally discussed doing it which is Citibank

8   puts in its full case and then the defendants put in their full

9   case.

10           THE COURT:  So, let me say a couple things.

11           First of all, I'm not sure it really matters at the

12   end of the day.  To the extent that a motion is made at the end

13   of the plaintiff's case I'm going to reserve judgment on it and

14   issue a ruling post-trial regardless so really it is a question

15   of what makes the most sense just for me to understand the

16   relevant evidence and who is responding to whom.

17           Second, I understood Mr. Ingber's proposal to be that

18   they present their five fact witnesses, then defendants put on

19   their fact witnesses and expert witnesses and a rebuttal case

20   that Citibank puts on its two experts and the only reason I

21   thought that might make sense is because, for instance, some of

22   the objections that you have raised in connection with their

23   declarations is that it is not proper rebuttal testimony

24   because it mischaracterizes the testimony of your experts and

25   one would imagine that I would have a better grasp on whether

KC75citC                        conference

1    that's a fair objection after hearing from your experts.  But,

2    at the end of the day, I am not sure it matters a whole lot so

3    in that sense, unless somebody can articulate how it would

4    prejudice them, I think it is more a question of what makes

5    sense in terms of me understanding what is going on.  But,

6    truth be told, given all the pretrial briefing I have already

7    read, I am pretty confident that I can understand it no matter

8    what order we do it in.

9          Now, I did have one question for both sides which is

10   why there are two experts on both sides.  It seems to me that

11   there is a substantial amount of repetition and it is arguably

12   cumulative.  It may be too late to address that and neither

13   side has raised that objection with respect to the other side,

14   but it did seem unnecessary to me, I will tell you that.

15         So, Mr. Loigman, with that, with those remarks in

16   mind, do you adhere to your view or have a view?  Again, I

17   think that Mr. Ingber was nodding before when I articulated

18   what I understood him to be proposing.  So, in that sense, I

19   think it was different from what you were responding to.

20         MR. LOIGMAN:  I think, your Honor, that we all share

21   the understanding of what Mr. Ingber was proposing.  I am sorry

22   if I suggested that he was posing different.  I think what I

23   was say was if he is saying that you put in a report in

24   rebuttal to somebody else's report then you should go at the

25   end, our experts put in the last reports.  They had the last

KC75citC                      conference

word.  It would make sense, if you were really going to follow

this mechanism, for them to go at the end and, as an example,

the way the experts actually rolled out in this case was, as

your Honor will recall, we put in the request to be able to

have expert testimony if in the event it was needed for

constructive knowledge, otherwise it wouldn't be needed.  And,

your Honor permitted limited testimony in that regard.  We put

in the one single report from Mr. Smith and Citibank opted not

to put in any report at all.  After we put in that report,

though, Citibank responded with two expert reports -- one from

Mr. Byrne, one from Mr. Sunshine -- essentially I think

intended to be a front office person and a back office person.

And faced with two expert reports, we then ended up having to

go out, retain another expert, and rebut those two reports with

another reply from Mr. Smith, and then bringing in a reply

property from a new expert Mr. Vinella.  That is how the

experts got to where we are with two on each side.  So,

Mr. Vinella, who is one of our experts, actually was the very

last expert even to appear and was the last one to file a

reply, although did that at the same time Mr. Smith filed a

reply.

          I think really the point I was trying to make is that

to, under these circumstances, to suggest that their experts

are rebuttal experts is a bit of a misnomer and it is

particularly a misnomer here because everybody put in written

KC75citC                          conference

1    declarations at the same time.  Nobody was looking at anybody

2    else's declaration.  The reports were sort of superseded at

3    that point and then you move to the declarations.  And any

4    objections we had in the reports I think the principal

5    objection may have been that if their declarations went beyond

6    the reports of course the requirements are of experts to

7    disclose what they're going to be opining about in the report.

8         So, that's the reasoning.  I think under those

9    circumstances where everybody has already put forward their

10   testimony in declarations as part of the case-in-chief, the

11   case-in-chief should proceed that way instead of having them

12   hear our case-in-chief and then come back and have sort of a

13   rebuttal that sandwiches us between the two of them when

14   they're not really the rebuttal experts.

15        THE COURT:  And your answer to the cumulativeness

16   question I posed?

17        MR. LOIGMAN:  The cumulativeness, in terms of where

18   there are two experts on each side, I think --

19        THE COURT:  You answered the question, just as a

20   factual matter I understand how it sort of shook out, but it

21   does seem like there is a lot of repetition.

22        MR. LOIGMAN:  There may be some repetition because

23   there is some overlap always between back office and front

24   office.  I think as it worked out, your Honor, it makes sense

25   to have separate experts because they really do come from a

1    different perspective, the front office being the people in

2    charge of making investments management, and the back office

3    people are the people who manage these operations day-to-day

4    and deal with the more technical aspects which, again, to the

5    extent that constructive knowledge ends up being an issue,

6    those may come up.

7              THE COURT:  Mr. Ingber, back to you again.  I'm not

8    sure it matters.  Maybe the cleanest way to do it is to have

9    you present all seven witnesses and have them go and leave it

10   at that.

11             MR. INGBER:  Let me speak on that for a minute.

12             Your Honor, if it was our choice there would be zero

13   experts and not four.  We had requested, in connection with

14   just this issue over expert testimony, that there be no expert

15   discovery, that some of these issues largely fall into the

16   common sense bucket, but the defendants had pushed for expert

17   discovery.  And we saw their report and, obviously, we needed

18   to rebut their reports.  If they choose not to call Mr. Smith

19   in their case-in-chief -- and I suppose it is still possible

20   that that could happen -- in their case -- it is theoretically

21   possible that that could happen, that they have submitted the

22   declaration but have not introduced the declaration into

23   evidence, then we don't need to rebut Mr. Smith with an expert.

24   If they don't call Mr. Vinella they have two experts,

25   obviously, on their list.  My expectation is that we are not

1    going to be calling experts in our rebuttal case.

2           So, it is not a misnomer to call these witnesses

3    rebuttal witnesses.  If there are no defendant experts

4    testifying there is going to be nothing to respond to.  The

5    reason we put in rebuttal expert reports is because the

6    defendants opted to use expert testimony here, an issue on

7    which they have the burden of proof, so it made sense for them

8    to go first, for Citibank to review what they have put forward

9    to see what their expert said and, just as importantly, to see

10   what their expert didn't say or couldn't say based on his

11   qualifications, and then to respond.  And so that's how

12   Mr. Loigman is right about how that played out with respect to

13   the four experts but these are purely rebuttal experts.  If

14   there are no defendant experts there are not going to be

15   plaintiff experts responding to them.

16          It is true that, given the nature of this bench trial,

17   we submitted declarations of all of our witnesses but we were

18   anticipating what the testimony -- and I think it is clear from

19   the declarations, we were anticipating what the testimony of

20   the defendants' experts would be and then rebutting that

21   testimony and, as your Honor noted, the difficulty in doing

22   that played out in the objections that we have seen from the

23   defendants will have responses to all of those objections.

24   But, we think, logically, it makes sense for the defendants'

25   experts to testify through their direct testimony but for our

1   experts to also hear what they say in response to

2   cross-examination, and also on redirect.  I mean, their

3   testimony is not going to be limited just to their

4   declarations, their testimony will be their declarations, their

5   responses to questions on cross, and potentially redirect

6   testimony from both of those witnesses and we want our rebuttal

7   experts to be in a position where they can respond fully to all

8   of the testimony that is provided by the experts at trial.

9        So, we request that we have our five fact witnesses in

10   our case-in-chief, we have our two experts on rebuttal.  There

11   is logic to that, both because of how the expert reports have

12   been structured and because of the burden issues which I have

13   previously mentioned.

14        Thank you.

15        THE COURT:  Mr. Loigman, if you want a brief

16   opportunity to respond I will give you the final word and then

17   I will tell you how I will handle this but it should be brief.

18        MR. LOIGMAN:  Sure.  It will be brief, your Honor, and

19   I appreciate that.

20        The only two thoughts I would add is that, as I said

21   from the outset, the expert testimony is really only required

22   to the extent constructive knowledge is at issue.  If actual

23   knowledge were to be the test here, which of course we believe

24   it should be under *Banque Worms* and otherwise, we wouldn't need

25   any of these other experts.

KC75citC                         conference

 1          The second issue is if Mr. Ingber's point about

 2   rebuttal experts is the way to go, which for the reasons I

 3   explained I don't think so, then it would have to be

 4   Mr. Vinella at the end because he didn't even appear as an

 5   expert until after their experts were identified because he was

 6   rebutting their second new expert's testimony.

 7          MR. INGBER:  And your Honor that's not something we

 8   object to.  If that's how the defendants want to proceed, if

 9   they would prefer that Mr. Vinella testify in a surrebuttal

10   case, we have no objection.  They basically put Mr. Vinella and

11   Mr. Smith on their list and they, for reasons that they can

12   explain, but if that's really what they're seeking to do

13   because we are looking for our rebuttal -- our rebuttal experts

14   to testify on rebuttal, we have no objection to that.

15          THE COURT:  All right.  So, here is what we are going

16   to do.  Again, with the overriding comment that I am not sure

17   it will ultimately matter, I recognize obviously this evidence

18   is only relevant to the extent that constructive knowledge

19   remains a possibility and I am not prepared at this moment to

20   foreclose that, I will say that I am still inclined, as I was

21   at the beginning of this case, to think that that is the

22   appropriate standard but I haven't reached a determination of

23   that and I think it might be helpful, regardless, to hear this

24   evidence.

25          I am going to allow the plaintiff to present its case

1    as it would if this were in open court.  I do the advance

2    declarations not to alter the way a trial proceeds but just

3    simply to make things more efficient and cut out the time that

4    it takes to deal with direct testimony.  It is not intended to

5    change the way the trial would unfold if it were in court.  In

6    that sense, I think there are two points that Mr. Ingber makes

7    that are well taken.  Number one, plaintiff is the master of

8    its case and in that sense should be allowed to put on its case

9    and leave it at that.  Number two, defendants bear the burden

10   of proof on their affirmative defense and in that sense, if

11   they chose not to put on their expert then there would be no

12   need for Citibank to present any expert testimony.  So, in

13   light of that, we will proceed -- I will allow plaintiffs to

14   defer their experts until after the defense case.  I don't feel

15   strongly as to whether Mr. Vinella testifies as part of the

16   defense case and then we only have rebuttal or if you want to

17   do it as a surrebuttal.  I don't feel strongly either way, as

18   long as you all are on the same page and know what the plan is.

19   So, why don't you confer with one another, decide how you guys

20   want to proceed in that regard but the bottom line is that

21   plaintiff's experts, if they're going to testify, can testify

22   as part of a rebuttal case.

23           I feel compelled to say that I think if a law

24   professor were coming up with an issue spotter for a final exam

25   they would probably choose four experts with the names of the

experts here, all of which are funny -- funny double

meanings -- but, there we have it.

          Let me talk about the mechanics of how it works with

respect to the direct testimony, briefly, so everybody is on

the same page and understands that process.  Basically, the

sponsoring party -- so, in the case of the five plaintiff fact

witnesses the plaintiff will call the witness to the stand.  I

presume you will make arrangements in accordance with the

protocol order to make sure that they have whatever materials

they need in their possession including their declaration.

Counsel will confirm or authenticate the affidavit or

declaration from the witness, confirm that it is accurate,

confirm whether any changes or updates need to be made, at

which point the counsel would offer the affidavit -- the

declaration -- as the witness' direct testimony along with any

exhibits that are being offered through that witness, that is,

for whom that witness is the sponsoring witness though we will

discuss exhibits in more detail in short order.  At that point

I will rule on the objections that have already been lodged.  I

will say on that score that to the extent that there is an

objection that goes to lack of foundation, I might give the

sponsoring party, sponsoring counsel an opportunity just to

cure that as he would in open court just by eliciting testimony

just to confirm that there is proper foundation for it.  But,

subject to a situation of that sort I will rule on the

1    objections and then you will proceed directly to

2    cross-examination.

3          So, that's the overview of how that process works.

4    Any questions on that, Mr. Ingber, starting with you?

5    Mr. Baughman has a question but I will start with Mr. Ingber.

6          MR. INGBER:  I think I should defer to my colleague

7    Jack Baughman on this if he has a question on that.  I don't,

8    your Honor.

9          THE COURT:  Mr. Baughman?

10         MR. BAUGHMAN:  My only question would be would you

11   rule on the objections to the exhibits at the same time?  If

12   witness Jones has Plaintiff's Exhibit 1 attached and there is

13   an objection, how do you plan to deal with that?

14         THE COURT:  When the exhibits are offered in

15   conjunction with the affidavit, to the extent that there is an

16   objection to the exhibit I would rule on that as well, though

17   again, we will talk more about exhibits and objections in short

18   order.

19         Any other questions, Mr. Baughman?

20         MR. BAUGHMAN:  No, your Honor.

21         THE COURT:  Mr. Finestone or Mr. Loigman, whoever is

22   handling this on your end?

23         MR. LOIGMAN:  No, I don't have any questions, your

24   Honor.

25         THE COURT:  It would be helpful for me to know the

1   order of witnesses.  I imagine that your adversary would want

2   to know that as well so I think if you can give me sort of two

3   days' of what the anticipated order of witnesses are,

4   logistics, if you end up flipping them a little bit, that's

5   fine, but I think it is just helpful for me to have a sense of

6   what is coming down the pike so I can review or re-review, as

7   the case may be, the declarations before that witness'

8   testimony.

9           Since we are already within the 48 hours of first

10  witnesses it might be helpful if plaintiffs are prepared to

11  tell me now what the order would be.

12          MR. BAUGHMAN:  Yes, your Honor.  The parties actually

13  have been very cooperative on this and we have actually already

14  exchanged our order for the full batting order.  Obviously it

15  might change a little bit based on your ruling just now on the

16  experts but the plaintiffs' anticipated order will be Vincent

17  Farrell, Vincent Fratta, Arokia Raj, Santhosh Ravi, and then

18  Brendan Zeigon.  The only asterisk on that is this Mr. Raj and

19  Mr. Ravi are both located in India which is nine and a half

20  hours ahead of us.  So, we would hope to be able to move

21  around, if necessary, so that neither of those gentlemen needs

22  to take the stand at 3:30 in the afternoon New York time.  We

23  are prepared to adjust, as necessary, but that is our plan.

24          THE COURT:  Although I would note from their

25  affidavits that they seem to keep American business hours

1    anyway.

2           MR. BAUGHMAN:  They do, and we are conscious of it.

3    It's the one just -- probably more information than you need --

4    in order to testify they're going to need to travel two hours

5    from where they live to a location where they can communicate.

6           THE COURT:  And I suppose there are folks on that end

7    other than they who would be needed to facilitate things so

8    that makes sense.  See what you can do.  One way to handle that

9    would be to put them first and get it over with but I will

10   leave that to you.

11          Great.  I don't think I need to know the defense

12   witness ordering at the moment but if you are prepared to tell

13   me you can, or you can also just put in a letter that provides

14   that order if you want.  Either way of handling Mr. Loigman or

15   Mr. Finestone?

16          MR. LOIGMAN:  Your Honor, I think we will give it some

17   additional thought in light of this morning's discussion but I

18   know we have already submitted to counsel for Citibank the

19   currently proposed order of our witnesses.  To be honest, I

20   can't recall if we have sent that to the Court as well.

21          THE COURT:  I don't think so.  Why don't you just

22   plan, maybe by the end of tomorrow, to update that list and

23   submit it to me and I will assume, unless I hear otherwise,

24   that the plaintiff's order is what Mr. Baughman just told me.

25          MR. LOIGMAN:  That's fine, your Honor.

KC75citC                              conference

         THE COURT:  Great.  Two final notes on witnesses.  The
list is final as far as I'm concerned.  That is to say, someone
who is not on the joint pretrial order list is not going to be
appearing as a witness absent some very, very, very good
explanation for why that would be appropriate.

         Number two, as you may have picked up, I am attuned to
public access and public interest issues and in that sense I
think it is only appropriate to make the direct testimony of
witnesses available publicly when they are going to be
testifying.  To that end, if you are comfortable doing it, you
can simply file all the declarations between now and trial.  If
you would prefer you can do it on the morning of the trial day
that you anticipate that a witness will be testifying so that
the direct testimony is on the docket and publicly available
for those who want to look at it and also understand what is
being cross-examined.

         Any questions about that, Mr. Baughman?

         MR. BAUGHMAN:  That's fine, your Honor.

         THE COURT:  Mr. Loigman?

         MR. LOIGMAN:  No questions, your Honor.

         THE COURT:  Great.  So, again, I will leave it to you
whether you want to just proceed to file them all now.  If
there is any qualms about that and you prefer to wait until
they're going to be testifying, you can wait and do it on the
day of their testimony.

KC75citC                            conference

 1          Turning to deposition designations.  There were at

 2    least some designations for witnesses who will be testifying

 3    live at trial.  I can't actually remember as I sit here who

 4    that was, maybe Mr. Fratta or Mr. Farrell.  Be that as it may,

 5    my very strong preference would be to rely just on live

 6    testimony and counsel can obviously use a deposition to impeach

 7    the testimony but I would think that you should be able to

 8    elicit whatever it is you want to rely on in the depositions

 9    through the live witness and avoid my needing to really read

10    through that witness' deposition since they'll be appearing at

11    trial.

12          So I am happy to hear from you if you have any qualms

13    about that.

14          MR. BAUGHMAN:  Your Honor, Jack Baughman for the

15    plaintiffs.

16          Ordinarily I would think that's completely appropriate

17    but it ties into the time for trial and the time split issue

18    and I might request that we circle back on the deposition

19    designation after we have that discussion.  As you have already

20    noted, the defendants have 15 fact witnesses that we have to

21    cross-examine.  That's going to be a real challenge to get that

22    done in the time available and we were hoping that we would be

23    able to rely on the designations that were submitted without

24    objection to them being submitted to fill in some of the

25    perhaps less controversial points that we might want to

1    establish.  But, they tie together, these trial management

2    issues.

3              THE COURT:  For defendants, anyone wish to be heard on

4    this?  I guess we can circle back to it, I suppose, after I

5    address the split issue.

6              MR. ABENSOHN:  Your Honor, Adam Abensohn for the

7    defendants.  Good morning.

8              It is perfectly fine to circle back to this.  I think

9    our inclination is the same that your Honor had.  I think that

10   we will be hearing from everyone, there will be a broad record

11   through trial.  With respect to the 15 witnesses, again, it may

12   make sense to circle back to it but I think what your Honor

13   will find is that they are really very much overlapping.  They

14   were all situated virtually identically, these are operations

15   and/or front office people who received a form notice which was

16   identical in its language and then received a form recall

17   notice which was identical in its language, and I seriously

18   doubt that Citibank will go deep dive with more than they do.

19   So, I am skeptical of sort of the notion that there is a time

20   constraint that we prevent them from moving in their case.  I

21   am happy to have a more elaborate discussion on this after we

22   talk about the split but we think your Honor's view is sensible

23   here:  Let's have a trial and see what the testimony looks

24   like.

25             And I will just say we had this opening discussion of

KC75citC                              conference

the Ping-Ponging back and forth between openings and rebuttal,

etc., and your Honor made a valid point, let's simulate a

trial.  So this would go to that, your Honor; the way to

simulate a trial is to have a trial and for your Honor to make

his rulings based upon that trial.

          THE COURT:  Well, let me say for now I will say that

if a witness is testifying live you should plan to elicit any

testimony that you would want to through the witness on the

stand rather than relying on deposition designations.  I'm not

averse to revisiting that depending on the outcome of the time

split discussion that we will have in a few minutes but at

least for the moment that's my tentative ruling.  With that

exception, the deposition designations are deemed to be part of

the record subject to any objections that are listed on the

charts attached to the joint pretrial order and, as to those, I

will rule on any objections if and only if it's relevant to my

decision.  I will say more broadly, if you plan to use

depositions during your examinations, that is to say if you

plan to impeach and I would guess that with respect to any

witness there is at least the possibility that you will impeach

that witness' testimony through a prior deposition if a

deposition was taken, I will obviously need copies of those

depositions beforehand.  I assume they may be in whatever cross

materials are being forwarded to the witness and to me and in

that case will be covered, but just make sure that I have them

1   electronically before the witness' testimony if you anticipate

2   using them.

3           Turning to exhibits, I have the list attached to your

4   joint pretrial order.  I think I got some updated exhibits that

5   were filed in the last couple days, if I am not mistaken.

6   There was a request -- the only exhibits, excuse me, as to

7   which there was a request for an advance ruling as far as I

8   could tell pertained to Plaintiff's Exhibits 1283 through 1286,

9   1571 and 1572, and they're also referenced in the defendant's

10  letter regarding cross-examination where counsel indicated that

11  you were trying to reach agreement on essentially avoiding the

12  need to to deal with these issues.  I think there are

13  authentication issues if I am not mistaken.  But, where did

14  that stand and what is the situation there?

15          MR. BAUGHMAN:  I don't want to interrupt because it is

16  their objection but I may be able to moot the discussion.

17          If I understand the issue, the exhibits they have

18  objected to are the 90211 certifications we got to authenticate

19  and get into evidence documents obtained from third-parties.  I

20  do not intend to offer into evidence the 90211 certification

21  itself.  It is the vehicle by which the produced documents come

22  in.  So, I believe the objection was just to the certification

23  as an exhibit.  I'm not planning to offer it so I don't think

24  your Honor needs to make an evidentiary ruling on it.

25          THE COURT:  All right.

1          MS. QASIR:  Your Honor, this is Sophia Qasir for

2     defendants and I will be speaking to the exhibits.

3          So, first of all, our objection is to the 90211

4     certifications as a vehicle for getting an additional document.

5     We think that to the extent they're attempting to certify

6     business records they are facially insufficient.  They contain

7     no more than a bare bone recitation for the requirements of a

8     certification without really explaining the deference basis for

9     personal knowledge.  Now, it is clear that some of the

10     third-party documents are probably a bit properly classified as

11     business records but it is also clear that some of them clearly

12     are not appropriate business records or were created in

13     furtherance of the employer's needs as is required for an

14     appropriate certification.  For example, there is one

15     declaration which we will had requested, eventually -- I'm not

16     sure it was requested on the joint exhibit list, but --

17     PX- 1282 in which the declarant testified that it was the

18     regular practice of a business activity to recreate or maintain

19     the produced documents.  But, when you go and look at the

20     documents that were produced by Virtus, at least one of them or

21     a handful of them are documents that were created at the

22     request of Citibank and its counsel on August 18 -- so after

23     the litigation had commenced -- and Virtus described the

24     request as strange and recognized that it was also urgent

25     "because it could have a negative impact on our CLO business

1    with Citi."  And that's from DX 118.  There are also a number

2    of U.S. Bank documents, just for example, that are also just

3    internal communications that are not advancing the business

4    function of U.S. Bank.

5           And so, we think that these not only are inappropriate

6    as business records, they also go against what the business

7    records exception was created for which is to ensure that

8    documents were not created in anticipation of litigation.  And

9    similarly, on our side, defendants have also proposed to mark

10   as exhibits documents that were received from third-parties and

11   incorporated into their books and records and plaintiffs have

12   similarly objected to those documents even though we think

13   they're similarly situated.

14          So, the parties have been negotiating to try to

15   resolve those objections but they haven't been successful and

16   to the extent that we are here now where we both have

17   objections, we don't think that certifications are appropriate

18   to get in those documents and we are just looking for a

19   practical way to move forward with those.

20          THE COURT:  So, I guess my immediate reaction is that

21   I don't think that the objections are really to the

22   certification so much as the admissibility of the documents

23   that are being offered pursuant to the certifications and

24   maybe, in that sense, the objections to the adequacy of the

25   certifications.  But, it doesn't sound like, Mr. Baughman, that

1    Citibank plans to offer the certifications themselves and I

2    think that that is the standard practice, that the

3    certifications are not actually entered into evidence

4    independently.  I guess I don't have a good enough sense about

5    which documents we are talking about, I'm not sure that those

6    are apparent from your exhibit lists.  It also sounds as if you

7    haven't fully exhausted your efforts to resolve this so I am

8    open to your suggestions on how to handle this, otherwise we

9    can take it on a document-by-document basis when a document is

10   offered.  But, it sounds like this may be something that would

11   benefit from some advanced discussion so everybody is on the

12   same page and no one is surprised at trial.

13          Mr. Baughman?

14          MR. BAUGHMAN:  That's fine, your Honor.  This is

15   really the first we are sort of hearing what the nature of the

16   specific objection is.  I think the rule has been satisfied.

17   90211 is pretty clear, it says you don't have an authentication

18   issue if you provide the certification that sets forth the

19   requirements of 8036 which is what we have done.  The purpose

20   of providing the certifications in advance is so that if there

21   is a problem, it can be cured.  So, I would need to know the

22   specifics as to why they think these documents are not

23   admissible.  We can go document by document, if necessary, but

24   I would -- I don't think there is any way for your Honor to

25   make a ruling on any sort of blanket basis now.

KC75citC                          conference

1          THE COURT:  So, what is your suggestion on how to

2      proceed?  That you talk to one another and try to get a better

3      read on which documents are at issue?

4          MR. BAUGHMAN:  That would be fine, your Honor.

5          THE COURT:  All right.

6          MR. BAUGHMAN:  As a general matter, there remain a

7      number of exhibits that are objected to on the exhibit list, we

8      have been trying to resolve them, we haven't succeeded entirely

9      yet but we should continue to do that.  What I would propose is

10     on the ones that we cannot reach agreement, we either present

11     them to your Honor at the beginning of a trial day so your

12     Honor can rule or take them in the ordinary course with the

13     witness as it comes up.

14          That's really your preference, your Honor.  Either

15     way.

16          THE COURT:  Ms. Qasir?

17          MS. QASIR:  I think it makes sense for the parties to

18     discuss it and we can take it on a document by document basis

19     as it comes up.

20          THE COURT:  Great.  So that's fine.  You certainly

21     should discuss it and I would say to the extent that there is

22     any sort of global issue, you should discuss it sooner rather

23     than later and try to resolve those.  To the extent that it is

24     a specific issue with respect to a specific document, I am

25     happy to take it up when that document is offered and give you

1   a ruling as I would in an ordinary trial.  I didn't see -- are

2   there other objections that would require advanced discussion

3   outside of -- I didn't see others that you requested in your

4   joint pretrial order but if there is anything else categorical

5   in nature, I am happy to discuss it.

6           Ms. Qasir?

7           MS. QASIR:  Not for defendants, no.

8           THE COURT:  Mr. Baughman?

9           MR. BAUGHMAN:  No, your Honor.

10          THE COURT:  So, why don't you discuss that particular

11  issue.  If you make progress or if you think that there is

12  anything I ought to know, you can include it in your letter by

13  noon tomorrow.  And, again, if there is need to jump on a call

14  tomorrow afternoon we can then do so, otherwise I am happy to

15  take it up at the time that exhibits are offered, if that's the

16  more appropriate way to handle it.

17          I had invited you -- I suppose this is a related

18  issue, I have invited you, in my order of November 10, to

19  submit a list of exhibits that the parties were prepared to

20  stipulate to as to admissibility, basically just as an

21  efficiency mechanism that if everybody is in agreement that

22  exhibits meet the requirements and the requirements would

23  presumably be met by the declarations, then if you want to

24  admit them *en masse* at the beginning of trial subject to

25  whatever objections are raised on the joint pretrial order, I

KC75citC                         conference

1    am okay with doing that just to make things proceed more

2    smoothly.  But, if you prefer to do it witness by witness, I am

3    also happy to do that.  If you want to proceed in that manner I

4    think it would make sense for you to file that list on ECF,

5    obviously with both sides' approval and signatures and I can

6    then so order it and basically deem those to be part of the

7    record at the outset of trial.  I leave that to you.  The

8    alternative, obviously, is to do it one by one at trial with

9    respect to each sponsoring witness with respect to whatever

10   exhibits a witness authenticates and lays a foundation for.

11            Any questions, thoughts on that, Mr. Baughman?

12            MR. BAUGHMAN:  No, your Honor.

13            THE COURT:  From defense counsel?

14            MS. QASIR:  No, your Honor.

15            THE COURT:  Great.  Otherwise, to the extent that you

16   don't offer them in that manner, you should renew your

17   objections when an exhibit is offered at trial so I can rule on

18   it at that time, although I may take some objections under

19   advisement and rule on them only if they're necessary to my

20   ruling post-trial.

21            I think I have electronic copies of all your

22   anticipated exhibits, I will confirm that with my law clerk

23   after this, but if you have any reason to think that I don't,

24   you should make sure to get them to me.  That's my preferred

25   format even for regular trial and it is obviously all the more

1    important for a virtual trial so, please, do that.

2           Let's talk about some trial practices and rule issues.

3    Given the affidavits and declarations of the witnesses and the

4    deposition designations, I agree that this case should be

5    triable in four or even fewer days and, as discussed, my plan

6    is, as I usually do, to put on the clock, that includes direct

7    examinations other than the affidavits which obviously don't

8    count against your time, any cross-examination of the other

9    side's witnesses, and any redirects.  I mentioned at some point

10   in an earlier conference that I may well, indeed I am likely to

11   hold something in the nature of summations maybe more like oral

12   argument than summations, but that would be at the end maybe

13   after a short break after the end of trial and if I do that,

14   and I am only likely to do that and it would only be helpful to

15   me, I would set separate time limits for that.  That is to say

16   that won't count against the time limits that I am giving you

17   now.

18          My usual default is to divide time 50/50 but I deviate

19   from that where I think it is appropriate and I am inclined to

20   do that here, not only because of the fact that defendants have

21   so many more fact witnesses testifying by affidavit but also

22   because, based on my review of the pretrial submissions, I

23   think the focus of this trial, in reality, is really on only

24   one of the two issues that we had sort of flagged at the

25   outset, that is to say it doesn't really seem at this point

 1    like it is genuinely in dispute that the size of the wires on

 2    August 11, that that was the result of a mistake on the part of

 3    Citibank as opposed to somehow being intentional, that is to

 4    say, putting aside the substantive issues with respect to the

 5    elements of the four claims, based on the fact that the lenders

 6    are not in the case, I think really the heart of the trial is

 7    on the discharge-for-value defense rather than on that.

 8            So, where does that leave us?  Plaintiffs proposed a

 9    70/30 split as to witnesses testifying by affidavit and a 50/50

10    split for witnesses testifying live but, number one, I'm not

11    quite sure how that would work.  I would sort of have to know

12    *ex-ante* what portion of the trial was going to be taken up by

13    each category of witness, and number two, only defendants are

14    calling live witnesses so I would be inclined to split the time

15    *ex-ante* as to the trial in its entirety rather than divying it

16    up in that manner.  And given that defendants are the only ones

17    calling live witnesses the only thing I would propose is

18    splitting time basically 60/40, giving plaintiffs 14 and a half

19    hours of trial time and defendants 11 and a half hours of trial

20    time which, in total, would come close to four full trial days

21    minus the anticipated lunch breaks and the like.

22            So, any objections, questions, thoughts on that?

23    Mr. Baughman.

24            MR. BAUGHMAN:  Yes; I am the evidence nerd and trial

25    procedure nerd on our team.

KC75citC                          conference

1          Look.  I had proposed the 70/30 split based on -- it

2     sort of turns out if you add it up either based on the number

3     of affidavits or I counted the pages, or you run a word count,

4     it sends up about 70/30 either way so it wasn't an arbitrary

5     number.  I thought it made sense to address the issue of the

6     live witnesses, there are only two, as I understand it,

7     Mr. Warren from Revlon, and then they are calling as an adverse

8     witness Mr. Tichauer from our side.  I anticipate that those

9     will be relatively short witnesses on both sides.

10          I want to address, though, the context.  The

11     plaintiffs have done a very good job of planting the seed for a

12     long time that the case is repetitive and that our examination

13     should be limited with respect to various defendants because it

14     is all the same stuff over and over again.  With all respect,

15     that's not true.  I mean, each of these defendants has a burden

16     of proof on a defense which they are making through their

17     affidavits and we need the ability to challenge their proofs,

18     the story is different for each one.  They may be similar but

19     that is only similar in that if you buy a bagel at, you know,

20     one deli, it is similar to a bagel at the other deli but it is

21     not the same thing and it is not the same way.

22          So, 60/40 is -- that's putting us under a bit of a

23     constraint.  If your Honor could see yourself to 65/35 it would

24     make a difference to us and Citibank's ability to respond to

25     the affirmative defense that is being put forward.

KC75citC                              conference

1          That's our application.

2          THE COURT:  By the way, I think my math was actually

3    off and 60/40 would be more like 15 and a half and 10 and a

4    half.  But, in any event --

5          MR. BAUGHMAN:  I am already ahead.

6          THE COURT:  Let me hear from defense counsel.

7          MR. ABENSOHN:  Your Honor, Adam Abensohn.  I happen to

8    know something about bagels so I think I am the right person to

9    handle this.

10          Look.  60/40 is not where we think this ought to come

11    out.  I don't want to waste a lot of the Court's time over 10

12    percent but I do at least want to address this.

13          To do this in sort of a head count sort of a way is,

14    in our view, sort of a false accounting here.  Your Honor

15    started by pointing out presumptively it is ordinarily 50/50.

16    We understand a presumption can be overcome but at the end of

17    the day we are talking about just more than a day for us to

18    defend a $500 million case on behalf of 10 clients.  That isn't

19    quite enough in a case as complex and as large as this one.

20    Your Honor points out that the issue for the defense that is

21    going to be in play is mostly our defense, the

22    discharge-for-value defense.  We have the burden there.  There

23    may well be the need for some extensive redirect or cross of

24    these witnesses.  Again, it is our burden, because this now

25    becomes a defense-driven case and we don't think we ought to be

1   limited to the minority of time in light of that.

2           I will also just address briefly Mr. Baughman's point

3   about lack of repetition or whether there is repetition.  You

4   know, I think that's fine for him to sort of frame out that

5   point conceptually but I do suspect, your Honor, and it may be

6   apparent on the papers and declarations already, that this

7   cross-examination is inevitably going to look very similar

8   across a large number of the witnesses they are

9   cross-examining.  That is not the same that we are dealing

10  with.  If your Honor remembers, our witnesses had no

11  pre-activity here, they simply had a payment land in the

12  accounts of their clients and they're essentially being asked

13  what did you think about that when it happened.  Our exams are,

14  unfortunately, deeper dive and somewhat more tedious.  We are

15  going to try to limit that to the fullest extent possible but

16  the people we are examining are the technicians, the people in

17  the boiler room, the people that were executing these

18  transactions going through the various levels of oversight and

19  monitoring and there are any number of relevant issues having

20  to do with the steps they did and didn't take, the language

21  they chose and the calculation statements they issued, the

22  language they chose in the recall statements they issued, the

23  extent to which things they were doing were consistent with the

24  terms of the credit agreement.  And, I will say that the credit

25  agreement is a dense document.  Again, I would like to be able

1    to fly through it during exam and cross exam but I frankly

2    don't expect that I will be able to.

3            So, again this strict head accounting doesn't work in

4    our view.  But, it doesn't work ultimately for a larger reason

5    which is not all witnesses are created equal.  I suspect each

6    side's fullest exams and cross-exams will be with the experts.

7    Both parties have two of those.  It would be truly shocking to

8    me if fact witness after fact witness was eating up nearly as

9    much of the clock as the crosses on the experts.  So, what we

10   really have is a situation where both sides have the meat of

11   their case addressed through the same number of expert

12   witnesses.  So, again, all of this, in our view, pushes us

13   towards 50/50.

14           And, look.  Your Honor already foreshadowed or

15   addressed this point of constructive notice.  We do feel

16   strongly constructive notice is not the operative standard

17   here.  We recognize your Honor is not prepared and won't rule

18   on it.  We understand that it is unlikely your Honor is going

19   to foreclose testimony and questioning addressed to it but we

20   don't think it ought to be the tail that wags the dog here.  I

21   suspect that a tremendous amount of Citibank's examination is

22   going to be focused on this constructive notice issue and we do

23   think there is a straight line under *Banque Worms*, all three of

24   the decisions both from the federal and New York Court of

25   Appeals each using language about the need to examine this at

KC75citC                        conference

1    the time without a burden to wonder, without inquiry.  We don't

2    view this as a live issue.  Again, I understand it is going to

3    be in play for purposes of the examination and because your

4    Honor can only rule at the end of the matter but it ought not

5    be the tail that wags the dog, it ought not justify, in our

6    view, a disproportionate split as between each side.

7            Again, your Honor, there are hills to die on and I

8    understand 60/40 versus 50/50 is not necessarily a hill to die

9    on, but we do think in the equities and thinking about this

10   trial as it is really genuinely likely to play out, this ought

11   to be 50/50.

12           That's our view, your Honor

13           THE COURT:  Let me say a few things in response.

14           First of all, I think it's not entirely fair to say

15   that you would be defending a $500 million case in only one

16   trial day.  First of all, 10 and a half hours is closer to two

17   trial days than one in reality; and number two, you have

18   submitted 17 affidavits in advance of trial so in that sense we

19   are talking about splitting the trial time of live trial time

20   and not taking that into consideration.

21           Number two, I think you are right in saying that the

22   heart of the cross-examinations are likely to be with the

23   experts and to put that in a different way, I think you are

24   exaggerating the degree to which you are going to examine the

25   fact witnesses.  The fact of the matter is unless you have

1    reason to doubt their testimony and you want to impeach the

2    credibility of it, I don't think there is a whole lot could be

3    elicited on that front.  There are three boxes that should have

4    been checked and information concerning the watch account were

5    supposed to be in them and three people involved in the six

6    eyes process operated on the mistaken understanding that it was

7    only one of them and that sort of explains it.  And, you know,

8    the notices that were sent to the lenders to your clients in

9    advance and the recall notices after the fact, those really

10   speak for themselves and I am not sure it is relevant what the

11   witnesses intended by whatever language they were using or not.

12   To the extent those speak to notice or lack thereof, again, it

13   doesn't really matter what their intentions were.  So, given

14   that, I am not really inclined to think that your crosses of

15   their witnesses are likely to be particularly extensive.

16          The last thing I want to say preliminarily is you and

17   one of your colleagues have both sort of reraised your argument

18   about actual notice versus constructive notice.  Suffice it to

19   say, it is duly noted.  I don't expect to hear it again in

20   advance of trial.  We are proceeding to trial.  As I have

21   indicated, I am not prepared to foreclose that argument on

22   Citibank's part at this time and will hear that evidence so I

23   am well aware that if I were to rule on it in advance and rule

24   on it in your favor that it would perhaps streamline the trial

25   by eliminating the need for that but I'm not doing it.  So, you

don't have to keep making the point.

          All of that leads me to say that I am going to stick

with where I started which is a 60/40 split which leads to,

based on 26 hours of trial time, a split of I am going to say

15 and a half and 10 and a half which is a shade lower than 60

and shade higher than 40.

          I will say two things in terms of not exaggerating the

importance of that.  I think it is helpful to give you a clock

so you use your time wisely and don't waste time unnecessarily.

Number one, I don't think I have had a single trial in nine

years on the bench where, in a civil case, where the parties

have actually used all of their time -- or maybe I have had

one.  So, in that sense, I am skeptical that you will

actually -- it will end up being a meaningful constraint in

that regard.  Number two, I am not averse to reconsidering if,

based on how things proceed in the first day or two of trial,

it seems clear that 60/40 should have been a 50/50 or 70/30, I

am not averse to reconsidering and would raise it at that time.

But *ex-ante*, based on what I have seen and heard, I think that

that is the appropriate way to divide it for now.  So, that is

my ruling on that front.

          You should familiarize yourselves with my individual

rules for trial which are available on my website if you

haven't already.  They are obviously geared for a real trial in

real court.  This is a real trial in virtual court and I

1   haven't updated my rules for the COVID era so some may not

2   apply or will only apply in spirit, not for the letter and we

3   will have to play it a little bit by ear but it will certainly

4   give you a sense of what my expectations are.  Some of the

5   rules are also more specific to jury trials.  This is not a

6   jury trial and in that sense some of them may or may not apply

7   but, nonetheless, you should review them.

8           Let's talk about the schedule for a moment.  We will

9   start at 9:00 a.m. each day.  My understanding is that the

10  virtual courtroom will open at 8:30 each day and would urge you

11  to check in early, make sure that your microphones are working,

12  that there are no tech issues so that we can start promptly at

13  9:00.

14          If there is discussion to be had before a witness'

15  testimony we can do that briefly at 9:00.  I do rely on you to

16  anticipate any legal issues that we can deal with outside the

17  presence of a witness and particularly things that would make

18  things proceed more efficiently.  So, to the extent that you

19  can discuss those with one another and then raise them with me

20  at the beginning or the end of the trial day, that would be

21  beneficial.  But, bottom line is we will start with the witness

22  as promptly as possible after or at 9:00.  We will end each

23  day, with the exception of Friday, at 5:00 p.m., and on those

24  days we will take a lunch break somewhere between 12:30 and

25  1:00 and somewhere between 45 minutes and an hour.  I would

KC75citC                        conference

anticipate taking a short mid-morning and mid-afternoon break

somewhere in the nature of 5 to 10 minutes to give everybody a

breather and let you stretch your legs and do whatever you need

to do.

Friday, I think I previously indicated that I

anticipated ending no later than 3:30.  Unfortunately, I may

have to end earlier than that, as early as noon.  I will know

certainly by the beginning of trial on Wednesday and will give

you a sense of what the timing is but I just wanted to give you

a heads up on that front.  I suppose it raises the possibility

that we might not finish on Monday as planned but we will take

it as it comes and do whatever we need to do but my hope is

that it won't spill over, regardless.

Whichever witness is testifying first on a given day

should also be on the Zoom in the virtual courtroom before 9:00

but presumably in a waiting room, I will leave that to you and

the Impact folks to sort out just to not be present for any

discussions before their testimony.  You should make sure --

you have large trial teams so I am sure you can do this -- when

a witness is wrapping up, the next witness should be on the

Zoom in a waiting room ready to go.  Bottom line is you better

have your next witness ready.  If you don't, I may and probably

will deem you to have rested and we will move to the next phase

of the case if your witness is not available.  Obviously, if

there are technology issues, I will try to be forgiving and

KC75citC                         conference

1   understanding of that.  I recognize that we are dealing with a

2   new normal here but, that being said, you should test those as

3   much as possible in advance and that includes making sure that

4   your witnesses know whatever they need to know to log on and

5   that their audio and video are working as well.  If that means

6   testing it between 8:30 and 9:00 before we get started, great,

7   but I will leave it to you to make sure that we don't have any

8   issues on that front.

9           Any questions about any of that?

10          MR. LOIGMAN:  Your Honor.  Robert Loigman.

11          This is a hyper-technical question perhaps but in

12  terms of the split of time, as your Honor pointed out, the

13  beginning of each witness there may be time that is spent

14  discussing the exhibits or testimony to the extent there are

15  objections about those.  Is that time allocated to either side?

16          THE COURT:  No.  I'm not going to count that against

17  either side.  It has to be examination.

18          (phone ringing)

19          MR. BAUGHMAN:  I apologize, your Honor.  I will sort

20  this out.

21          THE COURT:  Mr. Baughman, maybe you should mute your

22  Zoom so that if it rings again we are not interrupted and you

23  can unmute it if you want to speak.  That is probably the best

24  practice.

25          MR. BAUGHMAN:  Very sensible, your Honor.  I will.

KC75citC                              conference

Thank you.

          THE COURT:  So, no, I will not take that time from

either side so it will basically be limited to the examinations

themselves.

          MR. LOIGMAN:  Thank you, your Honor.

          THE COURT:  Any other questions on any of those

logistics?  Timing?  Schedule?  All right.  Very good.

          In terms of witnesses, one final word.  I think I had

raised this in an earlier conference and even memorialized it

in an order but just a reminder, Rule 615 does apply, even

though we are not in a physical courtroom but the complication

is that I'm not in a position to see if a witness is -- quote

unquote -- in the courtroom, that is to say, listening to the

testimony of any other witness.  But, unless I have granted

leave for somebody to be present, and that would be presumably

based on their falling within one of the Rule 615 exceptions,

then I am going to rely on you to ensure that your fact

witnesses have not read the other witness' affidavits and are

not listening in on the public line or are otherwise listening

to the testimony of other witnesses.  So, you should instruct

your witnesses in that regard.  If they're interested in this

trial they may well have noted that there is a public access

line but I am relying on you to ensure that they're not

listening unless they fall within an exception.  And, out of an

abundance of caution, you should bring to my attention if you

KC75citC                        conference

1    think that that is the case so that we can address it.

2            Any questions on that front?  And, again, I think I

3    had clarified that that doesn't apply to the experts who are

4    obviously basing their testimony on the fact witness testimony

5    to begin with.

6            Any questions?  All right.  Again, a reminder that I

7    trust that you will test your respective AV systems, ensure

8    that your microphones are working, and any audio or video

9    problems are resolved, and we will do the same with respect to

10   your witnesses and I am relying on you and the Impact team to

11   make sure that this goes smoothly but that does require some

12   diligence on your part.

13           That exhausts all the issues that I had planned to

14   address today.  I do, as a rule, always raise the question of

15   whether there is a prospect of settlement just because I think

16   I should ask.  My sense is that there isn't here and, in any

17   event, I would be disappointed in some respects if you guys

18   resolve this and this trial went away but let me ask because I

19   always do ask.

20           So, Mr. Ingber?

21           MR. INGBER:  Your Honor, I think you can safely assume

22   that we are moving forward on Wednesday with trial.

23           THE COURT:  Any other issues on your side?

24           MR. INGBER:  No issues on our side.  Thank you.

25           THE COURT:  Mr. Finestone, you have unmuted yourself.

1          MR. FINESTONE:  Thank you, your Honor.  I have nothing

2     to add.  I don't perceive any prospect of settlement,

3     unfortunately, and it feels like trial is proceeding on

4     Wednesday.

5          THE COURT:  All right.  Very good.

6          I should make one thing clear.  I think there are

7     eight of you other than myself who are on my screen at least.

8     I think for trial purposes my expectation is that only the

9     lawyers who are actually examining the witness and therefore

10    likely to speak with respect to that witness should have their

11    cameras on and be on my screen.  I have it set so the only

12    people I see are people whose cameras are on.  So, I think at

13    all times during trial when a witness is testifying, it should

14    be the two lawyers involved in the examination and myself and

15    the witness and that's it.  And, as I said before, I think best

16    practices, you should mute your microphones unless you are

17    speaking.  I think, if I am not mistaken, we can test it and

18    make sure -- I think I was advised in the last trial I did on

19    this platform that you can actually press the space bar on your

20    computer, if it is accessible, as a way of temporarily unmuting

21    yourself.  And that's a good shortcut.  Mr. Finestone just did

22    it so it looks like it works.  Heads up, that's a good shortcut

23    to know about if you are objecting, for instance, you can keep

24    yourself on mute and do that if you want to lodge an objection.

25          Any questions?  Anything else?  Let me go around in

1    circle.  Mr. Ingber?

2                MR. INGBER:  Having just used the space bar and seeing

3    that it works, no, no questions.  Thank you, your Honor.

4                THE COURT:  Mr. Baughman?

5                MR. BAUGHMAN:  No, your Honor.  Thank you.

6                THE COURT:  Mr. Houpt?  You didn't unmute yourself.

7    Or, maybe your space bar isn't working.

8                MR. HOUPT:  Space bar on iPad apparently does do that

9    but, no, your Honor.

10                THE COURT:  Mr. Finestone?

11                MR. FINESTONE:  No, your Honor.  Thank you.

12                THE COURT:  Mr. Loigman?

13                MR. LOIGMAN:  No questions, your Honor.  Thank you.

14                THE COURT:  Mr. Abensohn?

15                MR. ABENSOHN:  Your Honor, I do have one question.

16                I don't know what your Honor's practice is with

17    respect to side bars during witnesses, whether you will

18    entertain those or not, and I assume we have protected capacity

19    for that.  I guess the question, more importantly, is your

20    Honor's practice and we can figure out the rest.

21                THE COURT:  So my practice, which is set forth in my

22    individual rules, is to keep them to an absolute minimum, all

23    the more so in a jury trial but I don't see where they're

24    particularly necessary.  Here, too, if you anticipate issues

25    coming up, as I said, you should raise those in the morning or

KC75citC                              conference

1    at the end of the trial day rather than interrupting the

2    witness.  Having said that, if an issue comes up and you think

3    it is important and the witness can't be present for it, then I

4    am sure we have and I know we have the means to do it.  But,

5    try to keep it to a minimum is the short answer.

6                 MR. ABENSOHN:  Understood, your Honor.  Thank you.

7                 THE COURT:  Ms. Qasir, anything else on your end?

8                 MS. QASIR:  No, your Honor.  Thank you.

9                 THE COURT:  Mr. Spehr, I'm not sure I asked you.

10                MR. SPEHR:  Thank you, your Honor.  Nothing on my end.

11   Thank you.

12                THE COURT:  Again, good to put a face to your

13   respective names and voices after a few months.  I look forward

14   to seeing you on Wednesday morning, I will look forward to the

15   trial which I expect to be interesting and enjoyable and, with

16   that, I will see you on Wednesday morning.

17                Thank you very much.  Have a good day.

18                                o0o

19

20

21

22

23

24

25