# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

*In re:*

*Citibank August 11, 2020 Wire Transfers*

Case No. 1:20-cv-06539 (JMF)

## DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW

Michael Carlinsky
Robert Loigman
Benjamin Finestone
Adam M. Abensohn
Anil Makhijani
Sophia Qasir
Brendan Carroll
Alexandre Tschumi
Zachary Russell
Mario Gazzola

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

*Attorneys for Defendants*

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

# TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................. 1

I.   The Elements of Citibank's Claims ....................................................................... 1

    A.   Unjust Enrichment ........................................................................................ 1

    B.   Money Had and Received .............................................................................. 1

    C.   Payment by Mistake ...................................................................................... 2

    D.   Conversion .................................................................................................... 2

II.  Citibank Cannot Prove the Elements of Its Claims ............................................... 3

    A.   Citibank Cannot Prove A Direct "Benefit," As Necessary For Three of Its
        Asserted Claims ............................................................................................ 3

        1.   Management Fees Do Not Qualify As "Benefits" As A Matter Of
             Law ................................................................................................... 3

        2.   Citibank Has Adduced No Evidence to Establish the Extent of
             Defendants' "Benefit" ...................................................................... 8

        3.   Even if Citibank Could Establish Benefit Based on Management
             Fees (It Cannot), It Would Not Be Entitled To The Relief It Seeks ......... 12

    B.   Citibank Cannot Prove Wrongful Dominion and Control, As Required For
        Its Conversion Claim .................................................................................... 13

        1.   The Wrongfully Exerted Requirement ............................................. 13

        2.   The Act of Dominion Requirement .................................................. 17

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, N.A.*,
   731 F.2d 112 (2d Cir. 1984)............................................................................................. 2

*Axel Johnson, Inc. v. Arthur Andersen & Co.*,
   830 F. Supp. 204 (S.D.N.Y. 1993)................................................................................... 5

*Banque Worms v. BankAmerica Intern.*,
   77 N.Y.2d 362 (1991) .................................................................................................... 16

*BAT LLC v. TD Bank, N.A.*,
   15 Civ. 5839, 2018 WL 4922736 (E.D.N.Y. July 31, 2018)....................................... 4, 8

*Bazak Int'l Corp. v. Tarrant Apparel Grp.*,
   347 F. Supp. 2d 1 (S.D.N.Y. 2004)................................................................................. 7

*Bradley v. Roe*,
   282 N.Y. 525 (1940) ................................................................................................. 13, 14

*Brenner v. Brenner*,
   No. CV 10–4857(AKT), 2012 WL 3597247 (E.D.N.Y. Aug. 20, 2012) ..................... 5, 6

*Brown v. Penland Const. Co.*,
   281 Ga. 625, 641 S.E.2d 522 (2007).............................................................................. 6

*Cachet Fin. Servs. v. MyPayrollHR*,
   2020 WL 5232275 (N.D.N.Y. Sept. 2, 2020) ................................................................. 3

*Carver v. Bank of New York Mellon*,
   2017 WL 1208598 (S.D.N.Y. Mar. 31, 2017) .............................................................. 19

*Citibank, N.A. v. Walker*,
   12 A.D.3d 480 (2d Dep't 2004) ...................................................................................... 1

*Citipostal, Inc. v. Unistar Leasing*,
   283 A.D.2d 916 (4th Dep't 2001).................................................................................... 2

*Colavito v. New York Organ Donor Network, Inc.*,
   8 N.Y.3d 43 (2006) ......................................................................................................... 3

*Colazzo v. Ponte*,
   2019 WL 1877214 (Sup. Ct. N.Y. Cnty. Apr. 26, 2019)............................................... 15

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

*Coughlan v. Jachney*,
   2020 WL 4059587 (E.D.N.Y. July 20, 2020) ........................................................ 17

*Cumis Ins. Soc'y, Inc. v. Citibank, N.A.*,
   921 F. Supp. 1100 (S.D.N.Y. 1996) ................................................................. 2, 13

*DeBlasio v. Merrill Lynch & Co.*,
   No. 07 Civ. 318(RJS), 2009 WL 2242605 (S.D.N.Y. July 27, 2009) ................................ 6

*Denenberg v. Rosen*,
   897 N.Y.S.2d 391 (1st Dep't 2010) ..................................................................... 7

*E.J. Brooks Co. v. Cambridge Sec. Seals*,
   31 N.Y.3d 441 (2018) ................................................................................ 1, 12

*Excalibur Sys., Inc. v. Aerotech World Trade, Ltd.*,
   No. 98 Civ. 1931 (JG), 1999 WL 1281496 (E.D.N.Y. Dec. 30, 1999) ................................ 2

*Filner v. Shapiro*,
   633 F.2d 139 (2d Cir. 1980) ............................................................................ 15

*Fleet Capital Corp. v. Yamaha Motor Corp., U.S.A.*,
   No. 01 Civ. 1047 (AJP), 2002 WL 31174470 (S.D.N.Y. Sept. 26, 2002) ............................. 3

*Galtieri v. Kramer*,
   232 A.D.2d 369 (2d Dep't 1996) ........................................................................ 2

*Great Am. Ins. Co. of N.Y. v. Castleton Commodities Int'l LLC*,
   2016 WL 828127 (S.D.N.Y. Feb. 25, 2016) ............................................................ 15

*Green Complex, Inc. v. Smith*,
   107 A.D.3d 846 (2d Dep't 2013 ........................................................................ 15

*Hill v. Severn*,
   23 A.D.2d 902 (3d Dep't 1965) ......................................................................... 15

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*,
   12 N.Y.3d 132 (2009) ...................................................................................... 5

*Igram v. Page*,
   No. 98 Civ. 8337, 2000 WL 263707 (N.D. Ill. Feb. 28, 2000) ........................................ 6

*In re Interest Rate Swaps Antitrust Litig.*,
   261 F. Supp. 3d 430 (S.D.N.Y. 2017) ................................................................... 7

*Jaszewski v. V-GPO, Inc.*,
   2007 WL 3076972 (W.D.N.Y. Oct. 19, 2007) ......................................................... 15

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

*Johnson v. JPMorgan Chase Bank, N.A.*,
   20 Civ. 4100, 2020 WL 5608683 (S.D.N.Y. Sept. 21, 2020)...................................................... 4

*Kaplan, Inc. v. Yun*,
   16 F. Supp. 3d 341 (S.D.N.Y. 2014)........................................................................................ 6, 7

*Kaye v. Grossman*,
   202 F.3d 611 (2d Cir. 2000)................................................................................................... 3, 4

*Kittredge v. Grannis*,
   244 N.Y. 168 (1926)............................................................................................................... 15

*Laverty v. Snethen*,
   68 N.Y. 522 (1877)................................................................................................................ 16

*Marini v. Adamo*,
   12 F. Supp.3d 549 (E.D.N.Y. 2014) ...................................................................................... 3, 4

*Martin v. Campanaro*,
   156 F.2d 127 (2d Cir. 1946)................................................................................................... 12

*Mehlman Mgmt. Corp. v. Fan*,
   121 A.D.2d 609 (2d Dep't 1986) ...................................................................................... 14, 15

*Mina Inv. Holdings, Ltd. v. Lefkowitz*,
   51 F. Supp. 2d 486 (S.D.N.Y. 1999)..................................................................................... 5, 8

*Morlok v. City of Phila.*,
   No. CV 17-4213, 2020 WL 5101942 (E.D. Pa. Aug. 28, 2020)............................................... 6

*Network Enters., Inc. v. Reality Racing, Inc.*,
   No. 09 Civ. 4664 (RJS), 2010 WL 3529237 (S.D.N.Y. Aug. 24, 2010) ................................. 6

*New York City Econ. Dev. Corp. v. T.C. Foods Imp. & Exp. Co.*,
   819 N.Y.S.2d 849 (Sup. Ct. Queens Cnty. 2006) .................................................................. 12

*Oneida Savings Bank v. Uni-Ter Underwriting Mngt. Corp.*,
   2014 WL 4678046 (N.D.N.Y. Sept. 18, 2014)........................................................................ 7

*Paramount Film Distrib. Corp. v. State of New York*,
   30 N.Y.2d 415 (1972) .............................................................................................................. 1

*R/S Assocs. v. New York Job Dev. Auth.*,
   98 N.Y.2d 29 (2002) .............................................................................................................. 18

*Schwartzbaum v. Emigrant Mortg. Co.*,
   No. 09 Civ. 3848, 2010 WL 2484181 (S.D.N.Y. Apr. 22, 2010)......................................... 5, 8

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

*Shady Records, Inc. v. Source Enters., Inc.*,
   351 F. Supp. 2d 74 (S.D.N.Y. 2004)........................................................................... 6

*Sinzheimer v. Bank of Am., N.A.*,
   161 A.D.3d 414 (1st Dep't 2018) ............................................................................ 14

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014)................................................................................................. 18

*TAP Manutenção e Engenharia Brasil S.A. v. Int'l Aerospace Grp., Corp.*,
   127 F. Supp. 3d 202 (S.D.N.Y. 2015)...................................................................... 14

*Trans-World Trading, Ltd. v. N. Shore Univ. Hosp. at Plainview*,
   64 A.D.3d 698 (2d Dep't 2009) ............................................................................... 14

*Trans-World Trading, Ltd. v. N. Shore Univ. Hosp. at Plainview*,
   2007 WL 4397750 (Sup. Ct. Nassau Cnty. Nov. 30, 2007) .................................... 14

*U.S. ex rel. Feldman v. City of N.Y.*,
   808 F .Supp. 2d 641 (S.D.N.Y. 2011)........................................................................ 4

*U.S. ex rel. Ryan v. Staten Island Univ. Hosp.*,
   No. 04 Civ. 2483 (CLP), 2011 WL 1841795 (E.D.N.Y. May 11, 2011)................... 2

*United Credit Corp. v. J.L.E. Indus., Inc.*,
   1997 WL 34850181 (Sup. Ct. N.Y. Cnty. Feb. 26, 1997) ....................................... 14

*Vertex Constr. Corp. v. T.F.J. Fitness L.L.C.*,
   No. 10 Civ. 683 (ALC), 2011 WL 5884209 (E.D.N.Y. Nov. 23, 2011) ................... 6

*Vigilant Ins. Co. of Am. v. Housing Auth. of City of El Paso, Tex.*,
   87 N.Y.2d 36 (1995) ................................................................................................. 2

*Yarde v. Artoglou*,
   2012 WL 5903248 (Sup. Ct. Suffolk Cnty. 2012).................................................. 15

*Yoon v. Fordham Univ. Faculty & Adminstration Ret. Plan*,
   2004 WL 3019500 (S.D.N.Y. Dec. 29, 2004) ........................................................ 13

## Other Authorities

Restatement (First) of Restitution § 107 (1937) ........................................................... 13

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

## INTRODUCTION

The Court requested that the parties address the elements of Citibank's four asserted claims, with a particular focus on the law and facts bearing on the "benefit" requirement applicable to three of those claims (unjust enrichment, money had and received, and payment by mistake) and the "dominion and control" requirement applicable to Citibank's conversion claim. The elements of each claim are set forth in Part I and the law and facts pertinent to the specific elements highlighted by the Court are addressed in Part II.  As set forth in Part II, the evidence developed is insufficient to satisfy the elements of any one of the four asserted claims.

## I.     THE ELEMENTS OF CITIBANK'S CLAIMS

### A.     Unjust Enrichment

"The essential inquiry in any action for unjust enrichment . . . is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered." *Paramount Film Distrib. Corp. v. State of New York*, 30 N.Y.2d 415, 421 (1972).  A plaintiff must show "that (1) the other party was enriched, (2) at that party's expense, and (3) that 'it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered,'" *Citibank, N.A. v. Walker*, 12 A.D.3d 480, 481 (2d Dep't 2004), *abrogated on other grounds Butler v. Catinella*, 58 A.D.3d 145, 149 (2d Dep't 2008) (quoting *Paramount Film Distrib. Corp.*, 30 N.Y.2d at 421).  This doctrine is a "narrow one"; it is "not a catchall cause of action to be used when others fail." *E.J. Brooks Co. v. Cambridge Sec. Seals*, 31 N.Y.3d 441, 456 (2018) (internal quotations omitted).

### B.     Money Had and Received

"The essential elements in a claim for money had and received under New York law are that (1) defendant received money belonging to plaintiff; (2) defendant benefitted from the receipt of money; and (3) under principles of equity and good conscience, defendant should not

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

be permitted to keep the money." *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, N.A.*, 731 F.2d 112, 125 (2d Cir. 1984).  As to the first element, it is necessary that defendants were the direct recipients of the transfers.  *See Excalibur Sys., Inc. v. Aerotech World Trade, Ltd.*, No. 98 Civ. 1931 (JG), 1999 WL 1281496, at *2 (E.D.N.Y. Dec. 30, 1999) ("Excalibur alleges that it paid Aerotech—not Mosedale—$201,492.  . . . Thus, I find that Excalibur can prove no set of facts that would entitle it to relief for a claim of money had and received as against Mosedale.") (citation omitted); *U.S. ex rel. Ryan v. Staten Island Univ. Hosp.*, No. 04 Civ. 2483 (JG) (CLP), 2011 WL 1841795, at *6 (E.D.N.Y. May 11, 2011) ("[I]f the Lederman defendants did not themselves receive the payments at issue, they will not be required to make restitution [based on claims for unjust enrichment or money had and received].").

### C.    Payment by Mistake

"The elements of a claim for payment by mistake are that plaintiff made a payment under a mistaken apprehension of fact, that defendant derived a benefit as a result of this mistaken payment, and that equity demands restitution by defendant to plaintiff."  *Staten Island Univ. Hosp.*, 2011 WL 1841795, at *5.

### D.    Conversion

Conversion is "any act of dominion wrongfully exerted over another person's personal property inconsistent with that person's rights in the property."  *Cumis Ins. Soc'y, Inc. v. Citibank, N.A.*, 921 F. Supp. 1100, 1110 (S.D.N.Y. 1996); *see also Vigilant Ins. Co. of Am. v. Housing Auth. of City of El Paso, Tex.*, 87 N.Y.2d 36, 44 (1995) ("Conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." (citation omitted)).  Some Courts have defined the cause of action as "any unauthorized exercise of dominion or control over property by one who is not

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

the owner of the property which interferes with and is in defiance of a superior possessory right

of another in the property."  *See, e.g.*, *Galtieri v. Kramer*, 232 A.D.2d 369, 369 (2d Dep't 1996);

*Citipostal, Inc. v. Unistar Leasing*, 283 A.D.2d 916, 919 (4th Dep't 2001).  The "[t]wo key

elements of conversion are (1) plaintiff's possessory right or interest in the property and (2)

defendant's dominion over the property or interference with it, in derogation of plaintiff's

rights."  *Colavito v. New York Organ Donor Network, Inc.*, 8 N.Y.3d 43, 50 (2006) (citations

omitted).  Further, Citibank must prove that Defendants converted the property "to their own

use."  *Fleet Capital Corp. v. Yamaha Motor Corp., U.S.A.*, No. 01 Civ. 1047 (AJP), 2002 WL

31174470 at *16 (S.D.N.Y. Sept. 26, 2002) (quoting *Banco Nacional de Cuba v. Sabbatino*, 307

F.2d 845, 854 (2d Cir. 1962), *rev'd on other grounds*, 376 U.S. 398 (1964)); *see also Cachet Fin.

Servs. v. MyPayrollHR*, 2020 WL 5232275 at *8 (N.D.N.Y. Sept. 2, 2020).

## II.     CITIBANK CANNOT PROVE THE ELEMENTS OF ITS CLAIMS

### A.     Citibank Cannot Prove A Direct "Benefit," As Necessary For Three Of Its Asserted Claims

#### 1.     *Management Fees Do Not Qualify As "Benefits" As A Matter Of Law*

Citibank has argued that its equitable claims are essentially the same claim, rising or

falling on the same inquiries.  ECF 143 (Citibank Conclusions of Law) at 35 ("[A]lthough there

are minor variations in the elements of these claims, each cause of action turns on the same

inquiry . . . The only claim with an additional element is the tort of conversion, which requires an

exercise of dominion and control over plaintiff's property.") (citations omitted).  Citibank's

claims for unjust enrichment, money had and received, and payment by mistake fail for a

common defect: Citibank has neither pled nor proved that Defendants received any "benefit," let

alone one sufficient to maintain its claims.

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

It is black letter law that Defendants must have received a personal benefit that is specific and direct. *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (reversing verdict for failure to "establish the specific and direct benefit necessary to support an unjust enrichment claim"); *Marini v. Adamo*, 12 F.Supp.3d 549, 551 (E.D.N.Y. 2014) (dismissing claims for unjust enrichment and money had and received because "plaintiffs have not met their burden" to show that defendant "personally benefitted . . . from the . . . transactions at issue"); *id.* at 552 ("[T]he question whether [defendant] benefitted . . . is the same for both the unjust enrichment and money had and received claims."); *Johnson v. JPMorgan Chase Bank, N.A.*, 20 Civ. 4100 (JSR), 2020 WL 5608683, at *11 (S.D.N.Y. Sept. 21, 2020) (to succeed in its claims for unjust enrichment and money had and received, plaintiff must prove that Defendants "received a 'specific and direct benefit' from the property sought to be recovered, not an 'indirect benefit.'") (quoting *Kaye*, 202 F.3d at 616); *U.S. ex rel. Feldman v. City of N.Y.*, 808 F .Supp. 2d 641, 657 (S.D.N.Y. 2011) ("At the very least, to state a claim for payment under mistake of fact, the defendant against whom it is asserted must have received some direct and measurable financial benefit from the payments in question.").

The only "benefit" that Citibank has identified, which Defendants purportedly obtained (or would obtain upon prevailing in this action), are management fees that they earn in their capacity as fund managers. Trial Tr. 224:18-23 ("[Mr. Baughman: T]he benefit to the defendants is . . . the fees that the defendants receive for acting in their capacity as fund managers."). But management fees do not qualify as the sort of "direct" benefits necessary to sustain Citibank's claims.

Management fees do not qualify for multiple reasons. *First*, Citibank's claims require that Defendants' "benefit" already be realized. *BAT LLC v. TD Bank, N.A.*, 15 Civ. 5839 (RRM)

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

(CLP), 2018 WL 4922736, at *13 (E.D.N.Y. July 31, 2018) ("[A] claim of unjust enrichment

requires allegations that the defendant was actually enriched.  Here, the claimed benefit is

prospective; BAT has not yet received the benefit at issue . . . That BAT might potentially

receive a benefit at TD Bank's expense in the future is insufficient." (alterations, quotation

marks, and citation omitted)); *Axel Johnson, Inc. v. Arthur Andersen & Co.*, 830 F. Supp. 204,

212 (S.D.N.Y. 1993) ("To be actionable, a claim for unjust enrichment requires that the

defendant already has been enriched."); *Mina Inv. Holdings, Ltd. v. Lefkowitz*, 51 F. Supp. 2d

486, 489 (S.D.N.Y. 1999) ("A claim for unjust enrichment requires a plaintiff to allege that the

defendant has already been enriched . . . ."); *Schwartzbaum v. Emigrant Mortg. Co.* No. 09 Civ.

3848, 2010 WL 2484181, at *8 (S.D.N.Y. Apr. 22, 2010), *report and recommendation adopted

in part, rejected in part on other grounds*, 2010 WL 2484116 (S.D.N.Y. June 16, 2010)

(recommending dismissal of unjust enrichment claims where "Defendant has not yet been

enriched at Plaintiffs' expense" and only "stands to" benefit).  There is no evidence that any

Defendant has yet collected management fees as a result of the payments made on August 11.

　　*Second*, Citibank must show a *direct* benefit from *Citibank* to Defendants.  The New

York Court of Appeals expressly rejected claims premised on fees, where the fees are not paid

by the plaintiff.  That is, Citibank cannot allege that Defendants are enriched at Citibank's

expense because the management fees are paid by *customers*, not by Citibank.  *IDT Corp. v.

Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 142 (2009) (Plaintiff could not recover

"investment banking fees" paid to defendant because "[plaintiff] does not, and cannot, allege that

[defendant] has been unjustly enriched at [plaintiff's] expense, because [plaintiff] did not pay the

alleged fees."); *see also Brenner v. Brenner*, No. CV 10–4857 (DRH) (AKT), 2012 WL

3597247, at *6 (E.D.N.Y. Aug. 20, 2012) ("To support an unjust enrichment claim a plaintiff

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

must establish a specific and direct benefit *moving from the plaintiff to the defendant*.") (citation

omitted) (emphasis added).  As noted above, Citibank has conceded that any future benefit

received by Defendants would be compensation from Defendants' clients for Defendants'

performance of their contractual duties as fund managers. Trial Tr. 224:18-23.

*Third*, Citibank fails to show a "causal" link between its transfers and Defendants' benefit

that exceeds "mere correlation." *Network Enters., Inc. v. Reality Racing, Inc.*, No. 09 Civ. 4664

(RJS), 2010 WL 3529237, at *7 (S.D.N.Y. Aug. 24, 2010) ("To plead a plausible claim to relief

on a theory of unjust enrichment, plaintiffs must show a causal 'nexus' between a defendant's

enrichment and their own expense that goes beyond mere 'correlation.'") (quoting *DeBlasio v.

Merrill Lynch & Co.*, No. 07 Civ. 318 (RJS), 2009 WL 2242605, at *40 (S.D.N.Y. July 27,

2009)); *see also Vertex Constr. Corp. v. T.F.J. Fitness L.L.C.*, No. 10 Civ. 683 (CBA) (ALC),

2011 WL 5884209, at *5 (E.D.N.Y. Nov. 23, 2011) (explaining royalties tied to revenues would

constitute "an indirect benefit [that] would not establish the sort of 'specific and direct' benefit

that New York law requires to sustain a claim for unjust enrichment") (citation omitted).

*Finally*, to the extent Citibank relies on purported "reputational" benefits to Defendants,

that too is insufficient for many of the same reasons. *Shady Records, Inc. v. Source Enters., Inc.*,

351 F. Supp. 2d 74, 78 (S.D.N.Y. 2004) (rejecting sufficiency of speculative benefit of "the

protection of his image, name, likeness and reputation").[1]  Courts have routinely rejected claims

based on such indirect, speculative benefits.  *See, e.g.*, *Kaplan, Inc. v. Yun*, 16 F. Supp. 3d 341,

---

[1]   Other courts outside of New York agree. *See, e.g.*, *Morlok v. City of Phila.*, No. CV 17-4213,
2020 WL 5101942, at *1 (E.D. Pa. Aug. 28, 2020) (rejecting claims predicated on benefits of
publicity and goodwill); *Igram v. Page*, No. 98 Civ. 8337, 2000 WL 263707, at *4 (N.D. Ill. Feb.
28, 2000) (rejecting claims predicated on undeserved improvements to defendant's reputation);
*Brown v. Penland Const. Co.*, 281 Ga. 625, 641 S.E.2d 522 (2007) (rejecting claims predicated
on "speculation[] that Brown's individual reputation was . . . enhanced").

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

353 (S.D.N.Y. 2014) (finding that plaintiffs' activities promoting defendants' trademarks constituted only an indirect enrichment); *In re Interest Rate Swaps Antitrust Litig.*, 261 F. Supp. 3d 430, 500 (S.D.N.Y. 2017) (rejecting indirect theory of enrichment based on reduced competition because "courts require proof that the defendant received a specific and direct benefit from the property sought to be recovered, rather than an indirect benefit" (internal quotation marks omitted)); *Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 347 F. Supp. 2d 1, 4 (S.D.N.Y. 2004) ("A complaint does not state a cause of action in unjust enrichment if it fails to allege that defendant received something of value which belongs to the plaintiff." (internal quotation marks omitted)).

Citibank has elicited testimony that a Defendant will receive a "direct" benefit in the form of its management fees as a result of the August 11 Transfer.  Trial Tr. (Frusciante) 458:2-8.  That lay-understanding of what constitutes a "direct" or "indirect" benefit cannot change that a management fee does not qualify as a "benefit" for purposes of an unjust enrichment claim. *Oneida Savings Bank v. Uni-Ter Underwriting Mngt. Corp.*, 2014 WL 4678046, at *2, *18 (N.D.N.Y. Sept. 18, 2014) ("Plaintiffs have not alleged that [Defendants] benefitted at Plaintiffs' expense.  Rather, Plaintiffs allege that [Defendants] benefitted in the form of management fees paid by [a third party], which is far too attenuated a relationship to support a claim for unjust enrichment."); *Denenberg v. Rosen*, 897 N.Y.S.2d 391, 396 (1st Dep't 2010) (fees received by law firm for issuing an opinion letter "were too attenuated" to support unjust enrichment claim). Moreover, even if such testimony could counter-act such authority, the testimony was clear that any such benefit would attach only in the future.  And as discussed *supra*, the possibility of a

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

future benefit, also as a matter of law, is not sufficient to support Citibank's claims.[2]  Therefore,

Citibank has not (and cannot) make its *prima facie* case for unjust enrichment, money had and

received, and payment by mistake.

>    2.    *Citibank Has Adduced No Evidence to Establish the Extent of Defendants'*
>          *"Benefit"*

Even if it were theoretically possible for Citibank to prove a direct benefit in the form of

management fees, its evidence fails to demonstrate any non-speculative fee tied directly to the

funds from the August 11 Transfer.[3]  At best, Citibank has offered documents and elicited

testimony that Defendants may one day in the future receive fees from their customers in

amounts that are uncertain and contingent on many factors beyond just the principal amount of

the August 11 Wire Transfers.

---

[2]   *Compare* Trial Tr. (Frusciante) at 455:2-5 ("Q. *And if Brigade wins this lawsuit and AMPI is allowed to keep the money*, that will increase the average balance of the portfolio value; correct, sir? A. That's correct. Q. And that *will* result in a direct benefit to Brigade which is an increased base fee component of the management fee; correct, sir? A. Correct." (emphases added)) *with BAT LLC*, 15 CV 5839 (RRM) (CLP), 2018 WL 4922736, at *13 ("[A] claim of unjust enrichment requires allegations that the defendant was actually enriched.  Here, the claimed benefit is prospective; BAT has not yet received the benefit at issue . . . . That BAT might potentially receive a benefit at TD Bank's expense in the future is insufficient." (alterations, quotation marks, and citation omitted)); *Mina Inv. Holdings, Ltd.* 51 F. Supp. 2d at 489 ("A claim for unjust enrichment requires a plaintiff to allege that the defendant has already been enriched . . . ."); *and Schwartzbaum*, No. 09 Civ. 3848, 2010 WL 2484181, at *8 (recommending dismissal of unjust enrichment claims where "Defendant has not yet been enriched at Plaintiffs' expense" and only "stands to" benefit).

[3]   Defendants redacted the specific quantum (by percentage) of management fees when they produced the management contracts to Citibank because Citibank requested the management contracts solely in connection with Defendants' purported "control" of the lenders. Defendants produced all of the management contracts by October 9, 2020, and in the two months since, Citibank has not objected to those redactions.  To the extent that Citibank now objects to such redactions (because Citibank now seeks, after the close of its case in chief, to rely on such information to demonstrate a benefit to Defendants), such objections are baseless as they should have been raised at the time the documents were produced.  In any event, Citibank has suffered no prejudice from these redactions because management fees do not qualify as "benefits" to support the elements of Citibank's causes of action.  *See supra* Section II.A.1.

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

As a threshold matter, all Defendants have placed the funds in suspense, (Abrams Decl.

¶¶ 29-30; Caraher Decl. ¶ 17; Dent Decl. ¶ 15; Frusciante Decl. ¶ 21; Greene Decl. ¶ 26; Lenga

Decl. ¶ 16; McCoy Decl. ¶ 29; Meneses Decl. ¶ 20; Perkal Decl. ¶ 16; Phipps Decl. ¶ 20;

Vaughan Decl. ¶ 22), so the paydown of term loans held by their clients has not affected any of

their fees (*see, e.g.*, Trial Tr. 452:2-7).

Further, Citibank is unable to demonstrate even a future benefit for a significant portion

of the Defendants.  The Defendants calculate their management fees in several different ways,

with different inputs, variables, caps, etc.; but, generally, Defendants receive some base

management fee calculated as a percentage of the amounts under management ("AUM").  Some,

but not all, lenders also award an incentive fee based on performance.  The paydown of the

Revlon Term Loans does not guarantee an increase in funds under either category.[4]

*First*, as to the base fees, Citibank assumes that all lenders calculate their AUM based on

the market price of their holdings.  Under such a structure, if a loan that is priced at 50 cents on

the dollar pays off at par, the AUM derived from that loan doubles.  However, many lenders –

including nearly every CLO at issue – calculate AUM differently.  Some lenders calculate AUM

based on the purchase price of the loans held by the portfolio.  (*See, e.g.*, DX-1122 at 0047

(defining Maximum Investment Amount for JMP Credit Advisors CLO III(R) Ltd. (Medalist));

*id.* at 0021 (defining Collateral Principal Amount for JMP Credit Advisors CLO III(R) Ltd.

(Medalist)); *id.* at 0059 (defining Principal Balance for JMP Credit Advisors CLO III(R) Ltd.

(Medalist)).)  Using Medalist as an example, the lenders it manages treat any loans purchased at

above 80-85 cents on the dollar as carried at par, regardless of whether the market price of such

---

[4] Two lenders do not pay management fees based on AUM or any other metric.  Allstate
Insurance Company and Allstate Life Insurance Company pay Allstate Investments, LLC only
for monthly expenses.  (DX-0269 at § 1.3.)

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

loans later decreases.  (*See, e.g.*, DX-1122 at 0011 (defining Adjusted Collateral Principal

Amount); *id.* at 0034 (defining Discount Obligation).)  Because lenders managed by Medalist

purchased their 2016 Term Loans above that price, the loans are valued on their books at the full

outstanding par value notwithstanding current pricing, such that a repayment at par does not

increase the AUM of those lenders at all.  Trial Tr. 857:19-25.

Lenders managed by several other Defendants similarly calculate AUM based on the

outstanding principal balance on a loan, and do not take into account the market pricing in any

way.  (*See, e.g.*, DX-0145 at 0020 (defining Collateral Principal Amount for Halcyon Loan

Advisors Funding 2013-2 Ltd. (Bardin Hill)), *id.* at 0034 (defining Fee Basis Amount); *id.* at

0051 (defining Principal Balance); *see also*, DX-0240 at 0038 (defining Fee Basis Amount for

HPS Loan Management 11-2017, Ltd.); *id.* at 0015 (defining Aggregate Principal Balance).  For

example, lenders managed by Greywolf measure NAV by outstanding principal balance, (DX-

0258 at 0055 (defining Fee Basis Amount); *id.* at 0037 (defining Collateral Principal Amount)),

so whether one of those lenders carries a $5,000,000 outstanding balance of the term loan or

holds $5,000,000 in cash, the AUM will be the same.  All the CLOs managed by Bardin Hill,

ZAIS, Allstate, Greywolf, and Tall Tree measure AUM by this metric, meaning that none of

those Defendants will receive any increased management fee from the paydown of any of their

clients' Term Loans.  Finally, many lenders, including every lender managed by Bardin Hill

except for Halcyon Loan Advisors Funding 2017-1 Ltd. and 2017-2 Ltd. (identified in Greene

Decl. ¶5), are past their reinvestment periods, such that any principal proceeds will immediately

get paid out to investors rather than contributing to the AUM.  (*See, e.g.*, DX-0142 at 0070

(defining Reinvestment Period for Halcyon Loan Advisors Funding 2013-1 Ltd. (Bardin Hill));

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

*id.* at § 12.2 (governing Purchase of Additional Collateral Obligations for Halcyon Loan

Advisors Funding 2013-1 Ltd. (Bardin Hill).)

 *Second*, as to incentive fees, while the payoff of the term loans may make it more likely

that certain managers are paid incentive fees, it is by no means certain.  Many incentive fees are

calculated compared to benchmark indexes or a specified internal rate of return, (*see, e.g.*, DX-

0261 at § 8(d) (Greywolf CLO II, Ltd.)), and whether a lender beats that index or rate of return

depends on many more factors than just the performance of one credit.  For example, a portfolio

of 100 credits, including a fully repaid Revlon 2016 Term Loan amount, would be unlikely to

trigger an incentive fee if other credits generated losses or gains less than the specified index or

rate of return.  Citibank has presented no evidence to suggest any certainty, or even likelihood,

that any Defendant will secure an incentive fee impacted to any extent by the August 11

Transfer.

 *Third*, any future benefit to Defendants from management fees will be *miniscule*

compared to the amount of relief Citibank seeks.  Even for Defendants that are compensated on

proportional bases—*e.g.*, a percentage of the market value of holdings plus cash, without regard

to performance of other portfolio credits—a future benefit tied to the transfers at issue would be

minimal.  (*See, e.g.*, DX-0217 at 0021 (FCA Canada Inc. Elected Master Trust, managed by

Brigade).)  For example, if a customer holds $1 million of a loan priced at 30 cents, a 2%

management fee would be charged on a $300,000 market value of the loan.  This would result in

a fee of $6,000, absent repayment.  If the loan is repaid, and the customer holds $1 million in

cash, it would be charged a management fee on that amount, resulting in a fee of $20,000.  All

other things constant, the paydown would have generated just a $14,000 incremental fee, which

is only 1.4% of the $1 million in repaid principal.

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

Accordingly, even if management fees were calculable today (which they are not),

Defendants could receive, at best, speculative, indirect, contingent future benefits that are just a

small fraction of the amounts Citibank seeks.  Citibank cannot meet its burden to prove a direct

benefit in support of its equitable claims.

3.    *Even if Citibank Could Establish Benefit Based on Management Fees (It Cannot), It Would Not Be Entitled To The Relief It Seeks*

If Citibank's failure to adduce evidence of benefit does not preclude it from establishing

liability, it does preclude it from obtaining its proposed relief.  Plainly, Citibank has no basis to

prove that any benefit Defendants have received is anywhere close to the full amount of the

August 11 Transfers.  Indeed, Citibank's chosen theory is that Defendants are benefitting in the

form of management fees, which, by definition, are a small fraction of the funds under

management.  "*As a remedy,* unjust enrichment, in contrast to damages, is designed to avoid

wrongful *gains* rather than compensate the plaintiff for its losses."  *E.J. Brooks Co. v. Cambridge

Sec. Seals*, 31 N.Y.3d 441, 456 n.7 (2018) (emphasis added).  That is, the measure of relief

would be the extent of Defendants' purported benefit – *i.e.*, their limited management fees

(which Citibank has not adduced any evidence of in any event) – and not the extent of Citibank's

loss.

If the benefit that Citibank alleges has accrued to Defendants is their management fees,

then Citibank's recovery in equity (if any recovery is permitted at all) could only be the amount

of those fees.  *Cf. New York City Econ. Dev. Corp. v. T.C. Foods Imp. & Exp. Co.*, 819 N.Y.S.2d

849 (Sup. Ct. Queens Cnty. 2006) (restitution "requires that a benefit must have passed from the

plaintiff to the defendant for which the plaintiff should be compensated in equity and good

conscience."); *Martin v. Campanaro*, 156 F.2d 127, 130 n.5 (2d Cir. 1946) (under equitable

quasi-contract claims, "the damages are measured by the unjust enrichment of, or benefit to, the

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

defendant"); *Yoon v. Fordham Univ. Faculty & Adminstration Ret. Plan*, 2004 WL 3019500, at

*11 (S.D.N.Y. Dec. 29, 2004) ("restitution at equity was defined as a claim for constructive trust

or equitable lien where money or property identified as belonging in good conscience to the

plaintiff could clearly be traced to particular funds or property in the defendant's possession");

Restatement (First) of Restitution § 107 (1937) ("In cases in which [a party] seeks restitution on

the ground of unjust enrichment he is entitled to no more than the value of the benefit which he

has conferred upon the other party").

> **B.     Citibank Cannot Prove Wrongful Dominion and Control, As Required For
>          Its Conversion Claim**

> > *1.     The Wrongfully Exerted Requirement*

In order to prevail on a claim for conversion, Citibank must prove not only "dominion,"

but also a "wrongful" act of dominion and control.  *Cumis Ins. Soc'y, Inc. v. Citibank, N.A.*, 921

F. Supp. 1100, 1110 (S.D.N.Y. 1996) (plaintiff must prove that defendants committed an "act of

dominion wrongfully exerted over [plaintiff]'s personal property inconsistent with that person's

rights in the property").  Citibank cannot make that showing.  Indeed, had Defendants returned

the funds upon Citibank's demand, notwithstanding that their clients had, at a minimum, a valid

claim to those funds, Defendants would have been subject to possible claims by those clients.  As

set forth below, a claim of conversion requires wrongful action on the part of the defendant, and

not, as here, a reasonable decision to preserve the rights of another entity.

In *Bradley v. Roe*, the New York Court of Appeals found no conversion could lie, even

"assum[ing], at least for the moment, that the plaintiff is the owner of the stock and that the

defendants could, if they chose, surrender it to her when convinced the decedent's estate had no

claim to it."  282 N.Y. 525, 532-33 (1940).  The failure to surrender property with *disputed*

ownership to one claimant does not constitute a *wrongful* act of dominion and does not form a

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

basis for a conversion claim.  *Id.* at 531 ("Where a person is rightfully in possession of property,

continued custody of the property and refusal to deliver on demand of the owner until the owner

proves his right, constitutes no conversion.").  Nor does a failure to surrender property for which

a claimant refuses to provide proof of ownership or explanation of error constitute a conversion.

*See United Credit Corp. v. J.L.E. Indus., Inc.*, 1997 WL 34850181 (Sup. Ct. N.Y. Cnty. Feb. 26,

1997) ("[I]nsistence, . . . by telephone and letter, that it was the owner of the [property], does not

constitute proof of ownership."); *TAP Manutenção e Engenharia Brasil S.A. v. Int'l Aerospace

Grp., Corp.*, 127 F. Supp. 3d 202, 211 (S.D.N.Y. 2015) ("Making a demand but failing to

respond to reasonable inquiries with regard to the demand is insufficient to support a claim of

conversion.").

At best, Citibank can show that Defendants denied Citibank access to funds with *disputed*

title, which is insufficient to prevail on a conversion claim.  Holding funds "pending a resolution

of the ownership disputes" is not a conversion.  *Trans-World Trading, Ltd. v. N. Shore Univ.

Hosp. at Plainview*, 2007 WL 4397750 (Sup. Ct. N.Y. Cnty., Nov. 30, 2007), *aff'd* 64 A.D.3d

698, 701 (2d Dep't 2009); *see also id.* (finding no conversion because "the rightful owner of the

gift shop merchandise has not yet been determined").  Citibank's failure to establish any right to

the disputed funds *before* filing suit defeats its claim for conversion. *See Trans-World Trading,

Ltd. v. N. Shore Univ. Hosp. at Plainview*, 64 A.D.3d 698, 701 (2d Dep't 2009) (finding plaintiff

could not maintain conversion claim against plaintiff where "plaintiff never proved its right to

that merchandise"); *Sinzheimer v. Bank of Am., N.A.*, 161 A.D.3d 414, 415 (1st Dep't 2018)

("[R]efusal to surrender [funds] to Andrew until Andrew proved his right to them was not an

assertion of dominion or control over the funds."); *Mehlman Mgmt. Corp. v. Fan*, 121 A.D.2d

609, 610 (2d Dep't 1986) ("Where one is rightfully in possession of property, one's continued

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

custody of the property and refusal to deliver it on demand of the owner until the owner proves

his right to it does not constitute a conversion."); *Green Complex, Inc. v. Smith*, 107 A.D.3d 846,

849 (2d Dep't 2013 (same)); *Yarde v. Artoglou*, 2012 WL 5903248 (Sup. Ct. Suffolk Cnty. 2012)

("[D]efendants' continued possession of the [] payment is lawful until plaintiff proves her right

to its return."); *Jaszewski v. V-GPO, Inc.*, 2007 WL 3076972, at *5 (W.D.N.Y. Oct. 19, 2007)

("[E]ven if the Blair defendants had physical possession of the stock certificates, the refusal of

the defendants to return the stock certificates does not constitute conversion absent proof offered

by the plaintiff to the defendants that he was legally entitled to the certificates."); *Hill v. Severn*,

23 A.D.2d 902, 903 (3d Dep't 1965) (finding no conversion where attorney retained client funds

pending determination of fees owed); *Colazzo v. Ponte*, 2019 WL 1877214, at *7 (Sup. Ct. N.Y.

Cnty. Apr. 26, 2019) ("Where a trustee rightfully possesses trust funds, its continued custody of

them and refusal to surrender them to a beneficiary until the beneficiary proves his entitlement to

them does not constitute an assertion of dominion or control sufficient to establish a

conversion.").

 Indeed, if interfering with a party's access to *disputed* funds could constitute conversion,

Defendants might be held liable for conversion *against their customers, the Term Lenders*, had

they returned the principal portion of the August 11 Wire Transfers.  "Under the law of New

York, . . . an agent who intermeddles with the property of his principal beyond the extent of his

authority, with the intent to use or dispose of it so as to alter its condition or interfere with the

owner's dominion, is guilty of conversion."  *Filner v. Shapiro*, 633 F.2d 139, 141 (2d Cir. 1980);

*see also Great Am. Ins. Co. of N.Y. v. Castleton Commodities Int'l LLC*, 2016 WL 828127, at *7

(S.D.N.Y. Feb. 25, 2016) (same); *Kittredge v. Grannis*, 244 N.Y. 168, 176 (1926) ("[I]f the agent

parts with the property, in a way or for a purpose not authorized, he is liable for a conversion . . .

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

."); *Laverty v. Snethen*, 68 N.Y. 522, 527 (1877) ("When an agent . . . departs from his authority

in disposing of [the property of his principal], he makes the property his own and may be treated

as a *tort-feasor*. . . . [I]f the agent parts with the property, in a way and for a purpose not

authorized, he is liable for a conversion . . . .").

Defendants' obligation to their clients was to preserve their funds.  (*See, e.g.*, DX-0214 at

§ 7.5 (Indenture for HPS Loan Management 9-2016, Ltd.); DX-0296 at § 7.5 (First Supplemental

Indenture for Greywolf CLO V, Ltd.); DX-0287 at § 7.7(v) (First Supplemental Indenture for

SCOF-2 Ltd. (Symphony)); DX-0142 at § 7.5 (Indenture for Halcyon Loan Advisors Funding

2013-1 Ltd. (Bardin Hill)); DX-1101 at § 7.5 (Indenture for Monarch Grove CLO, Ltd. (Tall

Tree)); DX-0245 at § 7.5 (Indenture for AIMCO CLO, Series 2017-A (Allstate)); DX-0159 at §

7.5 (Indenture for ZAIS CLO 1, Limited); DX-1122 at § 7.5 (Indenture for JMP Credit Advisors

CLO III(R) Ltd. (Medalist)).)  Had Defendants surrendered funds to Citibank, notwithstanding

that its clients have and had rights to those funds, Defendants would fail to fulfill that obligation.

Taking appropriate action to preserve the interests of their clients is not "wrongful," and

therefore cannot constitute improper dominion in support of a conversion claim.

New York courts' refusal to impose liability for conversion when title to the funds is

disputed is sensible policy.  If Citibank could create liability for conversion by demanding the

return of funds, Defendants would be put in an impossible situation: Not returning the funds

might give rise to liability for conversion against Citibank, while returning the funds upon

Citibank's demand might in turn give rise to liability against the Term Lenders.  *Cf. Banque*

*Worms v. BankAmerica Intern.*, 77 N.Y.2d 362, 365 (1991) (BankAmerica transferred the

disputed funds to Security Pacific *pursuant to an indemnity* because of potential liability to its

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

customer from returning the funds).  For good reason, the law of conversion does not so place

parties in Defendants' position between a rock and a hard place.

        *2.*      *The Act of Dominion Requirement*

A party's failure to return funds cannot be an exercise of "dominion" sufficient to sustain

a claim for conversion when that party could not, in law, accomplish the return of such funds.

*Coughlan v. Jachney*, 2020 WL 4059587, at *27 (E.D.N.Y. July 20, 2020) (manager of a

business did not exercise dominion by failing to return customer funds when there was no

showing the manager had authority to return the funds).  Likewise, Defendants here do not have

unilateral authority to return the funds in the possession of the Lenders.  (*See, e.g.*, DX-0910 at §

3.2.17 (Investment Management Agreement for Blue Falcon Ltd. (Brigade) providing that

Brigade may not "make any transfer of funds or payments from any Portfolio other than in

connection with a transaction or with Client's prior written consent"); DX-0246 at § 7.5

(Indenture for Battalion CLO VIII Ltd. (Brigade) providing that "[t]he Collateral Manager on

behalf of the Issuer will cause the taking of such action within the Collateral Manager's control

as is reasonably necessary in order to maintain the perfection and priority of the security interest

of the Trustee in the Assets . . . ."); DX-0317 at § 1 (Investment Management Agreement for

Municipal Employees Annuity and Benefit Fund of Chicago (Symphony)) ("Notwithstanding

anything in this Agreement to the Contrary, [Symphony] shall have no authority hereunder to

take or have possession of any assets in the Account . . . or to direct any disposition of such

Securities or funds except to Client or for countervalue.").)[5]  Testimony from Defendant

---

[5]   *See also, e.g.*, DX-0147 at § 4(a) (Investment Management Agreement for Menard,
Inc., providing that "[Symphony] shall at no time have custody or physical control of the
Investment Account Assets," and that the Client will provide the custodian with a "trading
authorization" for Symphony); DX-0288 at § 3.12 (Investment Management Agreement for

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

personnel as to their "authority" or "control" over client funds cannot substitute for the more

precise parameters set by the management agreements governing their client relationships.  *R/S*

*Assocs. v. New York Job Dev. Auth.*, 98 N.Y.2d 29, 32-33 (2002) (an unambiguous written

contract may not be contradicted by parol evidence).  Citibank has not shown that Defendants

possess a contractual right to order the movement of the funds over any refusal by the Lenders,

or for any purpose other than to effectuate Defendants' authority to invest or lend client funds in

pursuit of investment returns.

Several witnesses have testified that this is an unprecedented situation.  Never before

have their clients received payments of principal and interest, only to be followed by requests

from the agent bank to return those payments due to some mistake.  Trial Tr. 490:21-23

(Frusciante); 586:20-587:2 (Perkal); 778:13-16 (McCoy), 855:23-856:8 (Phipps); 873:13-18,

875:2-5 (Dent); Greene Decl. ¶32; Josephson Decl. ¶4; Meneses Decl. ¶25; Xanthakys Decl. ¶3;

*see also* Caraher Decl. ¶20.  Understandably, the governing documents do not directly

---

funds managed by Brigade) ("The Manager shall have no duty to question any such instruction
from the Comptroller . . . ."); DX-0208 at § 4 (Portfolio Management Agreement for Symphony
Alternative Investment Funds SICAV-SIF) ("[T]he [principal] may at all times give to
[Symphony] written guidelines, directions and/or Proper Instructions . . . in relation to specific
matters and [Symphony] shall exercise its powers and duties hereunder with discretion subject at
all times to the control of and review by the [principal]."); DX-0214 at § 7.5 (Indenture for HPS
Loan Management 9-2016, Ltd.); DX-0296 at § 7.5 (First Supplemental Indenture for Greywolf
CLO V, Ltd.) (requiring the collateral manager to preserve and defend title to the assets held by
the CLO); DX-0287 at § 7.7(v) (First Supplemental Indenture for SCOF-2 Ltd. (Symphony))
(same); DX-0142 at § 7.5 (Indenture for Halcyon Loan Advisors Funding 2013-1 Ltd. (Bardin
Hill)) (same); DX-1101 at § 7.5 (Indenture for Monarch Grove CLO, Ltd. (Tall Tree)) (same);
DX-0245 at § 7.5 (Indenture for AIMCO CLO, Series 2017-A (Allstate)) (same); DX-0159 at §
7.5 (Indenture for ZAIS CLO 1, Limited) (same); DX-1122 at § 7.5 (Indenture for JMP Credit
Advisors CLO III(R) Ltd. (Medalist)) (same); DX-0127 at § 2.05 (Investment Management
Agreement for JPMorgan Chase Retirement Plan (Brigade)) (same); DX-0288 at § 6 (Investment
Management Agreement between Brigade and The Comptroller of the City of New York)
(same); DX-0297 at § 5 (Amended and Restated Management Agreement for Liquid Loan
Opportunities Onshore Fund, L.P. (HPS)) (same).

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

contemplate such a situation, and an investment manager cannot simply assume the right to

direct the return of such funds, absent its clients' authorization or consent, simply because such

managers have broad discretion in day-to-day investment of their clients' funds.  Any assertion

that the managers regularly direct the disposition of their clients' funds, as part of their

contracted duties to invest for the benefit of their clients, cannot provide a facile resolution to the

unprecedented return of amounts paid in satisfaction of their clients' loans.  Simply put, broad

discretion in the management of funds for investment purposes does not plainly provide the type

of "dominion" that is required for the imposition of tort liability for conversion of unreturned

funds.

PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

Dated: New York, New York
       December 15, 2020

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**

By:   */s/Robert Loigman*

Michael Carlinsky
Robert Loigman
Benjamin Finestone
Adam M. Abensohn
Anil Makhijani
Sophia Qasir
Brendan Carroll
Alexandre Tschumi
Zachary Russell
Mario Gazzola
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000
michaelcarlinsky@quinnemanuel.com
robertloigman@quinnemanuel.com
benjaminfinestone@quinnemanuel.com
adamabensohn@quinnemanuel.com
anilmakhijani@quinnemanuel.com
sophiaqasir@quinnemanuel.com
brendancarroll@quinnemanuel.com
alexandretschumi@quinnemanuel.com
zacharyrussell@quinnemanuel.com
mariogazzola@quinnemanuel.com


Bennett Murphy
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
bennettmurphy@quinnemanuel.com

*Attorneys for Defendants*