UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Citibank August 11, 2020 Wire Transfers | No. 20 Civ. 06539 (JMF) |

# CITIBANK'S REPLY IN FURTHER SUPPORT OF
# ITS MOTION FOR AN INJUNCTION PENDING APPEAL

<div style="display: flex;">

MAYER BROWN LLP

Nicole A. Saharsky
Matthew D. Ingber
Christopher J. Houpt
Luc W. M. Mitchell
1221 Avenue of the Americas
New York, New York 10020
(212) 506-2500

THE LAW OFFICES OF JOHN F. BAUGHMAN, PLLC

John F. Baughman
Andrew H. Reynard
299 Broadway, Suite 203
New York, New York 10007
(212) 548-3212

HOGAN LOVELLS US LLP

Neal Kumar Katyal
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5528

</div>

*Attorneys for Citibank, N.A.*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................. 2

I. CITIBANK WILL SUFFER IRREPARABLE HARM ABSENT AN INJUNCTION ............................................................................................................ 2

II. THE STATUS QUO WILL NOT SUBSTANTIALLY INJURE THE DEFENDANTS ........................................................................................................... 5

III. CITIBANK LIKELY WILL PREVAIL ON THE MERITS ............................................ 7

    A. *Banque Worms* Did Not Answer Every Question About Discharge For Value ................................................................................................................. 7

    B. The Second Circuit Will Review Three Key Legal Issues *De Novo*, And Citibank Likely Will Succeed On At Least One Of Them .................................... 9

IV. THE PUBLIC INTEREST FAVORS A STAY ............................................................. 10

CONCLUSION ........................................................................................................................ 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agudath Israel of Am. v. Cuomo*,
 979 F.3d 177 (2d Cir. 2020)..................................................................................................1

*Ambac Assur. Corp. v. Adelanto Pub. Util. Auth.*,
 2014 WL 2893306 (S.D.N.Y. June 26, 2014) .......................................................................7

*Banque Worms v. BankAmerica Int'l*,
 77 N.Y.2d 362 (1991).........................................................................................................7, 8

*Banque Worms v. BankAmerica Int'l*,
 928 F.2d 538 (2d Cir. 1991).................................................................................................7, 8

*Brenntag Int'l Chems., Inc. v. Bank of India*,
 175 F.3d 245 (2d Cir. 1999)..................................................................................................3

*In re Calumet Farm, Inc.*,
 398 F.3d 555 (6th Cir. 2005) ................................................................................................8

*Carlisle v. Norris*,
 215 N.Y. 400 (1915) ...............................................................................................8, 9, 10

*CRP/Extell Parcel I, L.P. v. Cuomo*,
 394 F. App'x 779 (2d Cir. 2010) ..........................................................................................4

*Great-West Life & Annuity Ins. v. Knudson*,
 534 U.S. 204 (2002)............................................................................................................2, 3

*Harris v. Butler*,
 961 F. Supp. 61 (S.D.N.Y. 1997)..........................................................................................6

*Hilderbrand v. Nat'l Elec. Benefit Fund*,
 2016 WL 614352 (C.D. Ill. Feb. 16, 2016)...........................................................................7

*Jet Midwest Int'l Co. v. Jet Midwest Grp., LLC*,
 953 F.3d 1041 (8th Cir. 2020) ..............................................................................................3

*Lines v. Bank of Am. Nat'l Trust & Sav. Ass'n*,
 743 F. Supp. 176 (S.D.N.Y. 1990)........................................................................................3

*Mank ex rel. Hannaford Health Plan v. Green*,
 297 F. Supp. 2d 297 (D. Me. 2003) ......................................................................................3

# TABLE OF AUTHORITIES (continued)

**Page(s)**

*McKay v. Reliance Standard Life Ins.*,
  428 F. App'x 537 (6th Cir. 2011) ..................................................................................... 7

*Morgan Guar. Tr. Co. of N.Y. v. Republic of Palau*,
  702 F. Supp. 60 (S.D.N.Y. 1988) ..................................................................................... 7

*NBase Commc'ns, Inc. v. Am. Nat. Bank & Tr. Co. of Chi.*,
  8 F. Supp. 2d 1071 (N.D. Ill. 1998) ................................................................................. 8

*Republic of Philippines v. Marcos*,
  806 F.2d 344 (2d Cir. 1986) ............................................................................................ 2

*SCANSCOT Shipping Servs. (Deutschland) GmbH v. Matales Tracomex Ltd.*,
  2009 WL 10701802 (S.D.N.Y. Dec. 23, 2009) ........................................................... 5-6

*Sequa Corp. v. Gelmin*,
  1995 WL 404726 (S.D.N.Y. July 7, 1995) ...................................................................... 2

*United States v. Grote*,
  961 F.3d 105 (2d Cir. 2020) ............................................................................................ 7

## Statutes and Rules

28 U.S.C. § 1961(a) ................................................................................................................ 6

Fed. R. Civ. P. 62 ................................................................................................................... 6

Fed. R. Civ. P. 65 ................................................................................................................... 5

## Other Authorities

RESTATEMENT (FIRST) OF RESTITUTION (Am. Law Inst. 1937) .................................................. 7, 8

RESTATEMENT (THIRD) OF RESTITUTION & UNJUST ENRICHMENT (Am. Law Inst. 2011) ........ 2, 3, 9

**INTRODUCTION**

Last August, the defendants and their clients received over $500 million of Citibank's money by mistake. Citibank wired its own funds. It had no debts to the defendants or their clients. Citibank notified the defendants of the error promptly—before most of them even knew of the payment. Yet the defendants claim that their clients can keep the money because *another* entity, Revlon, is supposed to pay that sum three years from now. Further, the defendants claim that they are entitled to reinvest the money—potentially putting it out of Citibank's reach for good—before the Second Circuit even has a chance to consider Citibank's appeal.

To try to justify this obviously inequitable result, the defendants make a number of contradictory arguments. For example, they contend that Citibank has not shown that the lenders are likely to transfer the funds, but then they claim they will be harmed because they cannot immediately transfer Citibank's money into risky investments. Further, although the defendants strenuously argue that this Court's judgment was a foregone conclusion that is fair and efficient, they also admit—and rightly so—that the judgment sent shockwaves through the industry and prompted a shift in lending practices. These shifting positions betray the flimsiness of the defendants' arguments against maintaining the status quo.

Unable to resist the injunction factors, the defendants attempt to change the standard. Citibank, they say, has a "heavy burden" because it seeks an injunction rather than a stay. Opp. 3 (citing *Agudath Israel of Am. v. Cuomo*, 979 F.3d 177, 180 (2d Cir. 2020)). But that case favors Citibank; the "heavy burden" it references applies to an injunction that would *upset* the status quo. *Agudath*, 979 F.3d at 180. Citibank merely seeks an order to "suspend judicial alteration of the status quo," *id.*—effectively, a stay. And Citibank is moving expeditiously; it already has asked the Second Circuit to enter an expedited briefing schedule and promptly schedule oral argument.

1

When this Court originally granted the TROs, it recognized that freezing the disputed funds would preserve the equities and give it the time it needed to consider the weighty issues this case presents. The Court should give the Second Circuit the same opportunity and grant an injunction.

## ARGUMENT

### I. CITIBANK WILL SUFFER IRREPARABLE HARM ABSENT AN INJUNCTION

Citibank will be irreparably harmed absent an injunction because the lenders will imminently dissipate Citibank's money. Indeed, the defendants never say they will *not* dissipate the funds. They actually say the opposite, conceding that the lenders are planning to distribute or reinvest the money if an injunction is denied, transferring it to third parties. *See* Opp. 20-21 & n.16.

Citibank seeks recovery in equity of the funds it mistakenly paid. Equitable recovery of "money or property identified as belonging in good conscience to the plaintiff c[an] clearly be traced to particular funds or property in the defendant's possession." *Great-West Life & Annuity Ins. v. Knudson*, 534 U.S. 204, 213 (2002). But if the plaintiff's money is dissipated, "so that no product remains," a plaintiff may lose its ability to recover in equity. *Id.* The rules governing tracing are complex, *see* RESTATEMENT (THIRD) OF RESTITUTION & UNJUST ENRICHMENT (Restatement (Third)) § 59 (Am. Law Inst. 2011), and recovery is particularly difficult when transfers are made to third parties, *see id.* §§ 66, 67.

Because of these rules, as the Second Circuit has explained in granting an injunction to preserve a plaintiff's equitable remedy, "injunctions are proper to prevent a defendant from making a judgment uncollectible." *Republic of Philippines v. Marcos*, 806 F.2d 344, 356 (2d Cir. 1986); *see Sequa Corp. v. Gelmin*, 1995 WL 404726, at *5 (S.D.N.Y. July 7, 1995) (recognizing that "[t]he principal implication of the *Marcos* decision is that a party seeking to impress [an equitable remedy] on an identifiable asset may use the device of a preliminary injunction"). Other courts also recognize that the danger of dissipation and the difficulty of tracing assets can constitute

irreparable harm. *See Jet Midwest Int'l Co. v. Jet Midwest Grp., LLC*, 953 F.3d 1041, 1046 (8th Cir. 2020) (finding "irreparable harm" where "it would be extremely difficult, if not impossible" for plaintiff "to trace the various security interests"); *Mank ex rel. Hannaford Health Plan v. Green*, 297 F. Supp. 2d 297, 304 (D. Me. 2003) (the need to recover from "identifiable proceeds" that are in danger of being "dissipated" supports an injunction).

Citibank need not prove that the lenders are almost insolvent. Opp. 6-9. Insolvency matters when a plaintiff seeks an injunction to preserve a claim for general money damages. *See, e.g., Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249-50 (2d Cir. 1999). But Citibank's claims here are equitable: the return of its particular, identified funds. The defendants concede the standard is different for "rights in specific funds." Opp. 8 n.6. In those circumstances, money is not "fungible," *id.*; "equitable principles . . . under New York law permit a plaintiff to recover *money* when it has come into the defendant's hands wrongfully." *Lines v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 743 F. Supp. 176, 179 (S.D.N.Y. 1990) (footnote omitted and emphasis added).

There are good reasons why a plaintiff seeking an injunction to preserve its right to recover specifically identifiable property need not prove a defendant is insolvent. Equitable remedies give the plaintiff a claim to its wrongfully taken property superior to the defendant's other creditors. *See* Restatement (Third) § 60(1). Allowing the defendants to dissipate Citibank's funds and make Citibank the lenders' general creditor, *see Knudson*, 534 U.S. at 214, irreparably injures Citibank by permanently depriving it of the right to recover without credit-risk exposure, *see, e.g., Jet Midwest*, 953 F.3d at 1046. In other words, without an injunction preventing dissipation of Citibank's money, the "parties cannot be returned to the positions they previously occupied." *Brenntag Int'l*, 175 F.3d at 249. For the same reasons, the Court should reject the defendants' alternative proposal to limit an injunction to preventing the lenders from letting their general assets

3

dip below the amount Citibank seeks to recover. Opp. 24. Citibank's equitable recovery lies in the *specific* assets mistakenly transferred to the lenders.

The defendants' carefully worded statements about the lenders' general assets, Opp. 7 n.5, are therefore beside the point. The defendants pointedly avoid representing that those assets are sufficiently unencumbered or that Citibank can recover from them. Moreover, approximately half of the lenders are CLOs, which are contractually required to regularly either reinvest or pay out the principal proceeds to their investors, depleting their accounts.[1] The risk that Citibank will be left without a remedy is real.

The Second Circuit's unpublished opinion in *CRP/Extell Parcel I, L.P. v. Cuomo*, 394 F. App'x 779 (2d Cir. 2010), is not to the contrary. The *CRP* plaintiff was attempting to freeze funds held by an escrow agent that would be used to recover on a breach-of-contract claim, *id.* at 780 & n.1, which is a legal claim for damages not subject to equitable-recovery requirements. *CRP* did not confront a claim, like Citibank's here, that tracing requirements may preclude recovery.

After taking account of equitable-recovery requirements, the defendants offer very little basis to question Citibank's claim to irreparable harm. They suggest that Citibank has not proven that any particular transfer is likely, but do not deny that dissipation is imminent. After all, they claim they are harmed by an injunction because the lenders will be denied their "opportunity to use or invest their funds for the *entire* period through resolution of the appeal"—in high-risk, high-yield investments, at that. Opp. 21 (emphasis added). That investment requires dissipation.

The defendants next suggest that Citibank is not harmed because it has asserted subrogation rights against Revlon. But even assuming Citibank's subrogation claim is uncontested, Citibank

---

[1] *See CLO & CBO*, Moody's, https://tinyurl.com/ydwgqzqh (last visited Mar. 17, 2021); Dkt. 224-1 at 2-10. The defendants fault Citibank for citing only nine exemplary contracts in its motion. *See* Mot. 6 n.1. But those show that there is little meaningful variation among the CLOs on this point. And several of the non-CLO indentures contain materially similar provisions. *See, e.g.*, PX 194 at 219-27; PX 195 at 215-24.

still is irreparably harmed by taking on Revlon's significant credit risk, a risk to which Citibank, as an administrative agent, never agreed. *See* Op. 7 (noting Revlon's limited liquidity in Spring 2020); *id.* at 26 (the defendants alleged Revlon had become insolvent because of COVID-19). On August 11, the Revlon 2016 Term Loans traded at a small fraction of a dollar (Tr. 516:8-11), which is presumably why the defendants prefer keeping Citibank's money and leaving it with the loans.

Finally, the defendants rehash their argument that they do not control the lenders. Opp. 10. But they do, in fact, exercise dominion and control over the funds held in the lenders' suspense accounts, and it was the defendants who decided not to return Citibank's funds. *See* Dkt. 164 at 26-27 & n.7 (collecting relevant admissions). And the Court can enter an injunction that binds both the defendants and the lenders, as it recognized when it entered TROs enjoining the defendants and all "entities in active concert and participation with them." Dkt. 25; *see* Fed. R. Civ. P. 65(d)(2)(C).

## II.   THE STATUS QUO WILL NOT SUBSTANTIALLY INJURE THE DEFENDANTS

The defendants' only claim of harm to them is that they cannot reinvest Citibank's money during the appeal. *See* Opp. 20. But that harm—which even the defendants concede is "slight," *id.* (citation omitted), hardly outweighs the harm to Citibank of dissipation. And that already slight harm amounts to nothing on these facts. The defendants had no expectation of receiving the principal on the Revlon 2016 Term Loans when they did; the loans were not scheduled to mature for *three years*. The lenders' reinvestment opportunity was entirely the result of Citibank's mistaken transfer, and the inability to immediately invest a $500 million windfall is not meaningful harm.

The defendants resist this conclusion because the Court has now held that their clients are the rightful owners of Citibank's money. Opp. 20. But this Court has rejected that reasoning before. In *SCANSCOT Shipping Servs. (Deutschland) GmbH v. Matales Tracomex Ltd.*, 2009 WL

10701802 (S.D.N.Y. Dec. 23, 2009), the Court explained that when the harm claimed "is precisely what is at issue on appeal"—here, entitlement to the mistakenly transferred funds—there is "no *independent* source of harm that would result from a stay." *Id.* at *1 (emphasis added). And the defendants' reliance (Opp. 20) on *Banque Worms*' policy of finality is equally question-begging: The question the Second Circuit will decide is whether this Court correctly interpreted *Banque Worms*.

That is the point of Citibank's analogy to Rule 62(b), which the defendants misunderstand. *See* Opp. 20; Mot. 7. Citibank has never denied its request is governed by Rule 62(d). Mot. 4. But Rule 62(b) is instructive because it shows that, generally, a prevailing party is not entitled to collect a money judgment until an appeal is over when adequate security has been furnished. *See Harris v. Butler*, 961 F. Supp. 61, 62 (S.D.N.Y. 1997). The defendants here control the disputed funds and therefore have ample security; all Citibank asks is that the defendants not be allowed to dissipate the funds pending appeal. Citibank's requested injunction is—effectively—a stay.

The defendants complain that holding the funds does little good if they cannot reinvest them. Opp. 21. But an injunction maintaining the status quo protects their interests. They face no risk of losing the principal, and can keep that amount in interest-bearing accounts. Citibank also will place in escrow each quarter an amount equivalent to interest accruing on the disputed funds at a 4.25% annual rate, to ensure those funds can be paid if Citibank prevails. The defendants are fully protected.[2]

---

[2] The defendants request Citibank post a bond to compensate them for the money's opportunity cost pending appeal. Opp. 21 & n.16. But the windfall that the defendants have received, being paid 100 cents on the dollar on a loan that traded at a fraction of that, makes a bond unnecessary—especially because they face no credit risk. Further, any loss in the defendants' time-value of money can be paid from the escrowed funds, should the defendants prevail on appeal. That amount can be resolved at a later date, if necessary. But whatever that rate may be, it is nowhere close to what the defendants assert. By definition, a recovery from escrowed accounts is risk-free. If anything, the defendants should receive interest equivalent to the return on similar risk-free investments. *See* 28 U.S.C. § 1961(a) (pegging post-judgment interest "to the weekly average 1-year constant maturity Treasury yield"). A one-year Treasury bond currently returns 0.09%, for a bond of $453,752.46, and a one-year certificate of deposit yields 0.19%, for an amount

### III. CITIBANK LIKELY WILL PREVAIL ON THE MERITS

The Court itself has noted that this is "not the easiest case" because of several "uncertainties in the law." Tr. 1335:23-25. Citibank recognizes that the Court found against it. But Citibank has presented a "substantial case on the merits concerning difficult issues," *Ambac Assur. Corp. v. Adelanto Pub. Util. Auth.*, 2014 WL 2893306, at *1-2 (S.D.N.Y. June 26, 2014) (quotation marks omitted), which, combined with the equities, supports an injunction here, *see, e.g.*, *Morgan Guar. Tr. Co. of N.Y. v. Republic of Palau*, 702 F. Supp. 60, 66 (S.D.N.Y. 1988).[3]

#### A. *Banque Worms* Did Not Answer Every Question About Discharge For Value

The defendants contend that Citibank's merits arguments are all foreclosed by *Banque Worms*. Opp. 11. But *Banque Worms*, with its idiosyncratic facts, was not a comprehensive treatise on the discharge-for-value defense. The loan had come due, and a mistaken payment for the full amount was made on the due date. *Banque Worms v. BankAmerica Int'l*, 928 F.2d 538, 539 (2d Cir. 1991). Nothing about the wire transfer put the recipient on notice that it was a mistake. *Id.* Here, by contrast, the Revlon loan was not scheduled to mature for another three years, the receipt of funds was unexpected and confusing, and the lenders never actually discharged the debts. None of these three issues was present in *Banque Worms* and the decision did not address them.

The Second Circuit recognized that New York law "failed to provide any meaningful guidance" on what happens in the case of a mistaken payment. *Id.* at 540. So it asked the New York Court of Appeals to decide whether, "in this case," "New York would apply the 'Discharge

---

of $957,921.86. And that amount should be offset by the interest the money currently is earning. The defendants simply cannot support a rate of return on high-risk investments, with ranges from an already high 4.25% (an amount they received for the Revlon loans, which clearly carried substantial risk) to an even higher 6.896% (Opp. 21-22 n.16).
[3] The defendants are wrong to suggest (Opp. 11 n.8) that Citibank must show a likelihood of success on the entire case, as opposed to on appeal. The injunction is in aid of the appeal, and the required merits showing is with respect to the arguments *in the appeal*. *See United States v. Grote*, 961 F.3d 105, 123 (2d Cir. 2020) (factor is "likelihood of success on appeal" (internal quotation marks omitted)); *see also McKay v. Reliance Standard Life Ins.*, 428 F. App'x 537, 547 (6th Cir. 2011); *Hilderbrand v. Nat'l Elec. Benefit Fund*, 2016 WL 614352, at *3 (C.D. Ill. Feb. 16, 2016).

7

for Value' rule as set forth at Section 14 of the Restatement of Restitution." *Id.* at 541. The Court of Appeals answered "yes," but limited its holding to the facts of the case: "[W]e conclude that, *under the circumstances of this case*, the 'discharge for value' rule should be applied." *Banque Worms v. BankAmerica Int'l*, 77 N.Y.2d 362, 366 (1991) (emphasis added).[4] Consequently, the Court of Appeals did not address whether the recipient must be presently entitled to the funds (because the debt was paid on the due date, *Banque Worms*, 928 F.2d at 539), what kind of notice is required (because it was "undisputed" that the recipient "did not have notice," *Banque Worms*, 77 N.Y.2d at 376), or what it means to "discharge" a debt (another "undisputed" point, *id.* at 364).

The limited opinion in *Banque Worms*, containing a scant paragraph about the mechanics of the discharge-for-value defense, was a product of the question the court was asked to answer. As the Sixth Circuit put it, "the question in [*Banque Worms*] was *whether* the discharge-for-value rule applies in this setting, not *how* it applies." *In re Calumet Farm, Inc.*, 398 F.3d 555, 559 (6th Cir. 2005). And in the thirty years since *Banque Worms*, the New York Court of Appeals has not provided further guidance on the defense—leaving the parties and Court in this litigation to divine meaning from scattered phrases in opinions and arguments in 30-year-old briefs.

That other courts have disagreed about the defense's scope confirms that Citibank has raised substantial issues for appeal. For example, both the Sixth Circuit and the Northern District of Illinois have required a separate act of credit, but disagree on whether *Banque Worms* compels that conclusion. *Compare Calumet Farm*, 398 F.3d at 561, *with NBase Commc'ns, Inc. v. Am. Nat. Bank & Tr. Co. of Chi.*, 8 F. Supp. 2d 1071, 1076 (N.D. Ill. 1998). Such a requirement is consistent with *Carlisle v. Norris*, 215 N.Y. 400 (1915), cited with approval in *Banque Worms*, which held

---

[4] *See also id.* at 373 ("[T]he 'discharge for value' rule should be applied in the circumstances here presented."); *id.* at 376 ("Application of the 'discharge for value' rule to the circumstances presented here is particularly appropriate."); *id.* at 376 ("[W]e conclude, in answer to the certified question, that the 'discharge for value' rule as set forth at section 14 of the Restatement of Restitution, should be applied in the circumstances in this case.").

8

that a recipient may retain mistakenly transferred money only if it "credited" the funds. *Id.* at 415. Taking a different approach, this Court held that a discharge is complete when the transferee receives the payment. *See* Op. 49-50. And taking yet another approach, the Restatement states that discharge "relates directly to the payee's knowledge that a payment has been received." Restatement (Third) § 67 cmt. h. The defendants are therefore wrong to treat the appeal's outcome as a foregone conclusion.

### B. The Second Circuit Will Review Three Key Legal Issues *De Novo*, And Citibank Likely Will Succeed On At Least One Of Them

The defendants do not dispute that two of Citibank's issues on appeal—the "present entitlement" and "discharge" issues—will be reviewed *de novo*. But they argue that the notice issue is reviewable only for clear error. Opp. 2.

The notice question involves both legal questions and factual questions. The legal questions concern the governing legal standard (what notice is sufficient to vitiate the defense) and the factual questions concern what actually happened (what notice was given here).[5] In Citibank's view, the Court applied an incorrect legal standard for constructive notice by relying on the defendants' subjective speculations rather than holding them to an objective standard of what a prudent further inquiry would have revealed. Mot. 12-14. As a result, even on the notice question, the Second Circuit will largely review the issue *de novo*.

In short, Citibank has demonstrated a likelihood of success on the merits on each of the three legal issues. The Second Circuit likely will conclude that the discharge-for-value defense requires a present entitlement to funds. That was the case in *Banque Worms*; that requirement was

---

[5] The defendants claim that "numerous Defendants . . . had firmly concluded that the payments were intentional prior to receiving any contrary notice from Citibank." Opp. 16 n.12. This simply is not true. Indeed, the three affidavits the defendants cite in support of their claim say only that these three employees' *first* thoughts were that the payments were intentional—hardly a firm conclusion. And had they so concluded, the defendants would not have needed to send emails asking, for example, to "please confirm that there was a full princip[al] repayment." PX 1207.

set out in *Carlisle*; and it makes sense, because only then would the recipient have reason to expect the payment. Mot. 10-12. The Second Circuit likely will find that the defendants were on constructive notice of the mistake, because the transfer involved numerous red flags, which would have caused a reasonable person to inquire and uncover the mistake. *Id.* at 12-14. And the Second Circuit likely will agree with those courts that have required a separate act of discharge, because only then has the creditor given value for the mistaken payment. *Id.* at 15-17.

## IV.   THE PUBLIC INTEREST FAVORS A STAY

Finally, the public interest favors a stay. New York courts have not fleshed out *Banque Worms* in the ensuing three decades for a simple reason: When mistaken wire transfers occur—and they do, Dkt. 172 at 4 n.6, and inevitably will in the future—the recipients typically return the funds. *See id.* at 7. It is the defendants—not Citibank—that have rebuffed industry customs. Again, the defendants prove our point; they concede that the Court's judgment has sent "shockwaves" through the industry (Opp. Ex. B at 1) and prompted banks to add "language to credit agreements to avoid similar mistakes and disputes" (Opp. 23). And even then, contracts are only an imperfect solution. They cannot account for wire recipients that are not parties to the loan (like the defendants here), or retroactively modify existing loans that—in reliance on until-now-settled industry custom—do not contain new belt-and-suspenders terms regarding the return of mistaken wires.

At the very least, before the industry permanently upends itself to account for this Court's judgment, the Second Circuit should have a chance to authoritatively weigh in. An injunction ensures that the Court's review will be meaningful.[i]

## CONCLUSION

For these reasons and those in the motion, an injunction should be granted. Alternatively, as the defendants agree (Opp. 3 n.1), the Court should extend its TROs until Citibank can seek, and the Second Circuit has acted on, a motion for injunction pending appeal.

10

| | |
|---|---|
| Dated: March 17, 2021 | Respectfully submitted, |

*s/ Matthew D. Ingber*
MAYER BROWN LLP                                HOGAN LOVELLS US LLP

Nicole A. Saharsky                                    Neal Kumar Katyal
Matthew D. Ingber                                    555 Thirteenth Street, N.W.
Christopher J. Houpt                                 Washington, DC 20004
Luc W. M. Mitchell                                   (202) 637-5528
1221 Avenue of the Americas
New York, New York 10020
(212) 506-2500

THE LAW OFFICES OF JOHN F. BAUGHMAN, PLLC

John F. Baughman
Andrew H. Reynard
299 Broadway, Suite 203
New York, New York 10007
(212) 548-3212

*Attorneys for Citibank, N.A.*

---

[i] As a condition of its agreement to an expedited briefing schedule, the defendants requested that the following language be included verbatim in this brief: "Defendants consented to a motion to expedite the Second Circuit appeal that would propose oral argument by August or September 2021, but further stated that in their view such an expedited schedule does not impact this Court's decision on Plaintiff's motion for injunction pending appeal, because even if the expedited schedule is granted, a decision by the Second Circuit will not issue until late 2021 or 2022, and there remains an important issue whether the Lenders should be restrained during this period from using the funds to which this Court has held they are lawfully entitled."